SCOTT S. WELTMAN, ESQ.
(State Bar No. 145215)
colcaecf@weltman.com
**Weltman, Weinberg & Reis Co., L.P.A.**
323 W. Lakeside Avenue, Suite 200
Cleveland, OH 44113
Telephone:  (216) 685-1032
Facsimile:   (216) 363-4086
WWR# 040284515
Attorney for Defendants,
National Collegiate Student Loan Trust 2006-3

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| In re<br><br>Cesar Medina and Krystal Anne Medina,<br><br>　　　　　　　　　　　　　　Debtors.<br>_____<br><br>Krystal Anne Medina,<br><br>　　　　　　　　　　　　　　Plaintiff.<br>　vs.<br><br>National Collegiate Student Loan Trust 2006-3,<br><br>　　　　　　　　　　　　　　Defendant. | Bankruptcy Case No. 17-05276-LT<br>Chapter 7<br>Honorable Chief Judge Laura S. Taylor<br><br><br>Adversary Proceeding No. 19-90065-LT<br><br>**DEFENDANT NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3'S MOTION FOR SUMMARY JUDGMENT** |

　　　Defendant National Collegiate Student Loan Trust 2006-3 ("NCSLT") by counsel, pursuant to Bankruptcy Rule 7056 and Rule 56 of the Federal Rules of Civil Procedure, requests the Court enter a judgment in its favor and against Plaintiff Krystal Anne Medina aka Krystal Anne Shirley ("Plaintiff") finding that the student loan debt owed to NCSLT is nondischargeable under 11 U.S.C. § 523(a)(8),[1] As set forth below, there is no genuine issue as to any material fact and, as a matter of law, NCSLT is entitled to judgment in its favor. NCSLT

---

[1] All statutory references will be to Title 11 U.S.C, unless otherwise noted.

requests that the Court make findings establishing all material facts contained herein in accordance with Fed. R. Civ. P. 56(g), made applicable to this proceeding by Fed. R. Bankr. P. 7056, should the court not grant full summary judgment in NCSLT's favor.

## A. INTRODUCTION

Plaintiff entered into a student loan with JP Morgan Chase Bank N.A. to attend San Diego Culinary Institute. Plaintiff filed an adversary complaint seeking to discharge the loan now held by NCSLT. Plaintiff alleges that the Loan is dischargeable because it is not excepted from discharge under any of the sections of §523(a)(8) but offers no facts in support, except the allegation that the School is not a Title IV school. Plaintiff does not allege repaying the loan will cause an undue hardship.

NCSLT answered the complaint with an affirmative defense: the loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program that was funded by a non-profit institution.

## B. STATEMENT OF MATERIAL FACTS

1. Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan") with JP Morgan Chase Bank N.A. ("JPMorgan") to attend the San Diego Culinary Institute (the "School") for the academic period of September 2006 through May 2007 in the principal amount of $33,149.17. *See* Affidavit of Bradley Luke ("Affidavit"), ¶ 10 & 11 and its Exhibits A and A-1; See also the Complaint, Section II, FACTS, lines 6 & 7.

2. The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program. *See* Affidavit, ¶ 13

and 25 and its Exhibit A-1, p.1, upper left–hand corner; *See* also Ex. B, p. 1, ¶ 2 and its Exhibit A "Basic Program Design"; Also *See* Ex. D, its Schedule A.

    3.    The Loan is an educational loan. See Affidavit, ¶ 10, 11 & 12 and its Exhibit A-1; and See also Ex. B, p. 26, Exhibit A, Basic Program Design (Describing the Bank One Continuing Education Loan as a "fully credit-tested education loan.")

    4.    TERI guaranteed the loans in Plaintiff's loan Program, the Education One© Education One Continuing Education Loan Program. See Affidavit, ¶ 20 and See also Exhibit B, Preamble, Pgs. 1 & 2, Sections 1.6 & 2.1, its Exhibit A, Sections, 1, 2, and "Basic Program Design;" See also Ex. A-1, p. 1, upper left-hand corner & ¶ L.12.

    5.    TERI guaranteed that it would reimburse the holder of any Program loan upon default. See also Affidavit ¶ 26; See Exhibit B, Sections 1.6 and 2.1.

    6.    TERI is a non-profit institution. See Affidavit, ¶ 19; See Exhibits H & I; See also See Exhibit A-1, ¶ L. 12; Exhibit B, p. 1, ¶ 1; Exhibit E p.5, ¶ 1; Exhibit F, p. 1, ¶ 1.

    7.    The loan package given to Plaintiff included Terms and Conditions of the loan. See Affidavit, ¶ 14 and Exhibit A-1.

    8.    On the signature page of the Loan, the Plaintiff agrees that "By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement." See Exhibit A-1, p. 1.

    9.    The Plaintiff signed the Loan. See Exhibit A-1; See also the Complaint, Section II, FACTS, lines 6 & 7.

    10.    Plaintiff agreed that "**I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in**

**bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full**." See Ex. A-1, ¶ L 12. (Text is bolded in Loan Agreement).

11. The effective date of the Guaranty was May 13, 2002. See Affidavit, ¶ 21 and See Exhibit B, ¶ 1 and Sec. 1.3.

12. JPMorgan is the successor by merger to Bank One, N.A as of November 13, 2004. See Affidavit, ¶ 22 and See Exhibit E, Schedules B, C & D; See also Exhibit G.

13. JPMorgan continued to originate loans under the Education One© Loan Programs after the merger with Bank One, N.A. See Affidavit, ¶ 23 and See Exhibit A-1, Plaintiff's Loan.

14. TERI's Guaranty of the Education One© Loan Programs remained in full force and effect after the merger because the Guaranty is to loans made under the Education One Loan Program, not to those made by Bank One, N.A. See Affidavit, ¶ 24 and See Exhibit B, Sections 1.6 and 2.1.

15. TERI, JPMorgan, successor by merger to Bank One, and the Program Manager approved the schools participating in the Loan Program in its sole discretion in conjunction with First Marblehead Corporation. See Affidavit, ¶ 27 and See Ex. B, its Exhibit A, Sec 2, "Participating Schools" & See Ex. B, its Schedule D to its Exhibit A, "Participating Schools."

See Ex. B, its Exhibit A, Section 2 defining "Program Manager" as The First Marblehead Corporation.

16. TERI was paid a Guaranty Fee from the individual student loans in the Loan Program. See Affidavit, ¶ 25 and See Ex. B, its Schedule 3.3.

17. TSI, as custodian of records for NCSLT, is the holder of the original Loan signed by the Plaintiff. See Affidavit, ¶ 15.

18. On September 28, 2006, and prior to Plaintiff's last payment on the loan, JPMorgan, First Marblehead Corporation ("FMC") and National Collegiate Funding LLC ("NCF") entered into a Pool Supplement wherein JPMorgan sold certain student loans to NCF along with its rights under the guaranty agreement with TERI. See Affidavit, ¶ 29 and See Ex. C, p. 1, Article 1 & p. 3, Article 5.

19. On or about September 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, NCF and NCSLT entered into a Deposit and Sale Agreement, wherein NCF sold the loans to National Collegiate Student Loan Trust 2006-3, and transferred all of its rights and interests under the Pool Agreement to NCSLT. The transfer of rights and interests included NCF's rights under the Guaranty Agreement with TERI. See Affidavit, ¶ 29 and See Ex. D, Section 3.02 and its Article XII, "Assignment." The sale included all loans in Plaintiff's Loan Program, the Education One Loan Program. See Affidavit, ¶ 29 and See Ex. D, Schedule A.

20. On or about June 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, TERI, First Marblehead Data Services, Inc. and National Collegiate Student Loan Trust 2006-3 entered into a Deposit and Security Agreement. Under the Agreement, NCSLT agrees to purchase all loans in the Education One Loan Programs on

the condition, in part, that TERI guarantees the loans. See Affidavit, ¶ 32 and See Ex. F, p.1, ¶ 2 and its Schedules A & B.

21. On about June 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, Wilmington Trust Company, NCF and TERI entered into a Trust Agreement. The Trust Agreement established the National Collegiate Student Loan Trust 2006-3, Defendant and the holder of Plaintiff's Loan. See Affidavit, ¶s 15 & 31; and See Ex. E, Sec. 1.01 "Trust" definition.

22. The Trust was set up primarily to acquire, house and service the loans. See Affidavit, ¶ 31; and See Ex. E, Sec. 2.03.

23. TERI's obligation to purchase defaulted loans is recited. See Ex. E, Sec. 1.01 ("TERI Guaranty Agreements" and "TERI Guaranteed Loans").

24. The Trust Agreement identifies "TERI Guaranty Agreements" as "each of the Guaranty Agreements entered into between each of the Loan Originators and TERI as set forth on Schedule D" and which includes Plaintiff's Loan Program. See Exhibit E, Sec. 1.01, its Schedule B identifying JPMorgan as a Loan Originator, its Schedule D, identifying the Guaranty Agreement between Bank One and TERI for its Education One Loan Program.

25. The Trust Agreement identifies "TERI Guaranteed Loans" as "Student Loans under the Student Loan Programs owned by the Trust and guaranteed by TERI pursuant to the Guaranty Agreements." See Exhibit E, Section 1.01.

26. The Loan has not since been transferred or sold, and all right, title and interest remains with National Collegiate Student Loan Trust 2006-3. See Affidavit, ¶ 37.

27. The last payment Plaintiff made on the Loan was December 28, 2017 and there remains due and owing on the Loan the sum of $27,735.09. See Affidavit, ¶ 18; See also Exhibit A-3.

28. The Plaintiff is not alleging repayment of the Loan will cause an undue hardship. See Complaint.

**C. LAW AND ARGUMENT**

**1. Summary Judgment**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Bankr. R. 7056. Here, NCSLT is entitled to judgment as a matter of law.

The moving party must inform the court of the basis for the motion with pleadings, affidavits, discovery responses, and any other matters of record which it believes shows there are no material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The court must review the evidence and "view the evidence in the light most favorable to the nonmoving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). A defendant movant may prevail on summary judgment if it can show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, and *see United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989).

Once a defendant satisfies its initial burden, the burden shifts to the non-movant plaintiff to demonstrate that there is a genuine issue of material fact. *Intel Corp. v. Hartford Accident &*

*Indem. Co.*, 952 F.2d 1551, 1561-62 (9th Cir. 1991). To overcome a motion for summary judgment, a non-moving party must show that there is a fact or there are facts that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 and 2511 (1986). "A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc.,* 809 F.2d at 630. To show a genuine issue, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith* Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

**2. Plaintiff's Loan is Nondischargeable under § 523(a)(8)(A)(i)**

Absent a showing of undue hardship, student loans are nondischargeable if they meet any one of three criteria for nondischargeability. § 523(a)(8) states as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> **(A) (i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual;

Plaintiff claims that her Loan is dischargeable because it does not meet any of the criteria for nondischargeability under §523(a)(8). No facts are alleged to support the claim, except an allegation that Plaintiff's school is not a Title IV school. This would be relevant only to analyze whether Plaintiff's Loan was a qualified education loan under §523(a)(8)(B).

Plaintiff's loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program guaranteed by TERI, a non-profit institution. Plaintiff alleges no facts in the Complaint and cannot allege any facts to dispute this because there are none.

Specifically, § 523(a)(8)(A)(i) states that "an educational…loan… made under any program funded in whole or in part by a… nonprofit institution" is nondischargeable.

### 3. Plaintiff's Loan is an Educational Loan

Plaintiff's Loan is an educational loan.  Statement of Material Facts 3 ("SMF 3"). Plaintiff admits the Loan was for her education at the San Diego Culinary Institute Section II, lines 6 and 7 of the Complaint

Plaintiff's Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.  SMF 2.  The Overview of the Program set out that the program loans are educational loans designed to finance K-12, undergraduate, graduate and continuing education.  SMF 2 & 3.

### 4. Plaintiff's Loan was made under a Loan Program

The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.  SMF 2.

### 5. TERI is a Nonprofit Institution

TERI is a nonprofit institution. The Guaranty between TERI and GMAC refers to TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws."[2]  All of the documents that relate to Plaintiff's Loan and Program to which TERI is a

---

[2] See Exhibit B, p.1, ¶ 1

party describe it as a nonprofit institution. TERI's Articles of Incorporation and its IRS Tax exempt letter are attached as Exhibits H & I.  Also see SMF 6.

Courts that examined TERI found it a nonprofit institution. "…TERI [is a] private nonprofit organization… engaged in providing guaranteed educational loans." *In re Hammarstrom,* 95 B.R. 160, 166 (Bankr. N.D. Cal. 1989).  "The loan was guaranteed by defendant-appellee-creditor The Education Resources Institute ("TERI"), a not-for-profit corporation that conditionally guarantees loans extended by private lenders under TERI's student loan programs." *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien),* 419 F.3d 104, 105 (2d Cir. 2005).   "TERI is a private nonprofit institution organized under the laws of Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States." *Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez)*, 319 B.R. 894, 895 (Bankr. M.D. Fla. 2005).  "[T]he Guaranty Agreement between TERI and The Bank of New England (attached as Exhibit B to the Plaintiff's Brief in Support of its Motion for Summary Judgment) indicates that TERI is in  fact a non-profit corporation." *In re Martin*, 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990).

**6. TERI's Guaranty of Plaintiff's Loan Program is Funding**

Under §523(a)(8)(A)(i), the nonprofit institution must fund a loan program in whole or in part, but it is not required to fund individual loans: "§523(a)(8) requires only that O'Brien's loan was "made under any program funded in whole or in part by" TERI. While it may be true that TERI merely guaranteed, without funding, O'Brien's particular loan, it is an entirely different question whether TERI funded the loan program under which O'Brien's loan was made." *O'Brien*, 419 F.3d at 106.

In this case, TERI funded Plaintiff's Education One Continuing Education Loan Program because it was the guarantor of the Program. Even though §523(a)(8)(A)(i) does not use the term "guaranty," courts find that the term "funded" should be read expansively to include a guaranty.

> There have been a number of courts which have interpreted the phrase in question, including the *Klein* court. As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play. For example, the *Klein* court found that even though the Bankruptcy Code does not define "funded," and that the term is not synonymous with the term "guaranteed," the plain language of the statute dictated construing the statute's funding programs language "to include guarantees like those at issue herein." *Klein*, slip op. at 13. The *Klein* court found further support in its conclusion in the legislative history of the statute. *See* id. At 13-14. *See* also *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) (examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government or nonprofits under the "any program funded in whole or in part" language.) (Referring to *Klein v. The Education Resources Institute, Inc. (In re Klein)*, Ch. 11 Case No. 92-B44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997),
>
> *Educ. Res. Inst. Inc. v. Taratuska (In re Taratuska)*, 2008 U.S. Dist. LEXIS 93206, 9-11 (D. Mass. Aug. 25, 2008).

*See* also, *Rodriguez*, 319 B.R. at 896 ("As an initial matter, the Court notes that the legislative history of the statute itself compels this Court to conclude that the types of loans and lenders covered by section 523(a)(8) is meant to be broad."). Courts do not have to engage in heavy analysis to determine if a nonprofit's participation in a loan program constitutes funding. "In this case, the Court does not need to put a fine point on the directness of the funding or the degree of involvement required of a nonprofit institution to determine whether a loan qualifies

as one "made under a program funded . . . by a nonprofit institution." *Sears v. EduCap, Inc. (In re Sears)*, 393 B.R. 678, 681 (Bankr. W.D. Mo. 2008).

There is ample case law expressly finding that TERI's guaranty or another nonprofit's guaranty is in itself funding "in whole or in part" as contemplated under the statute. The most recent case is directly on point. In that case, the plaintiff had three loans made under the Education One Loan Program. One of the loans was with Bank One and the two later loans were with JPMorgan, successor by merger to Bank One. One of the JPMorgan loans was held in the same trust as Plaintiff's: NCSLT 2006-3. The court found that the loans were educational loans, TERI is a nonprofit organization, the loans were made under Bank One and JPMorgan's Educational One Loan Program, and TERI's blanket guaranty to pay the loans upon default was funding of the Loan Program as contemplated by §523(a)(8)(A)(i). *Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019).

Courts routinely find that a nonprofit's guaranty is funding under the statute. Where a nonprofit university agreed to purchase student loans from the lender bank upon default (similar to TERI's guaranty in this case), it was found to have funded a loan program in part. *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. Mich. 1992). The Second Circuit found loans made under loan programs that are guaranteed by TERI, a nonprofit institution, are nondischargeable under § 523(a)(8). " § 523(a)(8) includes within its meaning loans made pursuant to loan programs that are guaranteed by non-profit institutions." *O'Brien*, 419 F.3d, at 107.

TERI-guaranteed NCSLT loans from other NCSLT trusts were found nondischargeable in *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016). "The NCSLT loans were made under a program funded in whole or in part by

a non-profit institution, in this case, The Education Research Institute, Inc. Consequently, all of the loans of ECMC and NCSLT qualify to be non-dischargeable under Section 523(a)(8)(A)(i)." *Id.*, at 271.

Where a private for-profit bank funded student loans under a program, as in this case, a nonprofit that provided, among other things, a guaranty of the loans, was found to have funded the program in part, so that the loans were nondischargeable. *Decker v. EduCap, Inc.*, 476 B.R. 463, 467-468 (W.D. Pa. 2012). Similarly, the Ninth Cir. B.A.P. found that "documents included in the excerpt of record state that the program which provided Ms. Kashikar's loan was funded in whole or in part by a nonprofit corporation. If this is true, it means that §523(a)(8)(A)(i) covers the loan and that Ms. Kashikar's loan is not dischargeable." *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017).

Because courts have repeatedly found that a guaranty of a loan program in itself is funding as contemplated under §523(a)(8)(A)(i), TERI's Guaranty of Plaintiff's Program is in itself "fund[ing] in whole or in part" of the Program. §523(a)(8)(A)(i).

**7. TERI Guaranteed Plaintiff's Loan Program**

There is no dispute that TERI was guarantor of the Plaintiff's student loan Program, the Education One Continuing Education Loan Program. The Guaranty clearly states TERI's obligation to purchase defaulted loans out of Plaintiff's Loan Program. SMF 4 & 5.

The Pool Supplement and Deposit and Sale Agreements sold the Program's student loans NCSLT, along with the right to TERI's Guaranty. SMF 18 & 19. The Deposit and Security Agreement facilitated the securitization of the loans and also transferred TERI's Guaranty to NCSLT. SMF 20.

The Trust Agreement between Wilmington Trust Company, NCF and TERI defines "TERI Guaranteed Loans" as "Student Loans originated under the Student Loan Programs owned by the Trust and guaranteed by TERI pursuant to the Guaranty Agreements", and identifies Plaintiff's Program as one of the programs that is, in fact, guaranteed by TERI. SMF 26 & 27. The Trust Agreement also defines "TERI Guaranty Agreements" as "each of the Guaranty Agreements entered into between each of the Loan Originators and TERI as set forth on Schedule D" and which includes Plaintiff's Loan Program. SMF 28.

It is evident from the Guaranty, the Pool Supplement, The Deposit and Sale Agreement, The Deposit and Security Agreement, and the Trust Agreement that TERI guaranteed the loans in Plaintiff's Loan Program. SMF 14.

**8. Plaintiff's Loan is Evidence it is Nondischargeable**

This Court may also look to the Loan document itself for evidence that the Loan is nondischargeable if Plaintiff agreed to nondischargeability in the terms of the loan. In *O'Brien*, the note had a provision similar to Plaintiff's Loan regarding nondischargeability. "We also note that the Promissory Note for O'Brien's loan itself stated that it "evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution and is therefore subject to the limitations on dischargeability contained in Section 523(a)(8) of the United States Bankruptcy Code." *O'Brien,* 419 F.3d, at 106.

Plaintiff's Loan states "I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The

Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full." SMF 10.

TERI funded Plaintiff's Loan Program in part by its Guaranty. Therefore, NCSLT's Loan is nondischargeable under §523(a)(8)(A)(i).

**9.    TERI's Guaranty Played a Meaningful Part in Providing Funding for the Program**

If TERI's Guaranty is a condition a lender requires to participate in a loan program, that condition is considered a funding" in part" of the program. *McClain v. American Student Assistance (In re McClain)*, 272 B.R. 42, 46 (Bankr. D.N.H. 2002). Because the lender conditioned participation in the program in part on TERI's guaranty, the court found that TERI's guaranty was a "meaningful part" in providing funds for the program. *Id.,* at 46.

Bank One conditioned its participation in Plaintiff's Program in part on TERI's Guaranty in this case:

> WHEREAS, TERI is in the business of providing financial assistance in the form of loan guaranties to and on behalf of students enrolled in programs of higher education and their parents at TERI-approved schools; and
>
> WHEREAS, Bank One is willing to make Loans to eligible Borrowers under the Program, and TERI is willing to guaranty the payment of principal and interest against the Borrowers' default or certain other events as more fully described below, in accordance with the terms and conditions set forth in this Agreement.[3]

---

[3] See Exhibit B, p. 1.

Bank One's willingness to make loans under the Program is conditioned on TERI's willingness to guaranty the Loans.

NCSLT's purchase of the loans in the Education One Program, including Plaintiff's, was conditioned in part on TERI's Guaranty of the loans. The Deposit and Security Agreement states "WHEREAS, [NCSLT] is willing to purchase education loans to borrowers under the education loan programs listed on Schedule A attached hereto and others in accordance with the Indenture (collectively, the "Student Loan Programs") upon certain terms and conditions, including but not limited to the guaranty of the payment of principal and interest by TERI pursuant to the terms of the Guaranty Agreements."[4] JPMorgan is referenced in its Schedule A.[5] TERI's Guaranty Agreement with JPMorgan (as successor to Bank One) is referenced in its Schedule B.[6] TERI's guaranty in this case was a meaningful part of funding the Program and so renders the Plaintiff's Loan nondischargeable.

Other courts have applied the "meaningful part" test. "Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds." *In re Hammarstrom*, 95 B.R. at 165. In *Hammarstrom*, the court found TERI's guaranty played a meaningful part in the funding of a loan program so that the loan in question was nondischargeable. *Id.*, at 165-66. *See also Drumm v. New Eng. Loan Mktg. Ass'n (In re Drumm)*, 329 B.R. 23, 34 (Bankr. W.D. Pa. 2005); *See also HEMAR Service Corp., Inc. v. Pilcher*, 149 B.R. 595, 598 (B.A.P. 9th Cir. Ariz. 1993).

---

[4] See Exhibit F, p. 1.
[5] See Exhibit F, Schedule A
[6] See Exhibit F, Schedule B.

In this case, the TERI Guaranty was an essential part of the funding of the Program and so played a meaningful part in funding the Program.

**10. Plaintiff Makes No Claim That Repaying the Loan Will Cause an Undue Hardship**

Plaintiff's complaint makes no allegations of undue hardship. SMF 32. If a loan is nondischargeable under §523(a)(8), as NCSLT's Loan is, the Plaintiff must prove that repaying it will cause an undue hardship to obtain a discharge of the loan. The Ninth Circuit adopted the three-pronged *Brunner* test to determine if an undue hardship exists. *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998)

Accordingly, the debtor must prove "(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id*., at 396.

It is the Plaintiff's burden of proof to establish an undue hardship. *Carnduff v. United States Dep't of Educ. (In re Carnduff),* 367 B.R. 120, 134 (B.A.P. 9th Cir. 2007). The Plaintiff alleged no facts whatsoever in the complaint as to undue hardship, nor did she allege that she meets any of *Brunner's* three prongs. Because NCSLT's Loan is nondischargeable, the Plaintiff has no defense to the nondischargeability of the Loan.

**D. CONCLUSION**

NCSLT has met its initial burden to show that there are no material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 323. The Affidavit, the Loan documents, TERI's Guaranty, the Pool Supplement, the Deposit and Sale Agreement, the Deposit and Security Agreement, the Trust Agreement and the Complaint combine to show that Plaintiff's Loan was

and educational loan, made under a Loan Program, the Education One Continuing Education Loan Program, and that TERI, a nonprofit institution, funded the Program by its Guaranty. Where a student loan creditor satisfies the burden of proof that they hold an educational loan that was made under a program funded in part by a nonprofit institution, as NCSLT has done here, the creditor is entitled to summary judgment, unless the debtor can prove undue hardship. *White v. United States Dep't of Educ. (In re White)*, 243 B.R. 498, 505 (Bankr. N.D. Ala. 1999).

Plaintiff alleges not one fact in support of her allegation that "[t]he Loan was not made, insured, or guaranteed by a governmental unit; nor was it made under any program funded in whole or in part by a governmental unit or nonprofit institution."[7] Plaintiff can offer no evidence to show there are any material facts in dispute. In fact, the absence of such evidence compels a judgment in favor of NCSLT. *Celotex Corp.,* 477 U.S. at 325 and see *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d, at 1542-43. NCSLT is entitled to a judgment of nondischargeability as a matter of law.

In the alternative, NCSLT requests that the court issue a partial summary judgment to narrow the issues for trial or further briefing.

Respectfully submitted,

Dated: January 9, 2020               /s/ Scott S. Weltman
                                      Scott Weltman (SBN 145215)
                                      **Weltman, Weinberg & Reis, Co. L.P.A.**
                                      Attorney for Defendant,
                                      National Collegiate Student Loan Trust 2006-3

---

[7] See Complaint, Section II, Lines 10-11.