*106392*

Form **1023**
(Rev. July 1993)
Department of the Treasury
Internal Revenue Service

## Application for Recognition of Exemption
## Under Section 501(c)(3) of the Internal Revenue Code

OMB No. 1545-0056
Expires 5-31-96

If exempt status is approved, this application will be open for public inspection.

Read the instructions for each Part carefully.
**A User Fee must be attached to this application.**
If the required information and appropriate documents are not submitted along with Form 8718 (with payment of the appropriate user fee), the application may be returned to you.
**Complete the Procedural Checklist on page 7 of the instructions.**

| **Part I** | **Identification of Applicant** |
|---|---|

**1a** Full name of organization (as shown in organizing document)

TERI FINANCIAL SERVICES, INC.

**2** Employer identification number (If none, see instructions.)
04-3247228

**1b** c/o Name (if applicable)

THOMAS D. PARKER

**3** Name and telephone number of person to be contacted if additional information is needed

FRANCIS J. BEDARD
(617) 261-8735

**1c** Address (number, street, and room or suite no.)

330 STUART STREET, SUITE 500

**1d** City or town, state, and ZIP code

BOSTON, MA  02116

**4** Month the annual accounting period ends

DECEMBER 31, 1994

**5** Date incorporated or formed
9 / 21 / 94

**6** Activity codes (See instructions.)
043    041    059

**7** Check here if applying under section:
a ☐ 501(e)   b ☐ 501(f)   c ☐ 501(k)

**8** Did the organization previously apply for recognition of exemption under this Code section or under any other section of the Code? . . . . . . . . . . . . . . . . .   ☐ Yes  ☒ No
If "Yes," attach an explanation.

**9** Is the organization required to file Form 990 (or Form 990-EZ)? . . . . . . .   ☐ N/A  ☒ Yes  ☐ No
If "No," attach an explanation (see instructions).

**10** Has the organization filed Federal income tax returns or exempt organization information returns? . .   ☐ Yes  ☒ No
If "Yes," state the form numbers, years filed, and Internal Revenue office where filed.

*REC'D WITH REMITTANCE*
*OCT 31 1994*
*DIR. Int. REV. Brooklyn*
*BROOKLYN, N.Y.*
*#2*

**11** Check the box for the type of organization. BE SURE TO ATTACH A CONFORMED COPY OF THE CORRESPONDING DOCUMENTS TO THE APPLICATION BEFORE MAILING (See Specific Instructions, Part I, Line 11.) Get Pub. 557, **Tax-Exempt Status for Your Organization,** for examples of organizational documents.)

**a** ☒ Corporation—Attach a copy of the Articles of Incorporation (including amendments and restatements) showing approval by the appropriate state official; also include a copy of the bylaws.

**b** ☐ Trust—Attach a copy of the Trust Indenture or Agreement, including all appropriate signatures and dates.

**c** ☐ Association— Attach a copy of the Articles of Association, Constitution, or other creating document, with a declaration (see instructions) or other evidence the organization was formed by adoption of the document by more than one person; also include a copy of the bylaws.

If the organization is a corporation or an unincorporated association that has not yet adopted bylaws, check here ▶ ☐

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

**Please Sign Here** ▶  _(Signature)_    PRESIDENT _(Title or authority of signer)_    OCT 19, 1994 _(Date)_

For Paperwork Reduction Act Notice, see page 1 of the instructions.          Cat. No. 17133K

Form 1023 (Rev. 7-93)

Page

## Part II    Activities and Operational Information

1   Provide a detailed narrative description of all the activities of the organization—past, present, and planned. **Do not merely refer to or repeat the language in the organizational document.** Describe each activity separately in the order of importance. Each description should include, as a minimum, the following: (a) a detailed description of the activity including its purpose; (b) when the activity was or will be initiated; and (c) where and by whom the activity will be conducted.

PLEASE SEE ATTACHED STATEMENT II-1

2   What are or will be the organization's sources of financial support? List in order of size.

PLEASE SEE ATTACHED STATEMENT II-2

3   Describe the organization's fundraising program, both actual and planned, and explain to what extent it has been put into effect. Include details of fundraising activities such as selective mailings, formation of fundraising committees, use of volunteers or professional fundraisers, etc. Attach representative copies of solicitations for financial support.

PLEASE SEE ATTACHED STATEMENT II-3

Form 1023 (Rev. 7-93)

**Part II** **Activities and Operational Information** *(Continued)*

**4** Give the following information about the organization's governing body:

**a** Names, addresses, and titles of officers, directors, trustees, etc.

PLEASE SEE ATTACHED STATEMENT II-4

**b** Annual compen

**c** Do any of the above persons serve as members of the governing body by reason of being public officials or being appointed by public officials? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
If "Yes," name those persons and explain the basis of their selection or appointment. . . . . . . . . . □ Yes ☒ No

**d** Are any members of the organization's governing body "disqualified persons" with respect to the organization (other than by reason of being a member of the governing body) or do any of the members have either a business or family relationship with "disqualified persons"? (See Specific Instructions, Part II, Line 4d.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
If "Yes," explain. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes ☒ No

**5** Does the organization control or is it controlled by any other organization? . . . . . . . . . ☒ Yes □ No
Is the organization the outgrowth of (or successor to) another organization, or does it have a special relationship with another organization by reason of interlocking directorates or other factors? . . . . ☒ Yes □ No
f either of these questions is answered "Yes," explain.

PLEASE SEE ATTACHED STATEMENT II-5

**6** Does or will the organization directly or indirectly engage in any of the following transactions with any political organization or other exempt organization (other than a 501(c)(3) organization): **(a)** grants; **(b)** purchases or sales of assets; **(c)** rental of facilities or equipment; **(d)** loans or loan guarantees; **(e)** reimbursement arrangements; **(f)** performance of services, membership, or fundraising solicitations; or **(g)** sharing of facilities, equipment, mailing lists or other assets, or paid employees? . . . . . . □ Yes ☒ No
If "Yes," explain fully and identify the other organizations involved.

**7** Is the organization financially accountable to any other organization? . . . . . . . . . . . ☒ Yes □ No
If "Yes," explain and identify the other organization. Include details concerning accountability or attach copies of reports if any have been submitted.

PLEASE SEE ATTACHED STATEMENT II-7

Form 1023 (Rev. 7-93)

**Part II    Activities and Operational Information** *(Continued)*

8  What assets does the organization have that are used in the performance of its exempt function? (Do not include property producing investment income.) If any assets are not fully operational, explain their status, what additional steps remain to be completed, and when such final steps will be taken. If "None," indicate "N/A."

   PLEASE SEE ATTACHED STATEMENT II-8

9  Will the organization be the beneficiary of tax-exempt bond financing within the next 2 years?. . . . ☐ Yes ☒ No

10a Will any of the organization's facilities or operations be managed by another organization or individual ☒ Yes ☐ No
    under a contractual agreement?. . . . . . . . . . . . . . . . . . . . . . . . . .

  b Is the organization a party to any leases?  . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
    If either of these questions is answered "Yes," attach a copy of the contracts and explain the relationship between the applicant and the other parties.

   PLEASE SEE ATTACHED STATEMENT II-10a & b
                                                            . . . . . . . . . . . . ☐ Yes ☒ No

11  Is the organization a membership organization? . . . . . . . . . . . . . . . . ☐ Yes ☒ No
  a Describe the organization's membership requirements, and attach a schedule of membership fees and dues.
    NOT APPLICABLE

  b Describe the organization's present and proposed efforts to attract members, and attach a copy of any descriptive literature or promotional material used for this purpose.

    NOT APPLICABLE

  c What benefits do (or will) the members receive in exchange for their payment of dues?
    NOT APPLICABLE

12a If the organization provides benefits, services, or products, are the recipients required, or will ☐ N/A ☒ Yes ☐ No
    they be required, to pay for them? . . . . . . . . . . . . . . . . . . . . . .
    If "Yes," explain how the charges are determined, and attach a copy of the current fee schedule.

   PLEASE SEE ATTACHED STATEMENT II-12a

  b Does or will the organization limit its benefits, services, or products to specific individuals or ☐ N/A ☐ Yes ☒ No
    classes of individuals? . . . . . . . . . . . . . . . . . . . . . . . . . .
    If "Yes," explain how the recipients or beneficiaries are or will be selected.

    NOT APPLICABLE

13  Does or will the organization attempt to influence legislation?. . . . . . . . . . . ☒ Yes ☐ No
    If "Yes," explain. Also, give an estimate of the percentage of the organization's time and funds that it devotes or plans to devote to this activity.

   PLEASE SEE ATTACHED STATEMENT II-13

14  Does or will the organization intervene in any way in political campaigns, including the publication or ☐ Yes ☒ No
    distribution of statements? . . . . . . . . . . . . . . . . . . . . . . . .
    If "Yes," explain fully.

    NOT APPLICABLE

Form 1023 (Rev. 7-93)                                                                                                                    Page **5**

| **Part III** | **Technical Requirements** |
|---|---|

1   Are you filing Form 1023 within 15 months from the end of the month in which your organization was
    created or formed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ **Yes** ☐ **No**
    If you answer "Yes," do not answer questions on lines 2 through 7.

2   If one of the exceptions to the 15-month filing requirement shown below applies, check the appropriate box and proceed
    to question 8.
    **Exceptions**—You are not required to file an exemption application within 15 months if the organization:

    ☐  **a**   Is a church, interchurch organization of local units of a church, a convention or association of churches, or an
              integrated auxiliary of a church (see instructions);

    ☐  **b**   Is not a private foundation and normally has gross receipts of not more than $5,000 in each tax year; or

    ☐  **c**   Is a subordinate organization covered by a group exemption letter, but only if the parent or supervisory organization
              timely submitted a notice covering the subordinate.

3   If the organization does not meet any of the exceptions on line 2, are you filing Form 1023 within 27
    months from the end of the month in which the organization was created or formed?. . . . . . . ☐ **Yes** ☐ **No**

    If "Yes," your organization qualifies under section 4.01 of Rev. Proc. 92-85, 1992-42 I.R.B. 32, for an
    automatic 12-month extension of the 15-month filing requirement. Do not answer questions 4 through 7.

    If "No," answer question 4.                NOT APPLICABLE

4   If you answer "No" to question 3, has the organization been contacted by the IRS regarding its failure to
    file Form 1023 within 27 months from the end of the month in which the organization was created or
    formed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

    If "No," your organization qualifies for an extension of time to apply under the "reasonable action and
    good faith" requirements of section 5.01 of Rev. Proc. 92-85. Do not answer questions 5 through 7.

    If "Yes," answer question 5.             N.  APPLICABLE

5   If you answer "Yes" to question 4, does the organization wish to request relief from the 15-month filing
    requirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

    If "Yes," give the reasons for not filing this application prior to being contacted by the IRS. See Specific
    Instructions, Part III, Line 5, before completing this item. Do not answer questions 6 and 7.

    If "No," answer question 6.                NOT APPLICABLE

6   If you answer "No" to question 5, your organization's qualification as a section 501(c)(3) organization can
    be recognized only from the date this application is filed with your key District Director. Therefore, do you
    want us to consider the application as a request for recognition of exemption as a section 501(c)(3)
    organization from the date the application is received and not retroactively to the date the organization
    was created or formed?   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**
                                       NOT APPLICABLE

7   If you answer "Yes" to the question on line 6 above and wish to request recognition of section 501(c)(4) status for the period
    beginning with the date the organization was formed and ending with the date Form 1023 application was received (the
    effective date of the organization's section 501(c)(3) status), check here ▶ ☐   and attach a completed page 1 of Form 1024
    to this application.
                                       NOT APPLICABLE

Form 1023 (Rev. 7-93)

**Part III**    Technical Requirements *(Continued)*

8   Is the organization a private foundation?
    ☐ **Yes** (Answer question on line 9.)
    ☒ **No**   (Answer question on line 10 and proceed as instructed.)

9   If you answer "Yes" to the question on line 8, does the organization claim to be a private operating foundation?
    ☐ **Yes** (Complete Schedule E)
    ☐ **No**

After answering the question on this line, go to Part IV.

10   If you answer "No" to the question on line 8, indicate the public charity classification the organization is requesting by checking the box below that most appropriately applies:

**THE ORGANIZATION IS NOT A PRIVATE FOUNDATION BECAUSE IT QUALIFIES:**

| | | | |
|---|---|---|---|
| a | ☐ | As a church or a convention or association of churches (CHURCHES MUST COMPLETE SCHEDULE A.) | Sections 509(a)(1) and 170(b)(1)(A)(i) |
| b | ☐ | As a school (MUST COMPLETE SCHEDULE B.) | Sections 509(a)(1) and 170(b)(1)(A)(ii) |
| c | ☐ | As a hospital or a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital (MUST COMPLETE SCHEDULE C.) | Sections 509(a)(1) and 170(b)(1)(A)(iii) |
| d | ☐ | As a governmental unit described in section 170(c)(1). | Sections 509(a)(1) and 170(b)(1)(A)(v) |
| e | ☒ | As being operated solely for the benefit of, or in connection with, one or more of the organizations described in a through d, g, h, or i (MUST COMPLETE SCHEDULE D.) | Section 509(a)(3) |
| f | ☐ | As being organized and operated exclusively for testing for public safety. | Section 509(a)(4) |
| g | ☐ | As being operated for the benefit of a college or university that is owned or operated by a governmental unit. | Sections 509(a)(1) and 170(b)(1)(A)(iv) |
| h | ☐ | As receiving a substantial part of its support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public. | Sections 509(a)(1) and 170(b)(1)(A)(vi) |
| i | ☒ | As normally receiving not more than one-third of its support from gross investment income and more than one-third of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions). | Section 509(a)(2) |
| j | ☐ | The organization is a publicly supported organization but is not sure whether it meets the public support test of block h or block i. The organization would like the IRS to decide the proper classification. | Sections 509(a)(1) and 170(b)(1)(A)(vi) or Section 509(a)(2) |

If you checked one of the boxes a through f in question 10, go to question
15. If you checked box g in question 10, go to questions 12 and 13.
If you checked box h, i, or j, go to question 11.

Form 1023 (Rev. 7-93)                                                                                             Page 7

## Part III — Technical Requirements (Continued)

11  If you checked box **h, i, or j** on line 10, has the organization completed a tax year of at least 8 months?
   ☐ Yes—Indicate whether you are requesting:
       ☐ A definitive ruling (Answer questions on lines 12 through 15.)
       ☐ An advance ruling (Answer questions on lines 12 and 15 and attach two Forms 872-C completed and signed.)
   ☒ No—**You must request an advance ruling by completing and signing two Forms 872-C and attaching them to the application.**

12  If the organization received any unusual grants during any of the tax years shown in Part IV-A, attach a list for each year showing the name of the contributor; the date and the amount of the grant; and a brief description of the nature of the grant.

    NONE

13  If you are requesting a definitive ruling under section 170(b)(1)(A)(iv) or (vi), check here ▶ ☐  and:

  a  Enter 2% of line 8, column (e) of Part IV-A _____
  b  Attach a list showing the name and amount contributed by each person (other than a governmental unit or "publicly supported" organization) whose total gifts, grants, contributions, etc., were more than the amount entered on line 13a above.

14  If you are requesting a definitive ruling under section 509(a)(2), check here ▶ ☐  and:
  a  For each of the years included on lines 1, 2, and 9 of Part IV-A, attach a list showing the name of and amount received from each "disqualified person." (For a definition of "disqualified person," see **Specific Instructions, Part II, Line 4d.**)
  b  For each of the years included on line 9 of Part IV-A, attach a list showing the name of and amount received from each payer (other than a "disqualified person") whose payments to the organization were more than $5,000. For this purpose, "payer" includes, but is not limited to, any organization described in sections 170(b)(1)(A)(i) through (vi) and any governmental agency or bureau.

| 15  Indicate if your organization is one of the following. If so, complete the required schedule. (Submit only those schedules that apply to your organization. **Do not submit blank schedules.**) | Yes | No | If "Yes," complete Schedule: |
|---|---|---|---|
| Is the organization a church? . . . . . . . . . . . . . . . . . . . | | x | A |
| Is the organization, or any part of it, a school? . . . . . . . . . . . . . . | | x | B |
| Is the organization, or any part of it, a hospital or medical research organization? . . . . . . | | x | C |
| Is the organization a section 509(a)(3) supporting organization? . . . . . . . . . . | x | | D |
| Is the organization a private operating foundation? . . . . . . . . . . . . . | | x | E |
| Is the organization, or any part of it, a home for the aged or handicapped? . . . . . . . | | x | F |
| Is the organization, or any part of it, a child care organization? . . . . . . . . . . | | x | G |
| Does the organization provide or administer any scholarship benefits, student aid, etc.? . . . . | | x | H |
| Has the organization taken over, or will it take over, the facilities of a "for profit" institution? . . . | | x | I |

Form 1023 (Rev. 7-93)   Page **8**

| Part IV | Financial Data | PLEASE SEE ATTACHED STATEMENT IV-1 |

*Complete the financial statements for the current year and for each of the 3 years immediately before it. If in existence less than 4 years, complete the statements for each year in existence. If in existence less than 1 year, also provide proposed budgets for the 2 years following the current year.*

### A. Statement of Revenue and Expenses

| | | Current tax year | 3 prior tax years or proposed budget for 2 years | | | |
|---|---|---|---|---|---|---|
| | | (a) From ........ to ........ | (b) 19........ | (c) 19........ | (d) 19........ | (e) TOTAL |
| **Revenue** | 1  Gifts, grants, and contributions received (not including unusual grants—see instructions) . . | | | | | |
| | 2  Membership fees received . . | | | | | |
| | 3  Gross investment income (see instructions for definition) . . | | | | | |
| | 4  Net income from organization's unrelated business activities not included on line 3 . . . . . | | | | | |
| | 5  Tax revenues levied for and either paid to or spent on behalf of the organization . . . . | | | | | |
| | 6  Value of services or facilities furnished by a governmental unit to the organization without charge (not including the value of services or facilities generally furnished the public without charge) . . . . | | | | | |
| | 7  Other income (not including gain or loss from sale of capital assets) (attach schedule) . . | | | | | |
| | 8  Total (add lines 1 through 7) | | | | | |
| | 9  Gross receipts from admissions, sales of merchandise or services, or furnishing of facilities in any activity that is not an unrelated business within the meaning of section 513 | | | | | |
| | 10  Total (add lines 8 and 9) . . | | | | | |
| | 11  Gain or loss from sale of capital assets (attach schedule) . . . | | | | | |
| | 12  Unusual grants . . . . . . | | | | | |
| | 13  Total revenue (add lines 10 through 12) . . . . . . . | | | | | |
| **Expenses** | 14  Fundraising expenses . . . | | | | | |
| | 15  Contributions, gifts, grants, and similar amounts paid (attach schedule) . . . . . . . . | | | | | |
| | 16  Disbursements to or for benefit of members (attach schedule) . | | | | | |
| | 17  Compensation of officers, directors, and trustees (attach schedule) . . . . . . . | | | | | |
| | 18  Other salaries and wages . . | | | | | |
| | 19  Interest . . . . . . . . . | | | | | |
| | 20  Occupancy (rent, utilities, etc.) . | | | | | |
| | 21  Depreciation and depletion . . | | | | | |
| | 22  Other (attach schedule) . . . | | | | | |
| | 23  Total expenses (add lines 14 through 22) . . . . . . . | | | | | |
| | 24  Excess of revenue over expenses (line 13 minus line 23) | | | | | |

Form 1023 (Rev. 7-93)                                                                                    Page 9

**Part IV**    Financial Data *(Continued)*    PLEASE SEE ATTACHED STATEMENT IV-1

| B. Balance Sheet (at the end of the period shown) | | Current tax year Date 12/31/95 |
|---|---|---|
| **Assets** | | |
| 1   Cash . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2   Accounts receivable, net . . . . . . . . . . . . . . . | 2 | |
| 3   Inventories . . . . . . . . . . . . . . . . . . | 3 | |
| 4   Bonds and notes receivable (attach schedule) . . . . . . . | 4 | |
| 5   Corporate stocks (attach schedule) . . . . . . . . . . . | 5 | |
| 6   Mortgage loans (attach schedule) . . . . . . . . . . . | 6 | |
| 7   Other investments (attach schedule) . . . . . . . . . . | 7 | |
| 8   Depreciable and depletable assets (attach schedule) . . . . . . | 8 | |
| 9   Land . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10   Other assets (attach schedule) . . . . . . . . . . . | 10 | |
| 11       Total assets (add lines 1 through 10) . . . . . . . . | 11 | |
| **Liabilities** | | |
| 12   Accounts payable . . . . . . . . . . . . . . . . | 12 | |
| 13   Contributions, gifts, grants, etc., payable . . . . . . . . | 13 | |
| 14   Mortgages and notes payable (attach schedule) . . . . . . | 14 | |
| 15   Other liabilities (attach schedule) . . . . . . . . . . | 15 | |
| 16       Total liabilities (add lines 12 through 15) . . . . . . . | 16 | |
| **Fund Balances or Net Assets** | | |
| 17   Total fund balances or net assets . . . . . . . . . . | 17 | |
| 18       **Total liabilities and fund balances or net assets** (add line 16 and line 17) . . . | 18 | |

If there has been any substantial change in any aspect of the organization's financial activities since the end of the period
shown above, check the box and attach a detailed explanation . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

Form 1023 (Rev. 7-93)

Page 19

## Schedule D. Section 509(a)(3) Supporting Organization

| 1a Organizations supported by the applicant organization:<br>Name and address of supported organization | b Has the supported organization received a ruling or determination letter that it is not a private foundation by reason of section 509(a)(1) or (2)? | |
| --- | --- | --- |
| THE EDUCATION RESOURCES INSTITUTE, INC.<br>330 STUART STREET, BOSTON, MA  02116 | ☒ Yes | ☐ No |
| | ☐ Yes | ☐ No |
| | ☐ Yes | ☐ No |
| | ☐ Yes | ☐ No |
| | ☐ Yes | ☐ No |

c If "No" for any of the organizations listed in 1a, explain.

2 Does the supported organization have tax-exempt status under section 501(c)(4), 501(c)(5), or 501(c)(6)? ☐ Yes ☒ No
If "Yes," attach: (a) a copy of its ruling or determination letter, and (b) an analysis of its revenue for the current year and the preceding 3 years. (Provide the financial data using the formats in Part IV-A (lines 1–13) and Part III (lines 12, 13, and 14).)

3 Does your organization's governing document indicate that the majority of its governing board is elected or appointed by the supported organizations? . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No
If "Yes," skip to line 9.
If "No," you must answer the questions on lines 4 through 9.

4 Does your organization's governing document indicate the common supervision or control that it and the supported organizations share? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
If "Yes," give the article and paragraph numbers. If "No," explain.
NOT APPLICABLE

5 To what extent do the supported organizations have a significant voice in your organization's investment policies, in the making and timing of grants, and in otherwise directing the use of your organization's income or assets?
NOT APPLICABLE

6 Does the mentioning of the supported organizations in your organization's governing instrument make it a trust that the supported organizations can enforce under state law and compel to make an accounting? ☐ Yes ☐ No
If "Yes," explain.
NOT APPLICABLE

7a What percentage of your organization's income does it pay to each supported organization?
NOT APPLICABLE

b What is the total annual income of each supported organization?
NOT APPLICABLE

c How much does your organization contribute annually to each supported organization?
NOT APPLICABLE

For more information, see back of Schedule D.

Form 1023 (Rev. 7-93)                                                                                    Pa

## Schedule D. Section 509(a)(3) Supporting Organization *(Continued)*

8  To what extent does your organization conduct activities that would otherwise be carried on by the supported organization
   Explain why these activities would otherwise be carried on by the supported organizations.
   NOT APPLICABLE

9  Is the applicant organization controlled directly or indirectly by one or more "disqualified persons" (other
   than one who is a disqualified person solely because he or she is a manager) or by an organization that
   is not described in section 509(a)(1) or (2)? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
   If "Yes," explain.
   NOT APPLICABLE

## Instructions

For an explanation of the types of organizations defined in section 509(a)(3) as being excluded from the definition of a private foundation, see Pub. 557, Chapter 3.

### Line 1

List each organization that is supported by your organization and indicate in item 1b if the supported organization has received a letter recognizing exempt status as a section 501(c)(3) public charity as defined in section 509(a)(1) or 509(a)(2). If you answer "No" in 1b to any of the listed organizations, please explain in 1c.

### Line 3

Your organization's governing document may be articles of incorporation, articles of association, constitution, trust indenture, or trust agreement.

### Line 9

For a definition of a "disqualified person," see **Specific Instructions, Part II, Line 4d**, on page 3 of the application's instructions.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA  02116

EIN:   04-3247228
FYE:   December 31, 1994

**STATEMENT #II-1:**

**Form 1023, Part II, Line 1**

TERI Financial Services, Inc. ("TFSI") is organized and operated to foster and support educational programs which aid and assist students, parents, and educational institutions in seeking or providing educational opportunities.

TFSI's primary activity will be the private and public offering and sale of asset-backed debt securities (the "Securities") secured by a portfolio of student education loan obligations acquired by TFSI from participating lending institutions for the purpose of such offerings.  Certain of the student education loan obligations will be guaranteed by The Education Resources Institute, Inc. ("TERI").  TFSI is also organized to perform the functions of and carry out the broad educational purposes of TERI.  TERI was organized in 1985.  Its principal purpose is to foster and support educational programs which aid and assist students, parents, and educational institutions in seeking or providing educational opportunities, including a loan guarantee program instituted to increase the availability of funds for loans to students.  TERI is exempt from income taxation under Internal Revenue Code Section 501(c)(3) and qualifies for nonprivate foundation status under Section 509(a)(2). A majority of the governing board of directors of TFSI will be appointed by TERI.

The objective of TFSI's private and public offerings of Securities is to create a liquid secondary market in student education loans that will enable the participating lending institutions to sell the loans to TFSI and: (a) use the proceeds of such sale to make more new loans than they would otherwise be able to make; and, (b) lower the interest rates that they would otherwise charge the student borrowers.

The establishment of the secondary market will permit participating lending institutions to reduce the interest rates they charge on student education loans because TFSI will agree to purchase such loans from the lending institutions at a lower rate. TFSI will be able to buy and hold the loans at the lower interest rate because TFSI will assemble the student education loans as collateral for the Securities, and TFSI will pay an interest rate on the Securities that is lower than the interest rate TFSI is receiving on the student education loans. Because a portfolio of many student education loans has less risk associated with it than any single student loan, and because the portfolio of loans will be rated investment grade, TFSI will, in essence, be converting higher interest rate paying consumer debt (the student education loans) into lower interest rate paying investment grade debt (the Securities) which are marketable and will be sold in the secondary market. The secondary market will consist of institutional investors who will stand ready to purchase these Securities at the lower interest rate. Accordingly, the secondary market will allow participating lending institutions to reduce the interest rates they charge on student education loans. Any resulting benefits to the participating lending institutions will not be more than incidental.

The difference in interest rates between those payable to TFSI on the acquired student education loans and those payable by TFSI on the Securities will allow TFSI to more than cover all anticipated expenses. The income will be used to purchase additional student education loans and to pursue TFSI's other exempt activities described below. All receipts generated by TFSI's secondary market operations, including the proceeds from the issuance of the Securities, will be payable solely to TFSI, and will be used exclusively by TFSI for its exempt purposes.

The creation of the needed secondary market, which will produce a major benefit to the universe of student educational loan borrowers by: (a) increasing the availability and overall volume of student education loans; and (b) reducing student educational loan borrowing costs, is a particular function that TERI could logically perform itself as an integral part of its own overall functions. However, the investment banking firm serving as TERI's financial adviser has stated that, since TERI is already obligated on its guarantees of the student education loans which constitute collateral for the Securities, for credit reasons, a separate finance affiliate should be organized to serve as the issuer. An excerpt from a letter of Morgan Stanley & Co. dated May 10, 1994 addressed to Ernest T. Freeman, President of TERI is attached hereto and explains the necessity for a separate finance affiliate (page 4 of attachments). The use of TFSI as the financing arm will sufficiently insulate TFSI's obligations as issuer of the Securities from those of TERI generally, and under TERI's guarantees, to satisfy the rating agencies (such as Moody's) which would not otherwise provide investment grade ratings for the Securities.

Other activities that TFSI plans to conduct are the following: (i) providing free higher education and career counseling to interested students; (ii) awarding grants to Section 501(c)(3) organizations that aid and assist students to fulfill a program of higher education; and (iii) providing research services to other Section 501(c)(3) educational organizations and institutions.

The Internal Revenue Service has granted tax exemptions to organizations similar to TFSI. For example, Private Letter Ruling 9048046 involves an organization originally formed to provide administrative, staffing, and management services to a corporation operating a secondary market for Stafford Loans and another corporation guaranteeing loans. The organization sought to expand its activities from administrative, staffing, and management services, to operating a secondary market for loans not covered by the other organizations, such as Health Education Assistance Loan Program loans. The private letter ruling holds that the expansion into secondary market activities will not affect the organization's exempt status under IRC section 501(c)(3). In addition, the expansion was held not to affect that organization's nonprivate foundation status under IRC section 509(a)(3).

Many other private letter rulings refer to the exempt status of 509(a)(2) and 509(a)(3) nonprivate foundation organizations providing secondary market activities for student education loans. Please refer to the following:

1. PLR 9321087

2. PLR 9407016

3. PLR 9403022

4. PLR 9126019

5. PLR 8705087

6. PLR 8422169

**EXCERPT FROM LETTER DATED MAY 10, 1994**
**FROM MORGAN STANLEY & CO. TO ERNEST T. FREEMAN, PRESIDENT OF TERI**

The second step that we would strongly encourage is that TERI create a new financing affiliate, separate and apart from the corporate structure of TERI itself. You may recall that in early 1993, counsel advised that TERI's current structure made it difficult to structure a publicly offered sale of asset-backed securities, given the recourse of TERI behind the security structure of the loans. A separate financing entity structured in a manner to put the appropriate distance between the two affiliated entities would solve this problem and facilitate the public offering of securities. We would urge that TERI establish this affiliate in due course during 1994 so that TERI not be delayed by the establishment of corporate structures in order to take advantage of existing market conditions.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116

EIN:   04-3247228
FYE:   December 31, 1994

## STATEMENT #II-2:

### Form 1023, Part II, Line 2:

TERI Financial Services, Inc. ("TFSI") will derive its financial support from performing activities which carry out its mission of fostering and supporting educational programs which aid and assist students, parents, and educational institutions in seeking or providing educational opportunities. These sources of financial support include, but are not limited to, the following:

a.    Interest from student education loans:

The student education loans purchased from lending institutions will generate program related interest income to TFSI.

b.    Initial funding:

The initial funding for the organization will be provided by The Education Resources Institute, Inc. (TERI). TERI was organized in 1985 to foster and support educational programs which aid and assist students, parents, and educational institutions in seeking or providing educational opportunities. A majority of the governing board of directors of TFSI will be appointed by TERI.

c.    Contributions and grants:

TFSI will receive private and public contributions.

d.    Other investment income:

TFSI will receive earnings from its investments.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA  02116


EIN:   04-3247228
FYE:   December 31, 1994


**STATEMENT #II-3:**

**Form 1023, Part II, Line 3:**


Simultaneously with the private or public offering and sale of asset-backed debt securities collateralized by portfolios of student education loans (the "Securities") and the initiation of the secondary market in student education loans, TERI Financial Services, Inc. ("TFSI") will solicit gifts and grants from philanthropic entities, government agencies, corporations and individuals which have demonstrated an interest in fostering and supporting educational programs which aid and assist students, parents and educational institutions in seeking or providing educational opportunities. All of TFSI's fundraising activities will be performed by TFSI's officers as an integral component of their overall responsibilities but will not be the primary responsibility of any officer. TFSI operations will be TFSI's primary source of funding.

This fundraising program has not yet been put into effect and no mailings have been planned or begun.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116

EIN:    04-3247228
FYE:    December 31, 1994

## STATEMENT #II-4:

### Form 1023, Part II, Line 4:

| a.    Officers | Address | b.    Compensation |
|---|---|---|
| Ernest T. Freeman<br>Chief Executive Officer | 5 Lamplighter Way<br>Saugus, MA 01906 | All officers will be<br>compensated based on<br>allocation of time |
| Thomas D. Parker<br>President and<br>Chief Operating Officer | 89 Washington Avenue<br>Cambridge, MA 02140 | through TERI.<br>Total compensation<br>is approved by the<br>Board of Directors.[1] |
| Diane Burke<br>Treasurer and Clerk | 8 Roseland Street<br>Dorchester, MA 02124 | |

| a.    Directors | Address | b.    Compensation |
|---|---|---|
| Ernest T. Freeman<br>Chairman | 5 Lamplighter Way<br>Saugus, MA 01906 | All directors will<br>receive $3,000<br>per year and $500 |
| Richard A. Wiley | 34 Wachusett Road<br>Wellesley Hills, MA 02181 | per meeting of<br>a committee or the board. |
| Thomas D. Parker | 89 Washington Avenue<br>Cambridge, MA 02140 | Generally, the board<br>meets twice per year and<br>each member will meet |
| Arthur R. Jackson | 161 Tallyho Drive<br>Springfield, MA 01118 | twice per year for committee<br>meetings. |
| Edward Piana | 87 Independence Street<br>Canton, MA 02021 | |

In addition, there will be four (4) additional outside directors. These directors have not yet been elected or appointed.

---

[1]See Rider 7A

## RIDER 7A

1

---

[1]Three TERI officers, Ernest T. Freeman, Thomas D. Parker and Diane L. Burke, will serve as TFSI's officers. They currently receive salaries of $180,000, $108,000, and $70,000, respectively, from TERI for their services as officers of TERI. It is estimated that each of these officers will allocate approximately 20% of their time to TFSI. They will continue to receive their salaries from TERI; however, approximately 20% of the salaries will be charged to TFSI as an expense pursuant to the terms of a Management Services Agreement between TERI and TFSI.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116


EIN:   04-3247228
FYE:   December 31, 1994


**STATEMENT #II-5:**

**Form 1023, Part II, Line 5:**


The Education Resources Institute, Inc. ("TERI") is providing the initial funding for TERI
Financial Services, Inc. ("TFSI"). TFSI has a mission very similar to TERI. In addition, TERI
will designate a majority of the Board of Directors of TFSI.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116


EIN:   04-3247228
FYE:   December 31, 1994


STATEMENT #II-7

**Form 1023, Part II, Line 7:**


TERI Financial Services, Inc. is required to make annual filings with the Massachusetts Secretary of State's office (Certificate of Condition) and with the Public Charities Division of the Office of the Attorney General of the Commonwealth of Massachusetts (Form PC). The Massachusetts Form PC is open to the public for inspection.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA  02116


EIN:    04-3247228
FYE:   December 31, 1994


**STATEMENT #II-8:**

**Form 1023, Part II, Line 8:**


TERI Financial Services, Inc. ("TFSI") will have an infusion of initial working capital from The Education Resources Institute, Inc. to begin operations.  These funds will be used to acquire the first group of student education loans serving as the collateral for the asset backed securities sold to investors by TFSI.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA  02116


EIN:  04-3247228
FYE:  December 31, 1994


**STATEMENT #II-10a & 10b:**

**Form 1023, Part II, Line 10a:**


TERI Financial Services, Inc. ("TFSI") will pay an administrative services fee to The Education Resources Institute, Inc. ("TERI").  The fees charged for the services provided will be based upon actual expenses or costs plus a reasonable return to result in an arm's length transaction as set forth in the attached proposed Management Services Agreement dated September ___, 1994 between TERI and TFSI (attached hereto at Page 13 of Attachments).


**Form 1023, Part II, Line 10b:**


TERI Financial Services, Inc. ("TFSI") is not currently a party to any leases.  TFSI may become a party to lease agreements in the future.  Any future leases will be entered in the ordinary course of business as part of an arm's length transaction.

**The Education Resources Institute, Inc.**
330 Stuart Street, 5th Floor
Boston, Massachusetts  02116

September ___, 1994

Thomas D. Parker
President
TERI Financial Services, Inc.
330 Stuart Street, Suite 500
Boston, MA  02116

Re:    Management Services Agreement

Dear Tom:

This letter will set forth our agreement pursuant to which The Education Resources Institute, Inc. ("TERI") will provide management and administrative services to TERI Financial Services, Inc. ("TFSI").

TERI, subject to the control and direction of TFSI's Board of Directors, shall supervise and manage the provision of management, administrative, auditing, bookkeeping, legal, personnel, tax and public relations services and such other, similar operational activities as may be requested by TFSI.  TERI shall also furnish to TFSI office space, facilities, equipment and personnel adequate to provide the foregoing services and shall be reimbursed by TFSI for the total costs of such services.

TFSI shall reimburse TERI for its total "cost" as that term is more fully described herein.  The "cost" of services provided to TFSI hereunder shall be deemed to include the relevant direct expenditures by TERI (including the cost of goods and services obtained from others) together with an agreed-to appropriate allocation of related overhead costs, such as depreciation, interest, employee supervision, rent and like costs.  Such reimbursement shall be payable for each calendar month as soon as practicable after the end of that month.  To the extent that any of the foregoing costs are allocated between TFSI and other activities of TERI, such costs shall be allocated on the basis of reasonable approximations.

This Agreement shall become effective on the date hereof and shall continue in force from year to year thereafter until terminated at any time by either party on not less than sixty (60) days written notice or upon such shorter notice as may be mutually agreed upon.  Such termination shall be without payment of any penalty.

Thomas D. Parker
President
Page Two
September ___, 1994

Except as otherwise agreed, in the absence of willful misfeasance, bad faith, negligence or reckless disregard of obligations or duties hereunder on the part of TERI, TERI shall not be subject to liability to TFSI or to any officer or director of TFSI, for any act or omission in the course of, or connected with, rendering services hereunder.

If you are in agreement with the foregoing, please so indicate by signing, dating and returning one copy of this Agreement, which will constitute our agreement with respect to the matters set forth herein.

Sincerely,

THE EDUCATION RESOURCES
INSTITUTE, INC.

By:_____
Ernest T. Freeman, President

Accepted and Agreed as Aforesaid:
TERI FINANCIAL SERVICES, INC.

By:_____
Thomas D. Parker, President

K:\TERI\Parker.wrd

*Page 14*

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116


EIN:  04-3247228
FYE:  December 31, 1994


STATEMENT #II-12a:

**Form 1023, Part II, Line 12a:**

TERI Financial Services, Inc.'s ("TFSI") activities of purchasing student education loan obligations from participating lending institutions to create a secondary market for certain student education loans will increase the availability of student education loans and decrease the interest rate charged on such student education loan obligations.  There will be no charge to the student for these secondary market services.  The students are, of course, required to pay the student education loans according to the terms set by the relevant lending institutions.


TFSI will also provide (i) higher education and career counseling to interested students; (ii) grants to Section 501(c)(3) organizations that aid and assist students to fulfill a program of higher education; and (iii) research services to Section 501(c)(3) education organizations and institutions.  TFSI will provide these services free of charge.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA  02116

EIN:   04-3247228
FYE:   December 31, 1994

## STATEMENT #II-13:

### Form 1023, Part II, Line 13:

In a small and limited capacity, TERI Financial Services, Inc. ("TFSI") may be asked to assist with activities as legislation is developed.  Congressional staff may ask for advice about alternative legislative proposals involving the financing of education.  The United States Department of Education may ask TFSI to share information which could improve student education loan programs.  TFSI's staff anticipate spending less than one percent (1%) of its time in these activities.  First year expenses are projected to be less than $30,000 for these activities.

TERI Financial Services, Inc.
330 Stuart Street
Boston, MA 02116

EIN: 04-3247228
FYE: December 31, 1994

**STATEMENT #IV-1:**

**Form 1023, Part IV, Financial Data:**

No projected Statements of Revenue and Expenses and Balance Sheets for TERI Financial
Services Inc. ("TFSI") currently exist. The organization expects to generate income from the
student education loans purchased, income from grants and contributions, the initial working
capital it will receive from The Education Resources Institute, Inc. ("TERI"), and other income
from earnings on its cash balances.

Based upon preliminary discussions and analyses undertaken with an investment banking firm in
the last year, TFSI proposes to purchase student education loans from the primary lenders. Based
upon market conditions analyzed at that time, which might well, of course, be different in the
future, the student education loans would generally pay interest at a rate of PRIME plus 1.5%.
These loans would serve as the collateral for the asset backed securities ("Securities") to be issued
by TFSI. The Securities issued would likely be priced to pay an interest rate in the range of
LIBOR (London Interbank Offering Rate) plus 1.00% to 1.25%. LIBOR is the rate used by
London banks to charge one another for borrowed funds. LIBOR is used in many bond
transactions where the rate paid on the underlying collateral is based on PRIME. PRIME has
historically exceeded LIBOR by an average of 1.52%; accordingly, TFSI will receive an estimated
gross spread of between 1.75% to 2.00% in connection with the acquisition of the student
education loans and the sale of the Securities.

TFSI will have expenses of paying the discounted value of the student loans to the primary
lending institutions in order to purchase the loans, the costs associated with packaging the loans
as collateral for asset backed Securities and the costs of offering and selling the Securities.
Additional expenses for other activities such as studies on financing of education will also occur.

Estimated costs of the offering and issuance of the Securities include the following:

I.      Prior to the Sale of the Bonds

      *a.*      *Corporate Counsel* - Approximately $10,000 for the review of the legal documents
and contracts including various opinions on legal issues.

b.    *Bond Counsel* - Generally $.80 - $1.00 per bond to issue various opinions regarding the tax status of the bonds and whether the notes are subject to registration requirements of certain federal laws. Bond counsel reviews all documents and drafts the Bond Form and Indenture of Trust.

c.    *Rating Agencies* - A one time fee varying by rating agency. Typical fees range from $25,000 - $50,000 per agency. The Rating agencies review the documentation and assign a rating based on the likelihood of the bondholder receiving timely interest and principal payments over the life of the bonds.

d.    *Trustee Fees* – For proper administration of the records and accounts, these fees can be expected to range from $10,000 - $20,000, in addition to annual processing charges and transaction fees for services such as wire transfers.

e.    *Accountants' Fees* - Generally $5,000 - $15,000 depending on the scope of the work required to provide a comfort letter and/or cash flow verification.

f.    *Issuer's Expenses* - Includes travel and other miscellaneous expenses ranging from $5,000 to $15,000.

g.    *Management Fees* - Compensation to the underwriter for expertise, advice, and guidance including the design and implementation of the transaction. Fees are expected to be approximately $75,000.

II.    <u>Subsequent to the Sale of the Bonds</u>

a.    *Management and Takedown Fees* - Compensation to the underwriters and fees paid to salespeople to sell the bonds of approximately $450,000.

b.    *Underwriting Risk* - Represents amounts paid of approximately $12,500 for the underwriter to purchase bonds unsold after the first offering.

c.    *Expenses* - Approximately $100,000 for out of pocket expenses of the underwriter during the transaction. The expenses include: professional fees and disbursements for underwriter's counsel, travel, market development, computer, printing, shipping of documents, communication costs, closing expenses, bond related costs, CUSIP fees, day loans, wire charges, MSRB and PSA fees, and other fees or expenses related to the bond offering.

The actual amounts of these income items and expense items is yet to be determined.

The balance sheet will be composed mostly of an asset representing the student education loan portfolio of loans bought from the primary lending institutions. A small cash balance will be an additional asset. Accrued loan interest is also expected to be an asset. The major liability is the debt incurred in issuing the securities which are collateralized by the student education loans.

An additional liability may be a liability to TERI for initial working capital and for the funding of the initial purchase of student education loans. The net of assets less liabilities will represent the program equity of the organization. Exact amounts are yet to be determined.

Page 19 of Attachments