Austin C. Smith NYSB (NYSB 5377254) *Pro Hac Vice*
SMITH LAW GROUP
3 Mitchell Place
New York, NY 10017
917-992-2121
austin@acsmithlawgroup.com

Christopher R. Bush CASB 243471
Law Office of Chris Bush
2727 Camino del Rio S., Ste 135
San Diego, CA 92108
619-678-1134
chris@chrisbushlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>CESAR MEDINA<br>KRYSTAL ANNE MEDINA | Case No. 17-05276-LT<br>Chapter 7 |
| KRYSTAL ANNE MEDINA<br>        Plaintiff,<br>    vs.<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3;<br>        Defendant. | Adversary No. 19-90065-LT<br><br>**PLAINITFF'S SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

i

In her opposition, Plaintiff argues that Defendant's motion for summary judgment was premised on multiple misinterpretations of section 523(a)(8), that Defendant had failed to establish that TERI had "funded" the program under which the subject loan was made, that TERI was a "nonprofit" at the time of the subject loan, and that TERI was an "institution" under the Code. Plaintiff makes five brief points in response to Defendant's reply.

First, as to TERI's questionably non-charitable activities, Defendant does not deny any of it.  Rather, Defendant's response seems to be there's nothing anybody can do about it, and/or that there's nothing wrong with using a charity for commercial purposes. This is eerily reminiscent of another nonprofit student lending scandal from 2007. After the Washington Post published an expose on the nonprofit lender EduCap, which had purchased a jet and paid its executives enormous salaries, its CEO defended the practices as perfectly valid, and challenged anybody who had a problem with it, to "take it up with Congress."[1] Senator Grassley, hardly an anti-business radical, accepted that challenge and assured Educap that even pro-business conservatives had a problem with it:

> "The head of this organization invited critics to 'take it up with Congress.' I look forward to EduCap providing a complete response to our questions so Congress can have an informed view of EduCap and the laws governing

---

[1] Amit Paley, *Student Loan Nonprofit A Boon to CEO*, WASHINGTON POST, July 16 2007, available at, https://www.washingtonpost.com/wp-dyn/content/article/2007/07/15/AR2007071501448.html. As with most knee-jerk affirmative defenses of patently unethical conduct, EduCap would later announce it was changing its behavior while insisting this change had nothing to do with the investigation.

nonprofit organizations. The EduCap board, with leaders such as the former FBI director and former vice chairman of the Joint Chiefs of Staff, needs to provide the public and the Congress with a full explanation of the charity's management and operations. The taxpayers and Congress need full confidence that public charity executives aren't enjoying private jet vacations on the backs of students being charged 18 percent loan interest rates." Senator Grassley, July 24, 2007.[2]

Second, Defendant errs in its analysis of the First Circuit case cited by Plaintiff. Plaintiff is not suggesting this Court can or should strip TERI of its 501(c) status. That is not what *Zimmerman* held; in fact, Zimmerman explicitly states the opposite. *Zimmerman* states that when Congress uses the term nonprofit and does not define it as coterminous with a 501(c), courts look behind the form of the entity and into the substance to determine if the entity was operating as a nonprofit. *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 479 (1st Cir. 2005) (stating that if the defendant 501(c) was used by others "to enrich themselves . . . [and] siphon off corporate assets," [that] could support a finding that Cambridge was not actually operating as a nonprofit organization and is therefore subject to the CROA."). *Zimmerman* understood this would not directly impact the entities 501(c) status.[3]

---

[2] https://www.finance.senate.gov/ranking-members-news/senators-seek-information-from-education-loan-non-profit

[3] Defendant also claims Plaintiff's Exhibit 5 is about TERI Financial Services Inc, rather than TERI and the interest rates. TSFI was a "financing affiliate" of TERI, and in Plaintiff's Exhibit 9 at 12-13, TSFI represented to the IRS that "TSFI is also organized to perform the functions and carry out the broad educational purposes of TERI . . .for credit reasons, a separate finance affiliate should be organized to serve the issuer." See also

2

Third, Defendant claims that the loans in *Roberson* are distinguishable. In *Roberson*, the Seventh Circuit quoted legislative history from 1978 that defined the term "educational loan." *Matter of Roberson*, 999 F.2d 1132, 1135–36 (7th Cir. 1993) ("As the proponents of a higher standard for dischargeability recognized: [E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and rely [ ] for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future. H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6094."). *Roberson* offers a definition of the term "educational loan, and is thus a source of authority which Plaintiff cited in the same way Defendant cited the OED.[4] Defendant also states that Private Letter Rulings cannot be cited as precedent. This is a risky argument given Defendant has told this Court it cannot examine TERI's activities but must instead blindly defer to an IRS letter from 1987. PLRs are non-precedential for the exact same reason 501(c) status is

---

Exhibit 9 at 28 (reiterating the credit terms TSFI would be able to offer if IRS gave it tax exemption).

[4] Defendant bizarrely denies that FMC's 2004 Annual Report mentions Wells Fargo or Sallie Mae. They are mentioned a half a page above the statement Plaintiff cited. And Plaintiff agrees that FMC was disclosing a business risk. *That was Plaintiff's point.* Defendant used TERI as a business advantage, and warned investors if TERI lost its nonprofit status, "TERI would cease to have this competitive advantage over potential for-profit providers of the services that TERI provides . [more disclosures]. . [w]e are aware of two competitors, Sallie Mae and Servus Financial Corporation, which is an affiliate of Wells Fargo & Company, that offer a similar range of services to other lenders." See Plaintiff's Exhibit 5 at 53-54.

3

non-precedential, and Plaintiff will withdraw any reference to the PLRs if Defendant withdraws its 501(c) determination letter. *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 477 (1st Cir. 2005) (stating that a 501(c) status "determination is not binding in subsequent litigation challenging the applying entity's tax-exempt status.") (citing 26 U.S.C. 6110(k)(3)).

Fourth, Defendant errs in arguing that Plaintiff bears the burden of proving the loan is outside section 523(a)(8). Defendant's counsel squarely argued, and lost, this issue at the Ninth Circuit BAP not three years ago. *In re Kashikar*, 567 B.R. 160, 168 (9th Cir. BAP 2017) ("We remind the parties of two points. First, once the question is put at issue by an appropriate party, '[u]nder § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters . . . [t]he burden then shifts to the debtor to prove [undue hardship] by a preponderance of the evidence."). Accordingly, even if Plaintiff had moved for summary judgment (which she did not), she would only need to prove that Defendant lacked evidence on a single element of its case in chief. It is the Defendant's burden to prove that there is no genuine dispute about any material fact of each and every element; Defendant has failed.

Fifth, Defendant insists that "institution" should be broadly interpreted. It should be noted that Defendant rejects this form of statutory construction for other words in the same provision, including "guaranteed" or "funded," which Defendant interprets other than according to their plain meaning. This argument otherwise

4

ignores another important canon of construction: exceptions to discharge are construed narrowly. *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992) ("In order to effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor."). This does not change in the context of 523(a)(8). *In re Christoff*, 527 B.R. 624, 629 (9th Cir. BAP 2015) (applying cannon of narrow construction in 523(a)(8)). Defendant's proffered definition of "institution" reads that an institution is any organization "instituted for the promotion of some object." With all due respect to the authors of the OED, that is not a particularly useful definition and it is difficult to imagine an organization that is *not* instituted for some object—"for some object" is already contained in the concept of "instituted," which itself is simply the verbal-form of the word "institution." It is generally considered poor lexicography to use the word being defined in the definition. And this is because it is circular and creates ambiguity. Plaintiff has argued that the term "institution" means a school or college which is apparent from the fact that the term was taken directly from the Higher Education Act, which uses the term "institution" to mean a college, university or vocational school. When a term is obviously transplanted from another statute, it brings with it the "old soil." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (U.S. 2019) ("When a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'"). *See also Greenwood Trust Co. v. Com. of Mass.*, 971 F.2d 818, 827 (1st Cir. 1992) ("What is more, when borrowing of this sort occurs, the

borrowed phrases do not shed their skins like so many reinvigorated reptiles."). With all due respect to courts that have said they will not read "higher education" back into the statute, that is a straw-man defense. Nobody is asking the courts to read "of higher education" back into the statute. *In re Rosen,* 179 B.R. 935, 938 (Bkrtcy.D.Or.,1995) ("The debtor would basically have me read the term back into section 523(a)(8) by imposing a post-secondary or higher education requirement. The language of the statute is not so limited."). Plaintiff is simply asking this Court to consider the term in its context and place. There are two competing definitions of institution: Plaintiff argues that it means a scholastic organization like a college or university that participates in Title IV of the HEA. This includes any school or college that participates in Title IV, and not only those teaching the liberal arts. Defendant insists it means any organization instituted for the promotion of some object; but that does not actually help Defendant because by expanding the definition broadly enough to fit itself within, the definition becomes so hopelessly ambiguous that we must resort to the legislative history which completely undermines the Defendant's arguments. Furthermore, it defies the plain fact evident in using the particular and peculiar word "institution" as opposed to "organization," "person," "lender," "creditor," or "entity." Even if both interpretations were equally plausible, the narrower should control under the appropriate cannon of construction. *In re Gallen*, 559 B.R. 349, 356 (Bkrtcy. S.D.N.Y. 2016) ("Any ambiguities as to whether the debt satisfies

6

an exception to discharge 'must be resolved in favor of the debtor because, failure to obtain a discharge can result in a debtor's financial death sentence.'").

The Defendant insists that the term "educational loan" means any debt incurred by a student, the word "program" means any marketing platform used to originate debt, the word "institution" means any organization instituted for some object, the word "guaranteed" means funded, the word "funded" means "meaningful participation," but it is irrelevant how "meaningful" this "participation" was, and courts can only interpret "nonprofit" to mean a 501(c) even those acting in bad faith.[5] Consider this. Defendant seems to argue that "nonprofit" would include a fraudulent charity but would not include a community center that offered free reading lessons if it hadn't obtained federal tax exemption. Seemingly aware of how absurd this sounds, Defendant mounts its last defense that whatever the truth may be, it's far too late to change the meaning of these words now.  With all due respect, there is not even a Ninth Circuit case on point and the only BAP decision is from nearly 30 years ago. *Stare decisis* is no doubt a crucial aspect of the common law but when terms are interpreted improperly, they should be reexamined, as the Supreme Court acknowledged about another term that is also found in 523(a)(8) and which it defined

---

[5] *Zimmerman,* at 477 ("Congress cannot have intended unscrupulous credit repair organizations to have such easy access to CROA immunity. *Cf. Esden v. Bank of Boston,* 229 F.3d 154, 177 (2d Cir.2000) ("An erroneous ruling by an IRS key district director, especially when procured by submission of limited or confusing information, cannot defeat the express statutory rights of [consumers]. The adjudication of those rights is for the federal courts, not the field offices of the IRS.").

in the 1970s. *See Patterson v. Walgreen Co.*, 2020 WL 871673, at *1 (U.S. 2020)("As the Solicitor General observes, *Hardison*'s reading does not represent the most likely interpretation of the statutory term 'undue hardship;' the parties' briefs in *Hardison* did not focus on the meaning of that term; no party in that case advanced the *de minimis* position; and the Court did not explain the basis for this interpretation. I thus agree with the Solicitor General that we should grant review in an appropriate case to consider whether *Hardison*'s interpretation should be overruled.") (Alito, J.).

Respectfully submitted,

By:   __/s/ Austin C. Smith_____
Austin C. Smith
SMITH LAW GROUP
3 Mitchell Place
New York, NY 10017

___/s/ Christopher R. Bush_____
Christopher R. Bush
Law Office of Chris Bush
2727 Camino del Rio S., Ste 135
San Diego, CA 92108