TENTATIVE RULING

ISSUED BY JUDGE LAURA S. TAYLOR

Adversary Case Name:     KRYSTAL ANNE MEDINA v. NATIONAL COLLEGIATE STUDENT LOAN TRUST 2

Adversary Number:        19-90065

Case Number:             17-05276-LT7

Hearing:                 10:00 AM  Wednesday, March 11, 2020

Motion:    MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3

    In this adversary proceeding Plaintiff seeks a ruling that her indebtedness to National Collegiate Trust ("Defendant") is discharged.  Plaintiff's very short Complaint provides in relevant part:

**FACTS**

- On or about June 20, 2006, Plaintiff obtained a loan (the "Loan") to attend the San Diego Culinary Institute (the "School").

- Debtor graduated from the School in July of 2007.

- The School was a private, for-profit enterprise at the time the Plaintiff attended.

- The Loan was not made, insured, or guaranteed by a governmental unit; nor was it made under any program funded in whole or in part by a governmental unit or nonprofit institution.

- The Loan is not the result of an obligation to repay funds received as an educational benefit, scholarship, or stipend.

- At the time of Plaintiff's attendance, the School was not eligible to participate in a program under title IV of the Higher Education Act of 1965.

- The Plaintiff's Chapter 7 Discharge was entered on or about November 28, 2017.

**FIRST CAUSE OF ACTION**

    The Plaintiff's indebtedness to Defendant was discharged in the Chapter 7 case as the facts and circumstances associated with the

school, the law, the lender, and the indebtedness, do not support the application of the exceptions to discharge described under 11 USC 523(a)(8). The Loan was not made or guaranteed by a government or nonprofit institution, is not the result of an educational benefit or stipend, and is not a "qualified education loan" as defined in section 221(d)(1) of the Internal Revenue Code of 1986.

Dkt. No. 1.

Plaintiff does not argue that repayment of the debt would cause undue hardship.

Defendant's answer is curious; it denies that there is even a loan. One wonders how it can make a claim. But then, as an affirmative defense, it switches gears and asserts that the "loan, at issue," is nondischargeable under § 523(a)(8)(A)(i) which, for the purposes of this case, excepts from discharge any debt for an educational loan made under any program funded in whole or in part by a nonprofit institution. As fleshed out in this Motion for Summary Judgment, Defendant explains that the Loan qualifies under § 523(a)(8)(A)(i), because it is made through a loan program which was guaranteed by the nonprofit, The Education Resources Institute, Inc., ("TERI").

Defendant seeks summary judgment on this affirmative defense. Between the filing of the Motion through Plaintiff's sur-reply, the pleadings have ballooned into a multi-issue matter. As discussed in detail below, in order to succeed Defendant must establish, for purposes of summary judgment, all of the following:

1. TERI's guaranty of the loan program satisfies the requirement that the program was "funded" by a nonprofit.

2. The term "institution" need not be an "educational" institution.

3. TERI was a "nonprofit" institution.

In her Opposition, Plaintiff argues that Defendant misinterprets section 523(a)(8), and that Defendant had failed to establish any of the above.

It is not clear whether Plaintiff challenges whether the Loan was an "educational" loan. In one of the 78 footnotes in the Opposition, Plaintiff states, "There is also a question as to whether the NCSLT Loan can even be classified as an "educational loan." Opp. at FN 53. However, in her own characterization of her Opposition, Plaintiff did not include this as an issue. See Sur-Reply at 1-8. The Court does not consider the point further in this Tentative.

**Non-compliance with Local Rules**

Defendant should be prepared to address why its motion should not be denied without prejudice for failure to comply with the Local Rules of this Court. The motion and related memoranda exceeded 10 pages; a table of contents and

cases is required. LBR 9013-7(d)(3). Defendant could not be bothered to comply. And, without leave of the Court, its reply exceeded 10 pages in contravention of LBR 9013-7(d)(2). And, again, there were no tables – another violation of LBR 9013-7(d)(3).

The Court is not impressed with the nose-thumbing failure to comply with its rules. This is particularly true as Defendant asked for – and received – additional time for reply.

Assuming that the matter proceeds, the Court preliminarily concludes as follows.

**Standard for Summary Judgment**

For summary judgment, the moving party must establish that: (a) there are no genuine issues as to any material fact; and (b) the moving party is entitled to judgment as a matter of law. FRCP 56(c) (made applicable by FRBP 7056). A "material" fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a reasonable jury to return a verdict for that party. *Id.* In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party. *Id.*

**Burden**

Under § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters. *Kashikar v. Turnstile Capital Mtg., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017)(citing *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 916–17 (9th Cir. BAP 2013); *Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831, 834 (Bankr. D. Mass. 2019) (lender bears burden of showing that the loan is of a type excepted from discharge). Once this burden is met, the burden of production shifts to debtor. *Greer-Allen,* 602 B.R. at 834. But the ultimate burden of proof by the preponderance of the evidence is lender's. *Id.*

**Section 523(a)(8)(A)(i)**

Section 523(a)(8)(A)(i) provides in relevant part:

(a) A discharge under section 727…. of this title does not discharge an individual debtor from any debt-- (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in

whole or in part by a governmental unit or nonprofit institution…

As already noted, Plaintiff does not allege undue hardship. And Defendant does not claim that the Loan was funded by a governmental unit.

Thus, Defendant must meet its initial burden of establishing that the Loan was "made under any program funded in whole or in part by a nonprofit institution." And it must do so keeping in mind the sub-issues discussed above.

**Analysis**

In analyzing the issues, the Court is aware that § 523(a) exceptions should be construed narrowly. *Greer-Allen*, 602 B.R. at 834.

**Whether a Program is "Funded" by an Institution that only Guarantees the Loans**

It is not disputed that the Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program. Defendant does not contend that TERI provided any of the funds that were used by the Program to make this Loan or any other loans. Rather, Defendant argues that by guaranteeing loans made under the Program, TERI "funded" the Program as that term is used in the statute.

Plaintiff argues that the clause "made under any program funded in whole or in part by a nonprofit institution" refers to loans made under the National Direct Student Loan Program and that it only protects government funded loans and loans funded directly by nonprofits, colleges, and universities. The Court does not understand Plaintiff to argue that the Program, itself, would not qualify. Instead, in essence, it argues that the TERI guarantee is not "funding" within the meaning of the Statute.

Numerous cases have held that student loans made by private for-profit banks were nondischargeable if they were made through a student loan program guaranteed, in whole or in part, by a nonprofit institution. *See O'Brien v. First Marblehead Educ. Resources, Inc. (In re O'Brien)*, 419 F.3d 104 (2d Cir. 2005).

*O'Brien* relied upon *Hemar Serv. Corp. of Am. Inc. v. Pilcher (In re Pilcher)*, 149 B.R. 595, 600 (B.A.P. 9th Cir. 1993), in which the Panel also held:

> Notwithstanding Pilcher's contentions, the overall educational loan program received nonprofit funding. As we have stated in the preceding section, § 523(a)(8) does not require that the actual loan itself be funded by a nonprofit institution.

*Id.* at 600. See also fn. 3. The *Pilcher* Panel also ruled that that extent of the nonprofit's funding need not be "meaningful:"

> The plain language of § 523(a)(8) states that funding may be "in whole or in part." The addition of the meaningfulness requirement is

> purely a judicial creation. No qualifying language was included by Congress to establish minimum levels of participation. Therefore no inquiry into the meaningfulness of the participation is required.

*Id.* at 600 (deciding not to follow *The Education Resources Instit., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160 (Bankr. N.D. Cal. 1989) on this point.)

Indeed, all courts which have considered the issue have agreed that directly funding the loans is not required. *See, Decker v. EduCap, Inc.*, 476 B.R. 463, 467-468 (W.D. Pa. 2012); *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989); *In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); *Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019). *Univ. v. Merchant (In re Merchant),* 958 F.2d 738, 740 (6th Cir. Mich. 1992); *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016); *In re Duits*, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020) ("Based on the evidence presented, the loans here fit both the first and the third scenarios. They were initially funded by a private lender but were guaranteed by TERI, a nonprofit institution. Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty "helps fund a program because it encourages a lender to extend credit that may not be otherwise available.").

Plaintiff has provided no case which has held to the contrary, but rather argues that all of these cases are in error. The Court has reviewed the cases and finds their reasoning sound.

The Court acknowledges that the focus on the plain language of the statute leads to a disconnect – funding is not necessarily synonymous with guaranteeing that obligation's repayment. But Defendant argues to the contrary. If the matter proceeds, Defendant should be prepared to point to specific evidence in the record that supports its assertion that TERI's guarantee is the factual and legal equivalent of funding. Plaintiff should be prepared to respond and to explain why a guarantee is not a form of programative funding if, on occasion, the guarantees are honored and if, in the absence of such guarantees, the loans would not be made.

Defendant is cautioned that a summary judgment in this case requires admissible evidence **in this case**. The conclusions of other courts on the record then before them is interesting, but not dispositive.

Plaintiff finally argues that there is no evidence that TERI guaranteed (i.e. funded) her particular Loan. Again, as the Panel in *Pilcher* held, it is the *program*, as opposed to the individual loan, that had to be funded in part:

> The bankruptcy court erroneously focuses on whether Pilcher's loan was partially funded by a nonprofit institution. However, the plain

> language of § 523(a)(8) indicates that it is the program that need be funded by a nonprofit institution. Section 523(a)(8) does not define "program," but the use of the modifier "any" suggests a broad definition. Congress did not use language indicating that the loan itself must be funded by a nonprofit institution, but that the program pursuant to which the loan was made be funded in part by a nonprofit institution.
>
> Nothing in the legislative history surrounding this section evidences an intent to limit it solely to the funding of the loan itself. On the contrary, the legislative history would suggest that Congress intended an inclusive reading. This section was amended three times to expand the scope of coverage.

*Pilcher,* 149 B.R. at 598.

**Whether "institution" is limited to an "educational institution"**

In the sur-reply (and perhaps in the opposition), Plaintiff argues that the "institution" in "nonprofit institution" is limited to an "educational institution." This argument is contrary to the language of the statute, and Plaintiff has provided no authority requiring the Court to read "educational" into the statute when Congress did not write it in (and in fact wrote it out). Other courts have been asked to do so and have also declined. *See Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen):*

> The debtor would basically have me read the term back into section 523(a)(8) by imposing a post-secondary or higher education requirement. The language of the statute is not so limited.

179 B.R. 935, 938 (Bankr. D. Or. 1995). The most recent rejection of the argument Plaintiff makes can be found in *Greer-Allen*:

> Greer-Allen's counsel also argues that Congress understood "nonprofit institution," as the phrase is used in § 523(a)(8)(A)(i), to mean only nonprofit educational institutions. In other words, Greer-Allen contends that only educational loans made under a program funded by a nonprofit college should be excepted from discharge. Whether or not Congress intended such a meaning, this Court must give effect to the plain language Congress used. Section 523(a)(8)(A)(i) excepts loans made under programs funded by "nonprofit institutions" from discharge. The plain text is unambiguous and offers no reason to suggest that only certain nonprofit institutions satisfy the exception. Accordingly, the Court declines to adopt Greer-Allen's reading of § 523(a)(8)(A)(i).

602 B.R. at 838.

If the matters goes forward, the Court will hear argument, but it preliminarily agrees with these courts that it would be inappropriate to read "education" back into the statute when Congress specifically removed the limiting

language "institution of higher education," leaving only "institution" in the 1984 amendments:

> The subsection was again expanded by § 454(a)(2) of the Bankruptcy Amendment Act of 1984, removing the words "of higher education" to eliminate the inference that the section only applied to nonprofit institutions associated with higher education. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 454(a)(2), 98 Stat. 333 (Supp.1984) (amending 11 U.S.C. § 523(a)(8) (1982)).

*Pilcher*, 149 B.R. at 598.

**Whether TERI was a "nonprofit institution"**

In the Complaint, Plaintiff does not separately allege that Defendant was not a "nonprofit institution" but rather alleges "The Loan was not made, insured, or guaranteed by a governmental unit; nor was it made under any program funded in whole or in part by a governmental unit or nonprofit institution."

Nevertheless, in support of its Motion, Defendant alleges "TERI is a non-profit institution," and provides as evidence Affidavit, ¶ 19; See Exhibits H & I; See also Exhibit A-1, ¶ L. 12; Exhibit B, p. 1, ¶ 1; Exhibit E p.5, ¶ 1; Exhibit F, p. 1, ¶ 1.

The Affidavit is of Bradley Luke, the Director of Operations of Transworld Systems, Inc. ("TWI"), the "subservicer" of the Loan. He declares that "TERI was a non-profit corporation." The Court is not inclined to give this assertion any weight. Defendant must explain how Mr. Luke is qualified to testify as to this fact. In response to Plaintiff's evidentiary objections Defendant provides authority which would appear to render Mr. Luke a proper custodian to submit the business records set forth below, and the business records do refer to TERI as a non-profit. However, the Court sees this as different from Mr. Luke being in a position to declare of his own knowledge that TERI is a nonprofit.

Exhibit H is TERI's 1985 Articles of Incorporation which provide that TERI "shall always be operated exclusively for charitable and educational purposes," and will not participate in activities not permitted by a corporation with tax exempt status under IRC § 501(c)(3). The Articles also provide that none of the earnings shall benefit its members, officers or directors. As far as the Court can tell, this exhibit is not referred to at all in the Luke Declaration and has not otherwise been put into evidence. It is merely attached. It is not clear whether Plaintiff objects to this particular document.

Exhibit I is a 1994 Letter from the IRS explaining that TERI's exempt status under § 501(c)(3) remained in effect. Like the Articles, however, this exhibit is not referred to at all in the Luke Declaration and has not otherwise been put into evidence. It is merely attached.

Exhibit H and I may provide evidence once they are properly before the

Court.

Exhibit A-1, para 12, is a statement in the Loan Agreement which Plaintiff signed and which states that the Loan is nondischargeable because it was funded by TERI a nonprofit. A statement to this effect in the loan documents is not sufficient on its own. *See Golden v. JP Morgan Chase Bank (In re Golden):*

> [M]ore is required to satisfy the requirements of Section 523(a)(8) than a statement in a loan document that "either or both" of certain exceptions from discharge may apply. If that language alone were sufficient, then it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code.

596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019). However, as discussed below, taken in context with the rest of the proposed evidence it may ultimately provide sufficient support. *See Greer-Allen*, 602 B.R. at 837-38.

Exhibit B is an Amended Agreement between Bank One and TERI in which TERI is described as a non-profit corporation. In the supplemental declaration Defendant has provided the entire agreement.

Exhibit E is a Trust Agreement between Wilmington Trust Company, the National Collegiate Funding LLC, and TERI dated September 28, 2006. Like the Amended Agreement it refers to TERI as a non-profit.

Exhibit F is the Deposit and Security Agreement between TERI, First Marblehead, and Defendant, which also describes TERI as a nonprofit.

Again, these documents are supportive of Defendant's position.

In the Reply, Defendant adds the point that TERI was given tax exempt status by the state of Massachusetts and the IRS. Tax exempt status does not on its own establish nonprofit for the purposes of § 523(a)(8)(i). *See Zimmerman v. Cambridge Credit Counseling Corp.,* 409 F.3d 473 (1st Cir. 2005) (exception from the Credit Repair Organizations Act (CROA) for "any nonprofit organization which is exempt from taxation under section 501(c)(3)" of the Internal Revenue Code, requires a showing of tax-exemption and "nonprofit.") However, as discussed below it is a factor in favor of finding that TERI is a nonprofit.

On information much like that proferred as evidence by Defendant in this case, the court in *Greer-Allen* recently found TERI to be a nonprofit on summary judgment:

> Further, the defendants submitted the affidavit of Bradley Luke, an employee of Transworld Systems, Inc. ("TSI"). Def.'s Mot. Summ. J. Ex. C. TSI is responsible for subservicing student loans held by the defendants. Luke testified that all three loans were made under a loan program…. Ample evidence in the record shows that TERI was a nonprofit entity. All

> three loan agreements reference TERI's status as a nonprofit institution. All three trust agreements submitted by the defendants define TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws." Def.'s Mot Summ. J. Ex. F, G, H. Further, the Guaranty Agreement, submitted under seal, between TERI and Bank One, N.A. also describes TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws."
>
> At oral argument, Greer-Allen's counsel insinuated that TERI may not have been operating as a nonprofit institution when these loans originated. However, Greer-Allen has not produced any evidence in furtherance of that claim. Summary judgment is appropriate where there is no genuine issue of material fact. Here, Greer-Allen has not put forth sufficient evidence to generate a genuine issue of material fact regarding TERI's nonprofit status.

602 B.R. at 837–38.

The same conclusion on much the same record was reached by the court in *Rodriguez v. The Education Resources Institute, Inc, (In re Rodriguez),* which also found that TERI is a nonprofit institution:

> TERI is a private nonprofit institution organized under the laws of Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States. As set forth in TERI's articles of organization, TERI is operated exclusively for charitable and educational purposes through assisting students in attaining an education and through assisting educational institutions in providing an education in an economical fashion. No part of TERI's earnings may inure to the benefit of any director or employee. TERI is also treated as a tax-exempt nonprofit organization by the Internal Revenue Service and qualifies as such pursuant to sections 501(a) and 501(c)(3) of the Internal Revenue Code and has been provided tax exempt status by the Massachusetts Department of Revenue.

319 B.R. 894, 895–96 (Bankr. M.D. Fla. 2005)(citations to the record omitted).

In *Rodriquez* the debtor "urg[ed] the Court to engage in an in-depth analysis beyond the simple record and look to other substantive matters, including TERI's corporate salaries, profits and businesses of its subsidiaries." *Id.* at 896. The court declined to do so, adopting a "plain everyday dictionary meaning," and looked to Blacks':

> According to Black's Law Dictionary, a "nonprofit corporation" is a "corporation organized for some purpose other than making a profit, and usually afforded special tax treatment." Black's Law Dictionary (10th ed.1999) at 367.

*Id.* at 897. The court found that TERI met the definition "precisely:"

> TERI fits the plain meaning of the term "nonprofit institution" precisely. That is, TERI is a corporation organized for some purpose other than making a profit—in this instance as a nonprofit corporation making educational loans—and has been accorded special tax treatment both by the Internal Revenue Service and the Massachusetts Department of Revenue.

*Id.* at 898. The court found this approach best served the intent of Congress which had systematically narrowed the scope of student loans that could be discharged:

> Congress, with each amendment to section 523(a)(8), limited the discharge of such loans, consistently making it more difficult to discharge such loans.
>
> As can be seen, the legislative history of the statute does not support the more narrow interpretation of the meaning of "nonprofit institution" as urged by Rodriguez. Moreover, this argument violates the cannon of statutory interpretation that the starting point is the plain language of the statute itself.

*Id.* at 897.

The court went on to point out the problem with the approach suggested by the debtor in that case and Plaintiff in this case:

> The use of an in-depth "totality of the circumstances" test would have this Court depart from the plain meaning of the words in the statute and venture into uncharted waters for which there is no case law support. In other words, if Rodriguez's view were to prevail, conceivably at every section 523(a)(8) trial there would be a need for the courts to look behind the tax-exempt status of the lender, which is facially classified as nonprofit—and try such complex issues as: corporate governance, subsidiary ownership, whether corporate salaries were reasonable at the time the loans were granted, and whether the salaries are currently reasonable.
>
> This Court does not believe that Congress contemplated such a review. To the contrary, Congress contemplated that if a debtor borrows money for educational purposes and that loan was funded by a nonprofit corporation, the debts are within the purview of section 523(a)(8).

*Id.*

In opposition to the Motion, Plaintiff argues that Defendant's partnership relationship with First Marble Head ("FMC"), a for-profit lender, transformed Defendant into a for-profit institution because FMC used the relationship to expand its loan program: "FMC promoted its ability to make non-dischargeable debt through TERI as a competitive advantage over Sallie Mae and Wells Fargo."

Opp. at 23:4-7.  However, this appears to have been the industry standard.  As set forth above, a major issue in the early cases was whether the program was funded by the guarantor of the loans, because the actual loans were made by a for-profit entity.  *See e.g., O'Brien* in which the loan was made by Key Bank and guaranteed by TERI.  419 F3d. at 105.

This does not appear to be a case such as *Zimmerman* in which the "nonprofit" was being used to directly enrich its principals:

> the plaintiffs' complaint sufficiently alleges that Cambridge was not, in fact, operating as a nonprofit organization.  The complaint states that, while Cambridge claimed that its purpose was "to provide direct aid to financially distressed debtors," in reality "Cambridge's primary purpose was to make money for its owners and operators, John and Richard Puccio."  The complaint further claims that the Puccios never intended to operate Cambridge as a nonprofit, but rather intended to use it "to enrich themselves and their key executives by permitting them to siphon off corporate assets of their business through huge compensation packages."  In support of this allegation, the complaint alleges that the Puccios and their key executives have received exorbitant salaries from Cambridge.  These allegations, if true, could support a finding that Cambridge was not actually operating as a nonprofit organization and is therefore subject to the CROA.

*Zimmerman,* 409 F.3d at 473, 478–79.

Plaintiff's complaint in this case contains no such allegations and Plaintiff has provided no evidence or even allegation that TERI paid exorbitant salaries or otherwise allowed its owners to siphon off corporate assets.  Plaintiff has made no allegation that TERI made profits that were up streamed to FMC or anyone.  The fact that FMC may have benefited from the relationship does not render TERI a for-profit institution as a matter of law.  In short, even if the Court accepts Plaintiff's assertions of benefit to FMC, it does not see how this creates a triable issue of material fact.  But if Defendant is allowed to supplement or correct its evidence, the Court may allow additional briefing on this issue.

The cases Plaintiff relies upon for the proposition that the Court should conduct an investigation into the specific income and expenses of the institution are primarily tax cases wherein the IRS was challenging an entities' tax-exempt status.  *See Est of Hawaii v. Comm'r of Internal Revenue*, 71 T.C. 1067 (1979), aff'd, 647 F.2d 170 (9th Cir. 1981); *P.L.L. Scholarship Fund v. Commissioner of Internal Revenue,* 82 T.C. 196, 200 (Tax Court 1984); and *Living Faith, Inc. v. C.I.R.,* 950 F.2d 365, 373 (7th Cir. 1991).  They are not helpful.

Plaintiff cited to *Golden*, for the proposition that the Court must make deeper investigation than that conducted in *Rodriquez*:

> First, where a statute employs the word "nonprofit," courts inquire into the

>   entity's character to determine whether was operated for charitable or commercial purposes. *In re Golden*, 596 B.R. 239, 266–67 (Bkrtcy. E.D.N.Y. 2019) (categorizing as a question of fact whether TERI was "a bona fide nonprofit institution" or a division of "the First Marblehead Corporation.")

Opposition at 7:11-16. However, Plaintiff used a partial quote. When the entire passage is reviewed it becomes clear that this was not the court's holding, but rather a recitation of the debtor's argument in that case:

>   [Ms. Golden] disputes whether TERI is "in fact, a bonafide nonprofit institution," or if it is a division of the for-profit entity First Marblehead Corporation created "for the sole purpose of taking advantage of [the] non-profit exemption of § 523(a)(8)(A)(i).

*Golden*, 596 B.R. at 266–67.

Furthermore, the actual decision in *Golden* appears to be of little value to Plaintiff. First, *Golden* was decided on a motion to dismiss. The Court did not decide the matter in favor of the debtor, but only held that her complaint stated a claim under § 523(a)(8)(i) because she, unlike the debtor in *O'Brien*, disputed that TERI had a role in funding her loan:

>   She also alleges that "the NCT Loan was not 'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or in part by a non-profit.'"

*Id.* at 267. The court held that this was sufficient to survive dismissal, finding that debtor's claims were not implausible. So the case did not hold that § 523(a)(8)(A)(i) requires an in-depth review of the institution's financial status, and did not weigh any evidence at all. Second, the court in *Golden*, in this court's preliminary view, improperly focused on whether the individual *loan* was funded in whole or in part:

>   That is, here, unlike the situation in O'Brien, the parties dispute whether TERI had a role in funding the NCT Loan.

596 B.R. at 267. As discussed above, the Court is likely to conclude question is not whether the particular loan was funded, but rather whether the *program* was funded in whole or in part.

In short, the Court is inclined to find like the courts in *Greer-Allen* and *Rodriquez* that Defendant has or may provide evidence that TERI was a "nonprofit" at the time it funded the Program through its guarantee. If so, the burden shifts or will shift to Plaintiff to create a triable issue of material fact. Plaintiff has provided its own voluminous evidence in support of its assertion that TERI was used by FMC to generate profits. However, the question the Court has is whether this evidence, even if it shows what Plaintiff suggests it does, would be sufficient to establish that TERI was a not a "nonprofit institution" when the Program was

guaranteed by TERI as the term funded is used in Code § 523(a)(8)(A)(i).  The courts in *Greer-Allen* and *Rodriquez* appear to have held that it would not. The Court will hear argument, but again may need further briefing on the showing required for "nonprofit" to determine what to do, it anything, with Plaintiff's evidence or offers of proof.