SCOTT S. WELTMAN (SBN 145215)
**Weltman, Weinberg & Reis Co., L.P.A.**
965 Keynote Circle
Brooklyn Heights, OH 44131
Telephone: (216) 685-1032
Facsimile: (216) 363-4086
colcaecf@weltman.com
WWR# 040284515
Attorney for Defendants,
National Collegiate Student Loan Trust 2006-3

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| In re | |
| Cesar Medina and Krystal Anne Medina, | Bankruptcy Case No. 17-05276-LT |
| Debtors. | Chapter 7 |
| | Honorable Chief Judge Laura S. Taylor |
| Krystal Anne Medina, | Adversary Proceeding No. 19-90065-LT |
| Plaintiff. | |
| vs. | |
| National Collegiate Student Loan Trust 2006-3, | |
| Defendant. | |

## **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**.......................................................1

**A. ISSUE PRESENTED** ......................................................................................... 1

**B. STATEMENT OF FACTS** ............................................................................... 2

**C. LAW AND ARGUMENT**................................................................................7

  1. Summary Judgment................................................................................7

  2. Plaintiff's Loan is Nondischargeable under § 523(a)(8)(A)(i)………………………………..8

  3. Plaintiff's Loan is an Educational Loan…………………………………….............................9

  4. Plaintiff's Loan was made under a Loan Program …………………….…………9

5. TERI is a Nonprofit Institution………………………………………….……10

6. TERI Funded the Program Which Made Medina's Loan……………………….……16

7. Plaintiff's Loan is Evidence it is Nondischargeable………………………….………21

8. Plaintiff Makes No Claim That Repaying the Loan Will Cause an Undue Hardship…....21

**D. CONCLUSION**......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553(1986) ……..……..7, 8, 23

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630
    (9th Cir. 1987)...... ……………………………………………………………7, 8

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43
    (9th Cir. 1989)…………………………………………………………………8, 23

*Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1561-62 (9th Cir. 1991)……....8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 and 2511 (1986)…………8

*Matsushita Elec. Indus. Co. v. Zenith* Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348,
    1356 (1986). ...…………………………………………………………………...8

*Animal Rescue League of Bos. v. Assessors of Bourne*, 310 Mass. 330, 335, 37 N.E.2d
    1019, 1022 (1941) …………..……………………………………………….……14

*TI Fed. Credit Union v. Delbonis (In re Debonis)*, 183 B.R. 1, 3-4 (D. Mass. 1995),
    citing *In re Delbonis,* 169 Bankr. 1, at 3 (Bankr. D. Mass. 1994)……………………….....14

*In re Hammarstrom,* 95 B.R. 160, 166 (Bankr. N.D. Cal. 1989)…………………….……….. 15, 17

*O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien),* 419 F.3d 104, 105
    (2d Cir. 2005)...…………………………………………………………….....15, 16, 17,21

*Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez)*, 319 B.R. 894, 895
    (Bankr. M.D. Fla. 2005). …………..…………………………………………...15

*In re Martin*, 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990)…………….…………………….15

*Klein v. The Education Resources Institute, Inc. (In re Klein)*, Ch. 11 Case No.
    92-B44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997)………………….....….…...16, 17

*Educ. Res. Inst. Inc. v. Taratuska (In re Taratuska)*, 2008 U.S. Dist. LEXIS 93206, 9-11 (D. Mass. Aug. 25, 2008). ………………………………………...….……..…17

*Sears v. EduCap, Inc. (In re Sears)*, 393 B.R. 678, 681 (Bankr. W.D. Mo. 2008)……………...21

*Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019) ……………………………………...….…………….………18

*Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. Mich. 1992)…..……17

*Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016) ……………………………………………………………...…..18

*Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017). …………………………………………………………………..…16

*United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998)…………22

*Carnduff v. United States Dep't of Educ. (In re Carnduff),* 367 B.R. 120, 134 (B.A.P. 9th Cir. 2007)………………………………………………………………….…..22

*White v. United States Dep't of Educ. (In re White)*, 243 B.R. 498, 505 (Bankr. N.D. Ala. 1999)………………………………………………………………...…23

## **Statutes**

11 U.S.C. § 523(a)(8)………………………………………..2, 3, 8, 9, 14, 15, 16, 17, 18, 19, 21, 22

ALM GL Ch. 180……………………………………………………………………...........10

ALM GL ch. 180, § 4. ………………………………………………………………10, 11

I.R.S. Section 501(c)(3) …………………………………………………………… 11, 14

I.R.S. Section 170(c)(2)…………………………………………...….……………….10, 11

ALM GL ch. 59, § 5………………………………………………………………...…..14

## **Other**

BLACK'S LAW DICTIONARY 606 (5TH ed. 1979) …………………………………………..19, fn. 26

SCOTT S. WELTMAN (SBN 145215)
**Weltman, Weinberg & Reis Co., L.P.A.**
965 Keynote Circle
Brooklyn Heights, OH 44131
Telephone:  (216) 685-1032
Facsimile:  (216) 363-4086
colcaecf@weltman.com
WWR# 040284515
Attorney for Defendants,
National Collegiate Student Loan Trust 2006-3

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| In re | |
| Cesar Medina and Krystal Anne Medina, | Bankruptcy Case No. 17-05276-LT |
| Debtors. | Chapter 7<br>Honorable Chief Judge Laura S. Taylor |
| Krystal Anne Medina, | Adversary Proceeding No. 19-90065-LT |
| Plaintiff. | **DEFENDANT NATIONAL** |
| vs. | **COLLEGIATE STUDENT LOAN** |
| National Collegiate Student Loan Trust 2006-3, | **TRUST 2006-3'S MEMORANDUM**<br>**OF POINTS AND AUTHORITIES** |
| Defendant. | |

### A.  ISSUE PRESENTED

Plaintiff entered into a student loan with JP Morgan Chase Bank N.A. to attend San Diego Culinary Institute.  Plaintiff filed an adversary complaint seeking to discharge the loan now held by NCSLT.  Plaintiff alleges that the Loan is dischargeable because it is not excepted from discharge under any of the sections of 11 U.S.C. § 523(a)(8),[1] but offers no facts in

---

[1] All statutory references will be to Title 11 U.S.C, unless otherwise noted.

support, except the allegation that the School is not a Title IV school.  Plaintiff does not allege repaying the loan will cause an undue hardship.

NCSLT answered the complaint with an affirmative defense: the loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program that was funded by a non-profit institution.

**B. STATEMENT OF MATERIAL FACTS**

1.     Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan") with JP Morgan Chase Bank N.A.  ("JPMorgan") to attend the San Diego Culinary Institute (the "School") for the academic period of September 2006 through May 2007 in the principal amount of $33,149.17.   *See* Declaration of Bradley Luke ("Declaration"), ¶ 10 & 11 and its Exhibits A and B; See also the Complaint, Section II, FACTS, lines 6 & 7.

2.     The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.   See Declaration, ¶ 19 and 28 and its Exhibit B, p.3, upper left–hand corner;  See also Ex. E and its Exhibit A "Basic Program Design"; See also Ex. G, Schedule A.

3.     The Loan is an educational loan.  See Declaration, ¶ 10, 11 & 18 and its Exhibit B; *See* also Ex. E, p. 26, Exhibit A, Basic Program Design (Describing the Bank One Continuing Education Loan as a "fully credit-tested education loan.")

4.     TERI guaranteed the loans in Plaintiff's loan Program, the Education One© Education One Continuing Education Loan Program.  See Declaration, ¶ 23 and See also Exhibit E, , Pgs. 1 - 3, Preamble & Sections 1.6 & 2.1; E, Exhibit A, Sections, 1, 2, and "Basic Program Design;" See also Ex. B, p. 3, upper left-hand corner & ¶ L.12.

5.     TERI guaranteed that it would reimburse the holder of any Program loan upon default.    See also Declaration ¶ 29; *See* also Exhibit E, Sections 1.6 and 2.1.

6.     TERI is a non-profit institution.  See Declaration, ¶ 22, and *See* its Exhibit B, ¶ L. 12; Exhibit E, p. 1, ¶ 1; Exhibit H p.5, ¶ 1; Exhibit I, p. 1, ¶ 1. Also *See* Declaration of Holly Nolan ("Nolan Declaration) and its Exhibits A - E,

7.     The loan package given to Plaintiff included Terms and Conditions of the loan. See Declaration, ¶ 20 and Exhibit B.

8.     On the signature page of the Loan, the Plaintiff agrees that "By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement."  See Exhibit B, p. 3.

9.     The Plaintiff signed the Loan. See Exhibit B; See also the Complaint, Section II, FACTS, lines 6 & 7.

10.     Plaintiff agreed that "**I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply:  (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.  This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full**."  *See* Declaration, ¶ 21, and *See* Ex. B, ¶ L 12.  (Text is bolded in Loan Agreement).

3

11. The effective date of the Guaranty was May 13, 2002. *See* Declaration, ¶ 24 and *See* Exhibit E, ¶ 1 and Sec. 1.3.

12. JPMorgan is the successor by merger to Bank One, N.A as of November 13, 2004. *See* Declaration, ¶ 25, *See* Exhibit J. *See also* Exhibit H, Schedule B.

13. JPMorgan continued to originate loans under the Education One© Loan Programs after the merger with Bank One, N.A. See Declaration, ¶ 26 and See Exhibit B, Plaintiff's Loan.

14. TERI's Guaranty of the Education One© Loan Programs remained in full force and effect after the merger because the Guaranty is to loans made under the Education One Loan Program, not to those made by Bank One, N.A. See Declaration, ¶ 27 and See Exhibit E, Sections 1.6 and 2.1.

15. TERI, JPMorgan, successor by merger to Bank One, and the Program Manager approved the schools participating in the Loan Program in its sole discretion in conjunction with First Marblehead Corporation. See Declaration, ¶ 30 and See Ex. E, its Exhibit A, Sec 2, "Participating Schools" & See Ex. E, its Schedule D to its Exhibit A, "Participating Schools." See Ex. E, its Exhibit A, Section 2 defining "Program Manager" as The First Marblehead Corporation.

16. TERI was paid a Guaranty Fee from the individual student loans in the Loan Program. See Declaration, ¶ 31 and See Ex. E, its Schedule 3.3.

17. On September 28, 2006, and prior to Plaintiff's last payment on the loan, JPMorgan, First Marblehead Corporation ("FMC") and National Collegiate Funding LLC ("NCF") entered into a Pool Supplement wherein JPMorgan sold certain student loans to NCF

along with its rights under the guaranty agreement with TERI.  See Declaration, ¶ 32 and See Ex. F, p. 1, Article 1 & p. 3, Article 5.

18.    On or about September 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, NCF and NCSLT entered into a Deposit and Sale Agreement, wherein NCF sold the loans to National Collegiate Student Loan Trust 2006-3, and transferred all of its rights and interests under the Pool Agreement to NCSLT. The transfer of rights and interests included NCF's rights under the Guaranty Agreement with TERI.  See Declaration, ¶ 33 and See Ex. G, Section 3.02 and its Article XII, "Assignment."  The sale included all loans in Plaintiff's Loan Program, the Education One Loan Program. See Declaration, ¶ 33 and See Ex. G, Schedule A.

19.    On about June 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, Wilmington Trust Company, NCF and TERI entered into a Trust Agreement.  The Trust Agreement established the National Collegiate Student Loan Trust 2006-3, Defendant and the holder of Plaintiff's Loan.  See Declaration, ¶ 34; and See Ex. H, Sec. 1.01 "Trust" definition.

20.    On or about June 28, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, TERI, First Marblehead Data Services, Inc. and National Collegiate Student Loan Trust 2006-3 entered into a Deposit and Security Agreement.  Under the Agreement, NCSLT agrees to purchase all loans in the Education One Loan Programs on the condition, in part, that TERI guarantees the loans. See Declaration, ¶ 35 and See Ex. I, p.1, ¶ 2 and its Schedules A & B.

21.    The Trust was set up primarily to acquire, house and service the loans.  See Declaration, ¶ 34; and See Ex. H, Sec. 2.03.

22.     TERI's obligation to purchase defaulted loans is recited.  See Ex. H, Sec. 1.01 ("TERI Guaranty Agreements" and "TERI Guaranteed Loans").

23.     The Trust Agreement identifies "TERI Guaranty Agreements" as "each of the Guaranty Agreements entered into between each of the Loan Originators and TERI as set forth on Schedule D" and which includes Plaintiff's Loan Program. See Exhibit H, Sec. 1.01, its Schedule B identifying JPMorgan as a Loan Originator, its Schedule D, identifying the Guaranty Agreement between Bank One and TERI for its Education One Loan Program.

24.     The Trust Agreement identifies "TERI Guaranteed Loans" as "Student Loans under the Student Loan Programs owned by the Trust and guaranteed by TERI pursuant to the Guaranty Agreements."  See Exhibit H, Section 1.01.

25.     The Loan has not since been transferred or sold, and all right, title and interest remains with National Collegiate Student Loan Trust 2006-3.  See Declaration, ¶ 36.

26.     The Plaintiff is not alleging repayment of the Loan will cause an undue hardship. See Complaint.

27.     TERI honored its Guaranty on at least one loan in Plaintiff's Loan Program, the Education One© Loan Program.  See Declaration, ¶s 37 - 42 and Exhibit K.

28.     TERI purchased a loan made under the Education One Undergraduate Loan Program, one of the programs in the Education One© Loan Program. See Declaration, ¶s 37, 40 & 42; See Exhibit K, p. 4, upper left–hand corner; See also Ex. E and its Exhibit A "Basic Program Design"; See also Ex. G, Schedule A.

29.      The default date of the loan was July 14, 2007, after Plaintiff entered into her Loan.  See Declaration, ¶s 38 & 10; and see Exhibit K, pgs. 1, 8, 9,10, 11, 12 & 13.  Also See Exhibit B.

30.     The note was assigned to TERI on February 4, 2008, after Plaintiff took out her Loan.  See Declaration, ¶ 43.  See Exhibit K, pgs. 1 & 3. Also See Exhibit B.

31.     On June 20, 2006, TERI issued a disbursement check No. 00302072 to Krystal A. Shirley and San Diego Culinary Institute in the amount of $30,000 to fund the student loan. . See Declaration, ¶s 14 & 15; and see Exhibit C.

32.     The check was funded by JPMorgan and deposited into one of TERI's accounts for TERI to disburse the funds to Plaintiff.  See Declaration, ¶ 15.


## C. LAW AND ARGUMENT

### 1. Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Bankr. R. 7056.  Here, NCSLT is entitled to judgment as a matter of law.

The moving party must inform the court of the basis for the motion with pleadings, affidavits, discovery responses, and any other matters of record which it believes shows there are no material facts in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The court must review the evidence and "view the evidence in the light most favorable to the nonmoving party."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc*., 809 F.2d 626, 630 (9th Cir. 1987).   A defendant movant may prevail on summary judgment if it can show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.,* 477 U.S. at 325, and *see United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542-43 (9th Cir. 1989).

Once a defendant satisfies its initial burden, the burden shifts to the non-movant plaintiff to demonstrate that there is a genuine issue of material fact. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1561-62 (9th Cir. 1991). To overcome a motion for summary judgment, a non-moving party must show that there is a fact or there are facts that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 and 2511 (1986). "A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc.,* 809 F.2d at 630. To show a genuine issue, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith* Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

## 2.  Plaintiff's Loan is Nondischargeable under § 523(a)(8)(A)(i)

Absent a showing of undue hardship, student loans are nondischargeable if they meet any one of three criteria for nondischargeability.        § 523(a)(8) states as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> > **(A) (i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> > **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual;

Plaintiff claims that her Loan is dischargeable because it does not meet any of the criteria for nondischargeability under §523(a)(8). No facts are alleged to support the claim,

except an allegation that Plaintiff's school is not a Title IV school. This would be relevant only to analyze whether Plaintiff's Loan was a qualified education loan under §523(a)(8)(B).

Plaintiff's loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program guaranteed by TERI, a non-profit institution. Plaintiff alleges no facts in the Complaint and cannot allege any facts to dispute this because there are none.

Specifically, § 523(a)(8)(A)(i) states that "an educational…loan… made under any program funded in whole or in part by a… nonprofit institution" is nondischargeable.

### 3. Plaintiff's Loan is an Educational Loan

Plaintiff's Loan is an educational loan.   Statement of Material Facts 3 ("SMF 3"). Plaintiff admits the Loan was for her education at the San Diego Culinary Institute Section II, lines 6 and 7 of the Complaint

Plaintiff's Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.   SMF 2.   The Overview of the Program set out that the program loans are educational loans designed to finance K-12, undergraduate, graduate and continuing education.   SMF 2 & 3, also see Exhibit E, its Schedule A,"Basic Program Design."

### 4.  Plaintiff's Loan was made under a Loan Program

The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.  SMF 2.

### 5.  TERI is a Nonprofit Institution

The Education Resourses, Inc, ("TERI") was a nonprofit institution and was never a for-profit corporation. It was organized as a nonprofit corporation under ALM GL Ch. 180, which is the law for nonprofit corporations in Massachusetts.[2]  The Secretary of the Commonwealth of Massachusetts's website describes TERI as a "Nonprofit Corporation."[3]  Nonprofits in Massachusetts may be formed "for any civic, educational, charitable, benevolent or religious purpose." ALM GL ch. 180, § 4.  TERI's Articles of Organization state that it was to be "operated exclusively for charitable and educational purposes."[4]

The Articles of Organization prohibit TERI from participating in any activities not permitted to be carried on by  tax-exempt entities under 503(c)(3) of the Internal Revenue Code or by corporations whose contributions are deductible by contibutors under Section 170(c)(2) of the Internal Revenue Code.[5]  They further state that "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except reasonable compensation for services rendered and distributions in furtherance of the purposes set forth in Article 2 hereof."[6]

TERI's Articles of Organization were amended once and restated once.[7] They were amended on or about September 12, 1990 only to add a limitation on the personal liability of the Officers and Directors to the corporation for breach of fiduciary duty.[8] They were restated on or about November 19, 2010 to reiterate that TERI is is a nonprofit corporation operating in part to assist students in attaining an education:

---

[2] See Nolan Declaration, ¶6 and its Exhibit A. Note:  This motion also requests Judicial Notice of all exhibits attached to the Nolan Declaration.
[3] Id., ¶3
[4] Id., ¶7, and its Exhibit A, p. 3, para.1.
[5] Id., ¶8, and its Exhibit A, Article 2, Sched. B, last para..
[6] Id., ¶9, and its Exhibit A p.4, Sched. B.
[7] Id., ¶s 10 & 11, and its Exhibits B & C.
[8] Id., ¶ 10, and its Exhibit B.

The Corporation is organized and at all times shall be operated exclusively for religious, charitable, scientific, literary or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States internal revenue law (the Internal Revenue Code of 1986, as amended, and any such future law, the "Code"), and Section 4 of Chapter 180 of the Massachusetts General Laws, as amended ("Chapter 180"), including but not limited to assisting students in attaining an education and assisting educational and financial institutions in providing an education in an economical fashion.[9]

The Restated Articles also included the prohibitions on corporate conduct under I.R.C. §501(c)(3) and I.R.C. §170(c)(2), as well as the prohibition that any of the net earnings go to the benefit of any individual, which were all included in the original Articles.[10]

TERI retained its nonprofit nature under both the Amended and Restated Articles of Corporation.

TERI merged with two other corporations during its corporate life, The Education Fund, Inc. and TERI Financial Services, Inc. [11] Both of these corporations were nonprofit corporations and the mergers were done under Massachusetts' nonprofit statute, ALM GL. Ch. 180.[12]  The second merger specifically states that TERI shall remain a nonprofit corporation: "… [I]f any of the constituent corporations constitutes a public charity, then the resulting or surviving corporation shall be a public charity."[13]

---

[9] Id., ¶ 12, and its Exhibit C.
[10] Id., ¶s 13 & 14, and its Exhibit C, Article 4, Sched. B, Art. IV-B.
[11] Id., ¶s 15 & 18, and its Exhibits D & E.
[12] Id., ¶s 16, 17, 19 & 20, and its Exhibits D & E.

[13] Id., ¶ 21, and its Exhibit E.

11

The Secretary of the Commonwealth of Massachusetts's website shows that TERI retained its nonprofit status throughout its corporate life and was never a for-profit corporation.[14]

There is other evidence that TERI is and always was a nonprofit institution. TERI filed bankruptcy and declared itself a nonprofit in its Equity Security Holder Statement.[15] TERI's Disclosure Statement identified it as a nonprofit with a mission to promote education and guarantee private student loans.

> Founded in 1985, The Education Resources Institute, Inc. is a nonprofit organization incorporated under Massachusetts General Laws, chapter 180, local in Boston, Massachusetts.  TERI promotes access to education for students of all ages and incomes with two primary programs.  Through its College Access programs, TERI assists low-income, first-generation-to college and other underserved students in pursuing higher education. TERI is a nationally recognized leader in college access through support and promotion of research-based policies and practices.  Locally it provides innovative direct service programs in Massachusetts.  Through its loan guarantee programs, TERI has guaranteed more than two million private student loans.[16]

The findings of fact and conclusions of law in the Order confirming TERI's Fourth Amended Plan find that the Reorganized TERI will maintain its nonprofit status.  It will fund the plan by "the retention of the Reorganized TERI Assets to fund the Reorganized Debtor's non-profit mission and ancillary loan related business;"[17] it will "transfer .. the Plan Trust Assets to the Plan Trust for the purpose of liquidating and distributing its assets and rehabilitating the

---

[14] Id., ¶ 22.

[15] See Exhibit L attached hereto, Equity Security Holder Statement, Bankruptcy Court for the District of Massachusetts, Case No. 08-12540.  This Motion includes a request for Judicial Notice of all documents referred to from TERI's bankruptcy case.

[16] See Exhibit M attached hereto, Disclosure Statement for Fourth Amended Joint Plan, Sec. II. A; Bankruptcy Court for the District of Massachusetts, Case No. 08-12540,  DOC no. 1013, p. 48.

[17] See Exhibit N attached hereto, Order Confirming Fourth Amended Joint Plan,; Bankruptcy Court for the District of Massachusetts, Case No. 08-12540,  DOC no. 1170, ¶ S, p. 10, entered October 29, 2010.

Debtor's business through the restructuring of its debt and liabilities by terminating its existing guaranty business and emerging from bankruptcy focused on its not-for-profit, college access mission and ancillary student loan-related services;"[18] The Order also found that TERI "complied with all applicable state and federal restrictions on transfers by not for profit entities,"[19] further cementing TERI's good standing and status as a nonprofit organization.

Finally, TERI emerged from the bankruptcy and continued as a nonprofit corporation as evidenced by a post-confirmation decision on an appeal from one of the bankruptcy court's opinions.  The first sentence in the Factual Background of the decision is "TERI is a nonprofit organization that promotes access to education."[20]

TERI was a tax-exempt corporation by operation of Massachusetts law.  TERI's assets consisted soley of personal property at the time of the filing of its Bankruptcy Case. TERI's bankruptcy Summary of Schedules show it owned no real estate, and its only assets were personal property valued at $1,083,609,918.71.[21] Personal property of charitable organizations is exempt from taxation in Massachusetts:

> The following property shall be exempt from taxation…
>
> > Third, Personal property of a charitable organization, which term, as used in this clause, shall mean (1) a literary, benevolent, charitable or scientific institution or temperance society incorporated in the commonwealth… .
> >
> > ALM GL ch. 59, § 5

---

[18] Id, ¶ GG, p. 13.

[19] Id, ¶ RR, p. 15.

[20] See Exhibit O attached hereto, Memorandum and Order, U.S. District Court, District of MA, Case No., 11-10241, DOC no. 17, entered December 8, 2011.

[21] See Exhibit P attached hereto, TERI's Summary of Schedules, Bankruptcy Court for the District of Massachusetts, Case No. 08-12540,  DOC no. 366, ¶ S, p. 1, entered June 23, 2008.

TERI's personal property was exempt from taxation under Massachusetts law as it was a non profit corporation. "The statute, G.L. (Ter. Ed.) c. 59, § 5, Third, … exempts the personal property of a charitable institution from taxation, and this has been held to include personal property owned by a corporation or held in trust for it." *Animal Rescue League of Bos. v. Assessors of Bourne*, 310 Mass. 330, 335, 37 N.E.2d 1019, 1022 (1941).

TERI did obtain tax-exempt status from the IRS, and Defendant subpoened the IRS on June 10, 2020 for the letter granting it tax-exempt status and a Declaration authenticating that letter. A true and correct copy of the subpoena is attached hereto as Exhibit Q. Defendant requests leave to supplement the record once the IRS declaration and letter are received.[22]

However, whether or not TERI was a tax-exempt organization is irrelevant under §523(a)(8). The statute requires only that an entity be a nonprofit institution. It does not require it be a tax-exempt instution. While most nonprofit organizations may be tax exempt, the two may exist without the other. "There is no necessary correlation between tax exempt status and nonprofit status. As just one example, a religious organization which expends a substantial part of its activities in intervening in political campaigns is still not organized for profit even though it is barred from tax exempt status by 26 U.S.C. § 501(c)(3)." *TI Fed. Credit Union v. Delbonis (In re Debonis)*, 183 B.R. 1, 3-4 (D. Mass. 1995), citing *In re Delbonis,* 169 Bankr. 1, at 3 (Bankr. D. Mass. 1994). TERI need only be a nonprofit institution, which it clearly was, and does not need tax exempt status to qualify as a nonprofit institution under §523(a)(8).

TERI is consistently referred to as a nonprofit in the Loan documents and documents relating to the Loan Program and securitization of the loans.. The Guaranty between TERI and Bank One refers to TERI as "a private non-profit corporation organized under Chapter 180 of

---

[22] Counsel for NCSLT attempted to go to the local IRS office to obtain the declaration and letter on an expedited basis, but the office was closed due to Covid19 restrictions.

the Massachusetts General Laws."[23]   The Loan documents, The Trust Agreement, and the Deposit and Security Agreement describe it as a nonprofit institution.[24]

Courts that examined TERI found it a nonprofit institution. "…TERI [is a] private nonprofit organization… engaged in providing guaranteed educational loans." *In re Hammarstrom,* 95 B.R. 160, 166 (Bankr. N.D. Cal. 1989).   "The loan was guaranteed by defendant-appellee-creditor The Education Resources Institute ("TERI"), a not-for-profit corporation that conditionally guarantees loans extended by private lenders under TERI's student loan programs." *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien),* 419 F.3d 104, 105 (2d Cir. 2005).   "TERI is a private nonprofit institution organized under the laws of Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States." *Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez)*, 319 B.R. 894, 895 (Bankr. M.D. Fla. 2005).   "[T]he Guaranty Agreement between TERI and The Bank of New England (attached as Exhibit B to the Plaintiff's Brief in Support of its Motion for Summary Judgment) indicates that TERI is in  fact a non-profit corporation." *In re Martin*, 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990).

TERI is undeniably a nonprofit corporation under Massachusetts law, and there is no evidence it ever was anything but a nonprofit.  It is, therefore, a nonprofit institution under §523(a)(8).

**6. TERI Funded The Program Which Made Medina's Loan**

As set forth above, the provisions of §523(a)(8)(A)(i) are crystal clear that a loan is exempt from discharge if is an educational loan "made under any program funded <u>in whole or in</u>

---

[23] See Exhibit E, p.1, ¶ 1
[24] Exhibit B, ¶ L. 12; Exhibit H p. 5, ¶ 1; Exhibit I, p. 1, ¶ 1

part by a governmental unit or nonprofit institution." (emphasis added). This inquiry is made at loan program level not at the individual loan level; there is no requirement that an individual loan be funded by the non-profit.[25]  *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017); *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104, 105 (2d Cir. 2005).  Here, TERI, which is a nonprofit (*see supra*, pgs. 10 - 15,) funded the program the Education One Continuing Education Loan Program which made Medina's loan. TERI did this by guaranteeing the loans in that program.

Courts – including District and Circuit Courts – have consistently found that the "funded in whole or in part" requirement contained in §523(a)(8)(A)(i) is satisfied when a non-profit guaranties a loan program.

> There have been a number of courts which have interpreted the phrase in question, including the *Klein* court. As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play. For example, the *Klein* court found that even though the Bankruptcy Code does not define "funded," and that the term is not synonymous with the term "guaranteed," the plain language of the statute dictated construing the statute's funding programs language "to include guarantees like those at issue herein." *Klein*, slip op. at 13. The *Klein* court found further support in its conclusion in the legislative history of the statute. *See* id. At 13-14. *See* also *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) (examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government

---

[25] In its Supplemental Memorandum in support, NCSLT argued TERI funded Plaintiff's loan.  This was wrong, and based on an unfortunate assumption made by NCSLT's counsel without consultation with the client. Nothing more or less, it was an assumption made from the face of the check that funded Plaintiff's Loan. *See* Luke Declaration, its Exhibits C & D The check was written on a TERI bank account and the assumption was that the loan proceeds were funded from TERI assets. In fact, the loan was funded by the lender, JPMorgan Chase, who transferred its funds to TERI, and TERI, in turn disbursed the loan proceeds to the debtor. SMF 15.That led to an erroneous argument that TERI funded the program by funding the loan.  That argument is abandoned and the correct argument is now set forth.

or nonprofits under the "any program funded in whole or in part" language.) (Referring to *Klein v. The Education Resources Institute, Inc. (In re Klein)*, Ch. 11 Case No. 92-B44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997),

*Educ. Res. Inst. Inc. v. Taratuska (In re Taratuska)*, 2008 U.S. Dist. LEXIS 93206, 9-11 (D. Mass. Aug. 25, 2008); *see also O'Brien,* 419 F.3d, at 107 (holding that "§ 523(a)(8) includes within its meaning loans made pursuant to loan programs that are guaranteed by non-profit institutions."); *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992) (holding where a nonprofit university agreed to purchase student loans from the lender bank upon default it in part funded the loan program); *Rodriguez*, 319 B.R. at 896 ("As an initial matter, the Court notes that the legislative history of the statute itself compels this Court to conclude that the types of loans and lenders covered by section 523(a)(8) is meant to be broad.").

Here there is no dispute that TERI guarantied Plaintiff's student loan Program, the Education One Continuing Education Loan Program.  The Guaranty clearly states TERI's obligation to purchase defaulted loans out of Plaintiff's Loan Program.  SMF 4 & 5.  The Pool Supplement and Deposit and Sale Agreements then sold TERI's Guaranty to NCSLT along with Program's student loans.   SMF 17 & 18.   The Deposit and Security Agreement, which facilitated the securitization of the loans into the defendant Trust, also transferred TERI's Guaranty to NCSLT. SMF 20.  And, the Trust Agreement between Wilmington Trust Company, NCF and TERI defines "TERI Guaranteed Loans" as "Student Loans under the Student Loan Programs owned by the Trust and guaranteed by TERI pursuant to the Guaranty Agreements", and identifies Plaintiff's Program as one of the programs that is, in fact, guaranteed by TERI. SMF 23 & 24.  The Trust Agreement also defines "TERI Guaranty Agreements" as "each of the

Guaranty Agreements entered into between each of the Loan Originators and TERI as set forth on Schedule D" and which includes Plaintiff's Loan Program.  SMF 23.

Because courts have repeatedly found that a guaranty of a loan program in itself is funding as contemplated under §523(a)(8)(A)(i), TERI's Guaranty of Plaintiff's Program is "fund[ing] in whole or in part" of the Program and renders loans issued under that Program non-dischargeable under §523(a)(8)(A)(i).

And, in fact, courts have held exactly this as recently as July of 2019: the very TERI guaranty at issue here is the requisite funding "in whole or in part" contemplated by §523(a)(8)(A)(i). *See Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019). In *Greer-Allen*, the plaintiff had three loans made under the Education One Loan Program, which is the same program as here.  One of the loans was held in the same trust as Plaintiff's: NCSLT 2006-3.  The court found that the loans were educational loans, TERI is a nonprofit organization, the loans were made under Bank One and JPMorgan's Educational One Loan Program, and TERI's blanket guaranty to pay the loans upon default was funding of the Loan Program as contemplated by §523(a)(8)(A)(i).  *Id.* To state it as plainly as possible: TERI's guarantying loans made under the same program as Medina's loan held in the same trust as Medina's loan has already been determined to constitute funding under §523(a)(8)(A)(i), rending those loans non-discharegable.

TERI-guaranteed loans in other NCSLT trusts have also been found to be non-dischargeable.  In *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016), the Northern District of Georgia Bankruptcy Court held: "The NCSLT loans were made under a program funded in whole or in part by a non-profit institution,

in this case, The Education Research Institute, Inc. Consequently, all of the loans of ECMC and NCSLT qualify to be non-dischargeable under Section 523(a)(8)(A)(i)." *Id.*, at 271.

But, even putting aside, the precedents from the other Circuit, District and Bankruptcy Courts which have determined that TERI guaranties constitute funding under §523(a)(8)(A)(i), logic dictates the same result be reached here.

TERI's Guaranty satisfies legal definitions of funding because TERI set aside funds to pay claims on its Guaranty.[26] Under the Deposit and Security Agreement, a Pledged Account was established in the name of TERI and was funded in part by Guaranty Fees.[27]  SMF 16. Once a Program loan defaulted and NCSLT submitted a valid claim, the Pledged Account trustee would transfer funds from the Pledged Account to a Collection Account to pay on the Guaranty.[28] Clearly, TERI set aside assets to pay on Guaranty Claims.

By way of concrete example, TERI paid at least one guaranty claim on a loan made through Plaintiff's Loan Program.  SMF 27, 29 & 30.  TERI re-purchased an Education One Undergraduate Loan, made under the Education One© Loan Program. SMF 28.  Plaintiff's Education One Continuing Education was also a part of the Education One© Loan Program. SMF 2.  Plaintiff took out her loan on June 12, 2006 (SMF 10); the loan TERI re-purchased was made on defaulted on July 14, 2007. SMF 29. The Claim Package identifies TERI as the Guarantor and NCT as the owner of the loan.[29] By re-purchasing a loan made under Plaintiff's

---

[26] One of the legal definitions of the word "fund" is "a generic term and all-embracing as compared with term 'money,' etc., which is specific.  A sum of money or other liquid assets set apart for a specific purpose, or available for the payment of debts or claims."  BLACK'S LAW DICTIONARY 606 (5TH ed. 1979). Another is "an asset or group of assets set aside for a specific purpose." Id.

[27] See Exhibit I, Sec. 2, p.4

[28] Id., Sec. 3(a), p. 4

[29] See Luke Declaration, ¶ 41.

Loan Program pursuant to its Guaranty, TERI funded the Program with actual assets; the claim amount was $20,415.12.[30]

This has even greater import because the Loan Program because it would not exist but for TERI's Guaranty and the Pledged Account that went with it. Bank One conditioned its participation in Plaintiff's Program in part on TERI's Guaranty in this case:

> WHEREAS, TERI is in the business of providing financial assistance in the form of loan guaranties to and on behalf of students enrolled in programs of higher education and their parents at TERI-approved schools; and
>
> WHEREAS, Bank One is willing to make Loans to eligible Borrowers under the Program, and TERI is willing to guaranty the payment of principal and interest against the Borrowers' default or certain other events as more fully described below, in accordance with the terms and conditions set forth in this Agreement.[31]

Bank One's willingness to make loans under the Program is conditioned on TERI's willingness to guaranty the Loans.

NCSLT's purchase of the loans in the Education One Program, including Plaintiff's, was also conditioned on TERI's Guaranty of the loans. The Deposit and Security Agreement states "WHEREAS, [NCSLT] is willing to purchase education loans to borrowers under the education loan programs listed on Schedule A attached hereto and others in accordance with the Indenture (collectively, the "Student Loan Programs") upon certain terms and conditions, including but not limited to the guaranty of the payment of principal and interest by TERI pursuant to the terms of the Guaranty Agreements."[32]  JPMorgan is referenced in its Schedule A.[33]  TERI's

---

[30] Id., ¶ 39.

[31] See Exhibit E, p. 1.

[32] See Exhibit I, p. 1.

[33] Id., Schedule A

Guaranty Agreement with JPMorgan (as successor to Bank One) is referenced in its Schedule B.[34]

TERI's Guaranty, and the financial contribution it entailed, made the Education One Program possible.  There can be no question that this is in fact funding of the Loan Program.  "[T]he Court does not need to put a fine point on the directness of the funding or the degree of involvement required of a nonprofit institution to determine whether a loan qualifies as one "made under a program funded . . . by a nonprofit institution."  *Sears v. EduCap, Inc. (In re Sears)*, 393 B.R. 678, 681 (Bankr. W.D. Mo. 2008).

**7. Plaintiff's Loan is Evidence it is Nondischargeable**

This Court may also look to the Loan document itself for evidence that the Loan is nondischargeable if Plaintiff agreed to nondischargeability in the terms of the loan.  In *O'Brien*, the note had a provision similar to Plaintiff's Loan regarding nondischargeability.  "We also note that the Promissory Note for O'Brien's loan itself stated that it "evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution and is therefore subject to the limitations on dischargeability contained in Section 523(a)(8) of the United States Bankruptcy Code."  *O'Brien,* 419 F.3d, at 106.

Plaintiff's Loan states "I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply:  (a) this loan was made pursuant to a program funded in whole or in part by The

---

[34] Id., Schedule B.

21

Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.  This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full." SMF 10.

TERI funded Plaintiff's Loan Program in part by its Guaranty.    Therefore, NCSLT's Loan is nondischargeable under §523(a)(8)(A)(i).

**8.  Plaintiff Makes No Claim That Repaying the Loan Will Cause an Undue Hardship**

Plaintiff's complaint makes no allegations of undue hardship.    SMF 26.  If a loan is nondischargeable under §523(a)(8), as NCSLT's Loan is, the Plaintiff must prove that repaying it will cause an undue hardship to obtain a discharge of the loan.  The Ninth Circuit adopted the three-pronged *Brunner* test to determine if an undue hardship exists. *United Student Aid Funds v. Pena (In re Pena*), 155 F.3d 1108, 1112 (9th Cir. 1998)

Accordingly, the debtor must prove "(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id*., at 396.

It is the Plaintiff's burden of proof to establish an undue hardship. *Carnduff v. United States Dep't of Educ. (In re Carnduff),* 367 B.R. 120, 134 (B.A.P. 9th Cir. 2007).  The Plaintiff alleged no facts whatsoever in the complaint as to undue hardship, nor did she allege that she meets any of *Brunner's* three prongs.  Because NCSLT's Loan is nondischargeable, the Plaintiff has no defense to the nondischargeability of the Loan.

**D. CONCLUSION**

NCSLT has met its initial burden to show that there are no material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 323.   The Declaration, the Loan documents, TERI's Guaranty, the Pool Supplement, the Deposit and Sale Agreement, the Deposit and Security Agreement, the Trust Agreement, TERI's corporate loan documents, TERI's bankruptcy filings and the Complaint combine to show that Plaintiff's Loan was an educational loan, made under a Loan Program, the Education One Continuing Education Loan Program, and that TERI, a nonprofit institution, funded the Program, at least in part, by its Guaranty.   Where a student loan creditor satisfies the burden of proof that they hold an educational loan that was made under a program funded in part by a nonprofit institution, as NCSLT has done here, the creditor is entitled to summary judgment, unless the debtor can prove undue hardship. *White v. United States Dep't of Educ. (In re White)*, 243 B.R. 498, 505 (Bankr. N.D. Ala. 1999).

Plaintiff alleges not one fact in support of her allegation that "[t]he Loan was not made, insured, or guaranteed by a governmental unit; nor was it made under any program funded in whole or in part by a governmental unit or nonprofit institution."[35] Plaintiff can offer no evidence to show there are any material facts in dispute.   In fact, the absence of such evidence compels a judgment in favor of NCSLT. *Celotex Corp.,* 477 U.S. at 325 and see *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d, at 1542-43.   NCSLT is entitled to a judgment of nondischargeability as a matter of law.

In the alternative, NCSLT requests that the court issue a partial summary judgment to narrow the issues for trial or further briefing.

Respectfully submitted,

---

[35] See Complaint, Section II, Lines 10-11.

Dated: June 24, 2020                    /s/ Scott S. Weltman
                                        Scott Weltman (SBN 145215)
                                        **Weltman, Weinberg & Reis, Co. L.P.A.**
                                        Attorney for Defendant,
                                        National Collegiate Student Loan Trust 2006-3

Dated: June 24, 2020                    /s/ Holly Nolan
                                        Holly Nolan (SBN 140775)
                                        **Solomon, Grindle, Lidstad & Wintringer, APC**
                                        Attorney for Defendant,
                                        National Collegiate Student Loan Trust 2006-3

24