1                    UNITED STATES BANKRUPTCY COURT

2                    SOUTHERN DISTRICT OF CALIFORNIA

3                    JUDGE LAURA S. TAYLOR, PRESIDING

4

5    IN RE                          ) CASE NO. 17-05276—LT
                                    ) ADV. NO. 19-90065
6    CESAR & KRYSTAL ANNE MEDINA,   )
                                    )
7                    DEBTORS.       )
                                    )
8    _____) CHAPTER 7
     KRYSTAL ANNE MEDINA,           )
9                                   )
                     PLAINTIFF,     )
10                                  )
     VS.                            )
11                                  )
     NATIONAL COLLEGIATE STUDENT    )
12   LOAN TRUST 2,                  )
                                    )
13                   DEFENDANT.     )
     _____)

14

15   1) PRE-TRIAL STATUS CONFERENCE (FR. 12/4/19)

16   2) MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF NATIONAL

17   COLLEGIATE STUDENT LOAN TRUST 2006-3

18

19              REPORTER'S TRANSCRIPT OF PROCEEDING

20              VOLUME I, PAGES 1 — 71

21              SAN DIEGO, CALIFORNIA

22              WEDNESDAY, MARCH 11, 2020

23
     JENNIFER GIBSON, CSR NO. 12802        U.S. BANKRUPTCY COURT
24   SAN DIEGO BANKRUPTCY REPORTERS        325 WEST "F" STREET
     SOLANA BEACH, CALIFORNIA 92075        DEPARTMENT 1
25   (760)807—2221                         SAN DIEGO, CA 92101

EXHIBIT 5

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF, KRYSTAL ANNE MEDINA:

 4           CHRISTOPHER R. BUSH, ESQ.
             & AUSTIN SMITH, ESQ.
 5           2727 CAMINO DEL RIO SOUTH, SUITE 135
             SAN DIEGO, CALIFORNIA 92108
 6           619.678.1134
             CHRIS@CHRISBUSHLAW.COM
 7

 8   FOR THE DEFENDANT, NATIONAL COLLEGIATE STUDENT LOAN TRUST

 9   06-00003:

10           RICHARD A. SOLOMON, ESQ.
             11682 EL CAMINO REAL, SUITE 250
11           SAN DIEGO, CALIFORNIA 92130
             858.793.8500
12           RICHARD@SGLWLAW.COM

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SAN DIEGO, CALIFORNIA; WEDNESDAY, MARCH 11, 2020

 2                        10:00 A.M.

 3

 4             THE CLERK:  ALL RISE.  DEPARTMENT 3 OF THE

 5   U.S. BANKRUPTCY COURT IS NOW IN SESSION.  YOUR

 6   HONORABLE LAURA S. TAYLOR, JUDGE, PRESIDING.  PLEASE

 7   BE SEATED AND COME TO ORDER.  GOOD MORNING, YOUR

 8   HONOR.

 9             THE COURT:  GOOD MORNING.

10             ALL COUNSEL:  GOOD MORNING, YOUR HONOR.

11             THE CLERK:  MATTER NO. 1, KRYSTAL MEDINA

12   VERSUS NATIONAL COLLEGIATE STUDENT LOAN TRUST 2.

13   PRE-TRIAL STATUS CONFERENCE CONTINUED FROM 12/4 AND

14   MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF

15   NATIONAL COLLEGIATE STUDENT LOAN.  MAY WE HAVE

16   IN-COURT APPEARANCES, PLEASE.

17             MR. BUSH:  GOOD MORNING, YOUR HONOR.

18   CHRIS BUSH ON BEHALF OF PLAINTIFF/DEBTOR.

19             THE COURT:  THANK YOU.

20             MR. SMITH:  GOOD MORNING, YOUR HONOR.

21   AUSTIN SMITH ON BEHALF OF THE PLAINTIFF/DEBTOR.

22             THE COURT:  THANK YOU.

23             MR. SOLOMON:  GOOD MORNING, YOUR HONOR.

24   RICH SOLOMON ON BEHALF OF DEFENDANT.

25             THE COURT:  ALL RIGHT.  GOOD MORNING.  ALL
```

1   RIGHT.  MR. SUMMERLAND; IS THAT IT?

2            MR. SOLOMON:  SOLOMON.  S-O --

3            THE COURT:  SOLOMON.  OH.

4            MR. SOLOMON:  L-O-M-O-N.  SORRY, YOUR

5   HONOR.

6            THE COURT:  THAT'S OKAY.  ALL RIGHT.  MR.

7   SOLOMON, IT IS YOUR MOTION.  YOU MAY --

8            MR. SOLOMON:  YES, YOUR HONOR.  FIRST OF

9   ALL, I'D LIKE TO APOLOGIZE TO THE COURT AND TO YOUR

10  HONOR FOR THE PROCEDURAL VIOLATIONS AND THE

11  VIOLATIONS OF THE LOCAL RULES.  THEY ARE

12  INEXCUSABLE.  VERY SORRY THEY WERE DONE.  I'M

13  CO-COUNSEL.  I'M LOCAL COUNSEL.  I CAN'T PASS THE

14  BUCK.  WE DID NOT PREPARE IT.  IT WAS FILED WITHOUT

15  OUR SEEING IT.  STILL NO EXCUSE.  BUT TO NOT GO

16  FORWARD TODAY I THINK WOULD BE A DISSERVICE.  I

17  DON'T THINK THERE'S BEEN A PREJUDICE.  I THINK TO --

18  IF WE WOULD CONTINUE THIS MATTER OR REFILE IT WOULD

19  BE A LOT OF COST, JUDICIAL TIME AND ENERGY WASTED.

20  YOUR HONOR HAS OBVIOUSLY READ EVERYTHING, ISSUED A

21  VERY LONG TENTATIVE RULING.  TO START FROM SQUARE

22  ONE AGAIN I THINK WOULD JUST BE A LOT OF WASTE, TIME

23  MONEY AND ENERGY OF THIS COURT.  SO I WOULD ASK THE

24  COURT TO FORGIVE WHAT WE'VE DONE, AND I WOULD

25  PROMISE IT WOULD NOT HAPPEN AGAIN BY MY OFFICE.

5

1           THE COURT:  ALL RIGHT.  I CAN SAY THAT I'M

2    THE ONLY JUDGE IN THIS COURT THAT DOES NOT I THINK

3    ROUTINELY ASSESS SANCTIONS, SMALL DOLLARS, BUT STILL

4    MONETARY SANCTIONS FOR NON-COMPLIANCE WITH THE LOCAL

5    RULES.  THIS ONE MADE ME THINK ABOUT IT.  I'M NOT

6    GOING TO CHANGE MY JUDICIAL PHILOSOPHY, AS THAT'S

7    INAPPROPRIATE, BUT WE ACTUALLY USE THOSE THINGS.

8    AND IN SOMETHING AS COMPLICATED AS THIS, I

9    ACTUALLY -- ONE TOOL I HAVE IS TO COMPARE THE CASE

10   LIST AND TO SEE WHERE THERE'S SIMILARITIES, WHERE

11   THERE ARE DIFFERENCES, LOOK AT THE TABLES OF

12   CONTENTS, SEE WHERE THEY COALESCE AND WHERE THEY

13   DON'T.  AND TAKING THOSE TOOLS AWAY FROM ME IS

14   UNFAIR.  SO -- AND I DID ALLOW A SUR-REPLY WHICH IS

15   SOMETHING, SO -- AND IN MY METRICS FOR THE

16   SUR-REPLY, AT LEAST IN PART, WAS LOOKING AT THIS AND

17   SAYING, "NOT ONLY IS A SUR-REPLY APPROPRIATE GIVEN

18   WHAT'S ON REPLY, THEY WENT OVER THE PAGE LIMITS."  I

19   NOTICE THOSE THINGS.

20           SO I'M NOT INCLINED TO DO ANYTHING TO YOU

21   TODAY ON THAT, BUT IT COLORS MY VIEWS AS TO HOW

22   SERIOUSLY THIS WAS TAKEN AND AS TO THE ATTITUDE

23   TOWARDS GOING FORWARD.  AND YOU'LL SEE THAT TO SOME

24   EXTENT AS WE GO THROUGH THE -- GO THROUGH THE

25   PRESENTATION SOME OF THE CONCERNS I HAVE.  BECAUSE I

 1   DO HAVE THE FEELING THAT, HAVING PREVAILED IN OTHER

 2   COURTS, THE IDEA IS THAT WHILE I DON'T THINK

 3   ANYONE'S ARGUING THAT THOSE DECISIONS ARE

 4   PRECLUSIVE, EITHER AS A MATTER OF ISSUE OR CERTAINLY

 5   AS TO DECISION, THAT I -- THAT YOU GET TO KIND OF

 6   PUT YOUR HANDS BEHIND YOUR HEAD, KICK UP YOUR FEET

 7   AND SAY, "SEE, THEY DID IT.  WHY DON'T YOU DO IT,

 8   TOO?"  AND THAT JUST ISN'T THE WAY IT WORKS.  SO HAD

 9   THE -- HAD THE ERRORS NOT BEEN MADE, MAYBE I

10   WOULDN'T BE SO FIRMLY EMBEDDED IN THAT POSITION, BUT

11   I AM.  SO YOU'RE GOING TO DO IT BY THE NUMBERS, YOUR

12   SIDE, AND THAT MAY -- YOU MAY BE DOING SOME MORE

13   WORK.  WE MAY BE COMING BACK ANYWAYS.  SO I'M NOT

14   GOING TO NOT PROCEED BASED ON THAT, BUT YOU COME

15   ENCUMBERED WITH SOME VIEWPOINTS THAT HAVE BEEN

16   CREATED BY THAT FAILURE TO READ AND COMPLY WITH OUR

17   LOCAL RULES.

18         MR. SOLOMON:  I UNDERSTAND, YOUR HONOR,

19   AND THAT IS UNFORTUNATE.  AND I UNDERSTAND YOUR

20   POSITION.

21         THE COURT:  OKAY.  ALL RIGHT.  SO LET'S --

22   LET'S GO THROUGH -- IT IS A LONG TENTATIVE.  IT WAS

23   A LOT OF PAPER.  AND WHAT I AT LEAST TRIED TO DO IN

24   THE TENTATIVE WAS DISTILL THE MOTION DOWN TO ITS

25   ESSENCE.  AND I HAVE SOME TOUGH QUESTIONS I THINK

1    FOR BOTH SIDES.  BUT TAKING THE ISSUES -- FIRST OF

2    ALL, DO YOU DISAGREE WITH THE THREE SORT OF ISSUES

3    MR. BUSH MADE THAT I'VE LAID OUT AS THE THINGS I

4    THINK NEED TO BE ESTABLISHED HERE; THAT THE SCHOOL

5    WAS A NOT-FOR-PROFIT, THAT THE INSTITUTION NEED NOT

6    BE AN EDUCATION INSTITUTION; AND THAT THE GUARANTEE

7    OF THE PROGRAM SATISFIES THE PROGRAMMATIC FUNDING

8    REQUIREMENT?  DO YOU THINK THERE'S ANOTHER ISSUE?

9              MR. SOLOMON:  NO, YOUR HONOR, I DO NOT.

10             THE COURT:  OKAY.  THEN LET'S TAKE THEM

11   IN, PERHAPS, A DIFFERENT ORDER.  DO YOU DISAGREE

12   WITH MY ANALYSIS OF THE BURDEN OF PROOF?

13             MR. SOLOMON:  OF THE BURDEN OF PROOF?  NO,

14   YOUR HONOR, I DON'T.

15             THE COURT:  OKAY.  ALL RIGHT.  SO WE'RE

16   HERE ON SUMMARY JUDGMENT.  YOU HAVE THE BURDEN OF

17   PROOF, SO YOU HAVE TO COME FORWARD WITH ADMISSIBLE

18   EVIDENCE TO SUPPORT EACH OF THESE THEORIES.  AND I

19   WAS NOT OVERWHELMINGLY IMPRESSED WITH THE EVIDENCE

20   THAT I HAVE, SO LET'S TALK ABOUT THE EVIDENCE THAT I

21   HAVE TODAY.  BECAUSE I THINK, AGAIN, THERE'S A

22   STRONG SUGGESTION IN YOUR DOCUMENTS THAT, "HEY, WE

23   PROVIDED THESE SAME POINTS TO ANOTHER COURT, THEY

24   BOUGHT IT, YOU SHOULD BUY IT, TOO."  BUT I DON'T

25   HAVE THE RECORD IN THOSE PROCEEDINGS.  I DON'T KNOW

```
 1   THAT YOU PROVIDED EXACTLY THE SAME QUALITY OF

 2   DECLARATION, I DON'T KNOW THAT THE OTHER SIDE

 3   OBJECTED TO IT IN THE WAY THEY HAVE.  THEY HAVE

 4   OBJECTED TO ALL YOUR EVIDENCE, SO I DON'T HAVE THE

 5   SITUATION WHERE I CAN SAY, "WELL, IF THEY'D

 6   OBJECTED, IT'D BE A PROBLEM, BUT THEY DIDN'T."

 7        SO LET'S START WITH THE NOT-FOR-PROFIT

 8   ISSUE.  WHAT EVIDENCE DO I HAVE, ADMISSIBLE EVIDENCE

 9   DO I HAVE IN THE RECORD HERE TODAY THAT IS PROPERLY

10   BEFORE ME THAT WOULD ALLOW ME TO MAKE THAT

11   CONCLUSION?

12        MR. SOLOMON:  WELL, FIRST OF ALL, WE HAVE

13   THE DECLARATION OF MR. LUKE.  AND IT IS DONE UNDER

14   THE CUSTODIAN OF RECORDS.  I KNOW THERE ARE SOME

15   DOCUMENTS MISSING WE WILL TALK ABOUT, BUT THE

16   DOCUMENTS THAT WE PRESENTED HAVE ALL BEEN MATTERS OF

17   BUSINESS RECORDS.  HIS DECLARATION GOES THROUGH THE

18   STEPS TO QUALIFY RECORDS, HIS BUSINESS RECORDS.

19   BUSINESS RECORDS ARE USED ALL THE TIME.  HE DOESN'T

20   HAVE TO HAVE PERSONAL KNOWLEDGE OF THE DEAL BEING

21   DONE, TESTIFIES AS TO THE RECORDS.

22        THE COURT:  SO THAT EVIDENCE IS EVIDENCE

23   THAT IN THOSE DEALS THE PARTIES ACCEPTED THAT THIS

24   WAS A NOT-PROFIT ENTITY.

25        MR. SOLOMON:  THAT WOULD BE PART OF IT,
```

 1   YES, YOUR HONOR.  I MEAN, THE DOCUMENT ITSELF THAT

 2   THE -- WAS SIGNED BY THE DEBTOR SAYS BOTH -- IN ONE

 3   POSITION SAYS THIS IS A NON-DISCHARGEABLE LOAN

 4   THAT'S MADE UNDER 523(A)(8), YOU KNOW, AND IT'S A

 5   NON-PROFIT SITUATION.

 6        THE COURT:  ARE YOU ARGUING THAT SHE'S

 7   ESTOPPED TO TAKE A DIFFERENT POSITION BASED ON THAT?

 8   BECAUSE I DON'T THINK SHE HAS PERSONAL -- OR ARE YOU

 9   ARGUING SHE HAD PERSONAL KNOWLEDGE?

10        MR. SOLOMON:  WELL, I WOULD -- YEAH, I

11   WOULD SAY SHE SIGNED THE DOCUMENT, HAS THE

12   OBLIGATION TO READ THE DOCUMENT, TO UNDERSTAND THE

13   DOCUMENT.  AND IT'S --

14        THE COURT:  HOW MANY PAGES IS THE

15   DOCUMENT?

16        MR. SOLOMON:  YOUR HONOR, I DON'T KNOW,

17   BUT I UNDERSTAND THAT.  BUT THE LAW IS IF YOU -- IF

18   YOU SIGN IT, YOU'VE INFERRED THAT YOU'VE READ IT,

19   YOU UNDERSTOOD IT.  THAT'S THE SITUATION.  I'M SURE

20   IT IS A -- YOU KNOW, I HATE TO USE THE TERM "BOILER

21   PLATE DOCUMENT," BUT IT'S A DOCUMENT SHE USED

22   NUMEROUS TIMES.  AND THE LAW IS THAT IF YOU -- IF

23   YOU SIGN IT, YOU'VE INFERRED THAT YOU'VE READ IT AND

24   UNDERSTOOD IT.  THAT WOULD BE THE POSITION.

25        AS TO THE TWO DOCUMENTS, EXHIBIT H AND

1    EXHIBIT I, THAT ARE ATTACHED BUT ARE NOT, FOR SOME

2    REASON NOT INCLUDED IN HIS DECLARATION -- AND ALSO,

3    AS THE PLAINTIFFS POINTED OUT, ARE ATTACHED TO THE

4    REPLY, DEFENDANT'S REPLY AND DISCUSSED.  THOSE

5    DOCUMENTS ARE KNOWN.  THOSE -- EVERYBODY HAS SEEN

6    THEM.  I DON'T THINK IT WOULD BE PREJUDICIAL TO ASK

7    FOR JUDICIAL NOTICE.

8           THE COURT:  WELL, HAVE YOU ASKED FOR

9    JUDICIAL NOTICE --

10          MR. SOLOMON:  I'M ASKING FOR --

11          THE COURT:  -- BEFORE THIS --

12          MR. SOLOMON:  I'M ASKING FOR IT NOW, YOUR

13    HONOR.

14          THE COURT:  SO IF WE WERE -- IF I WERE IN

15    THAT SORT OF THE MODE OF MAKING YOU DO IT BY THE

16    NUMBERS, WOULDN'T THAT REQUIRE YOU TO FILE A

17    DOCUMENT AND FORMALLY BRING IT INTO EVIDENCE?

18          MR. SOLOMON:  YOUR HONOR, UNDER THE CODE

19    SECTION, YOU CAN DO THAT.  UNDER THE CODE SECTION,

20    WE CAN MAKE THE MOTION AT ANY TIME DURING THE

21    HEARING OR THE TRIAL.  AGAIN, THIS IS A -- THESE ARE

22    TWO DOCUMENTS THAT SPEAK TO THE HEART OF THE ISSUE

23    HERE.  ONE IS THE TAX DOCUMENT FROM THE STATE OF

24    MASSACHUSETTS.  TO TELL YOU THE TRUTH, WHEN I

25    REVIEWED IT, THAT WAS THE VERY FIRST DOCUMENT I

1    THOUGHT OF.

2              THE COURT:  RIGHT.

3              MR. SOLOMON:  WHY DON'T THEY GET THAT

4    DOCUMENT AND JUST SHOW THIS IS A NON-PROFIT.

5              THE COURT:  RIGHT.

6              MR. SOLOMON:  I GUESS IN READING THE

7    DECLARATION, I DIDN'T NOTICE.  I SAW IT, DIDN'T

8    NOTICE IT WAS INCLUDED IN THE BODY.

9              THE COURT:  I MEAN, IT'S SORT OF LIKE THE

10   LEGAL EQUIVALENT OF TAKING A ROCK AND WRAPPING THE

11   DOCUMENT AROUND IT AND TYING IT WITH STRING AND

12   THROWING IT THROUGH THE WINDOW.  I MEAN, THAT'S --

13   THAT'S KIND OF WHAT IT IS RIGHT NOW.  IT'S IN THE

14   COURTROOM.

15             MR. SOLOMON:  IT'S IN THE COURTROOM.  IT'S

16   -- AND IT'S -- AND, AGAIN, IT'S -- I DON'T THINK IT

17   WOULD BE PREJUDICIAL TO ANYBODY.  I'M SURE THE OTHER

18   SIDE MIGHT HAVE A DIFFERENT VIEW --

19             THE COURT:  I SUSPECT THEY WILL.

20             MR. SOLOMON:  -- FROM PREJUDICIAL, AS IT

21   IS -- AGAIN, IT'S A DOCUMENT THAT WAS KNOWN.  THEY

22   REVIEWED LUKE'S DECLARATION.  THEY DIDN'T -- MAYBE

23   THEY DIDN'T OBJECT BECAUSE IT WASN'T INCLUDED.  I

24   DON'T KNOW THEIR THINKING AT THIS TIME.  BUT, AGAIN,

25   IT WAS IN THE REPLY.  SO IT'S BEFORE THE COURT.

1    THOSE TWO DOCUMENTS --

2            THE COURT:  BUT DOCUMENTS THAT COME IN ON

3    REPLY -- I JUST DRAFTED A B.A.P. DECISION WHERE I

4    SAID IT'S REVERSIBLE ERROR TO RELY ON THOSE WITHOUT

5    ALLOWING THE OTHER SIDE AN OPPORTUNITY TO RESPOND

6    BECAUSE -- NOW, THEY DID HAVE A SUR-REPLY.  I DID

7    ALLOW THAT.  SO THAT'S A SLIGHTLY DIFFERENT

8    SITUATION.  BUT WOULDN'T IT BE MORE PRUDENT FOR ME

9    TO REQUIRE YOU TO FILE -- TO CONTINUE THIS TO

10   REQUIRE YOU TO FILE A REQUEST FOR JUDICIAL NOTICE,

11   GIVE THEM AN OPPORTUNITY TO RESPOND?  I'M NOT SURE

12   I'D HAVE A HEARING IF THAT WAS THE ONLY ISSUE IF I

13   READ THE DOCUMENTS AND UNDERSTOOD IT.  BUT THAT

14   SEEMS TO ME A MORE -- YOU KNOW, THIS IS A SUMMARY

15   JUDGMENT YOU WANT.

16           MR. SOLOMON:  I UNDERSTAND, YOUR HONOR.

17   AND YOU'RE THE JUDGE.  I'M JUST THE ATTORNEY.  IF

18   THAT'S THE JUDGE'S RULING, THAT'S THE JUDGE'S

19   RULING.  BUT AGAIN, I THINK I HAVE TO NOW AT LEAST

20   MAKE THE ATTEMPT, TO --

21           THE COURT:  SURE.

22           MR. SOLOMON:  -- AVOID ANY FURTHER

23   HEARINGS, TO GET THAT DOCUMENT IN NOW.  BECAUSE I

24   THINK THAT DOCUMENT, ALONG WITH THE OTHER DOCUMENTS

25   THAT ARE -- THAT ARE THROUGH MR. LUKE'S DECLARATION,

1    MEET ALL THE PARAMETERS.  AND THE NUMBER OF CASES

2    THAT HAVE HELD THAT THAT IS SUFFICIENT, EVEN IN YOUR

3    -- ON YOUR HONOR'S TENTATIVE RULING, IT'S LIKE, YOU

4    KNOW, SIX OF ONE, HALF DOZEN OF THE OTHER, LOOKS

5    LIKE YOU'VE GOT IT.  BUT YOU DO MENTION THAT, YOU

6    KNOW, ABOUT THE ADDITIONAL EVIDENCE.  I THINK YOU'VE

7    COUCHED YOUR LANGUAGE A LOT IN THE -- YOUR RULING AS

8    "WE HAVE THIS, BUT WE MAY NEED THIS."  THOSE ARE THE

9    OTHER TWO DOCUMENTS I'D LIKE TO GET IN BEFORE THE

10   COURT EITHER NOW OR HOW YOUR HONOR RULES ON THEM.

11          THE COURT:  ALL RIGHT.  I THINK THEY'RE

12   CRITICAL.  I DON'T THINK THE FACT THAT THE -- YOU

13   HAVE A NUMBER OF DEALS WHERE PEOPLE HAVE SAID

14   THINGS, BUT I DON'T KNOW -- I DON'T KNOW ANYTHING

15   ABOUT THOSE DEALS.  YOU KNOW, AGAIN, I DON'T THINK

16   THIS IS NECESSARILY HEAVY-LIFTING HERE, BUT IF I

17   DON'T HAVE THE DETERMINATION THAT THEY ARE A

18   NOT-FOR-PROFIT IN THE EYES OF THE REGULATORY ENTITY

19   IN THE -- IN THEIR ORIGINAL CORPORATE GOVERNANCE

20   DOCUMENTS, I DON'T KNOW WHAT I HAVE.

21          SO I THINK THOSE ARE THE LINCHPIN

22   DOCUMENTS OF YOUR ARGUMENT, AND WITHOUT THEM -- AND

23   I DON'T THINK THEY'RE IN TODAY -- I DON'T THINK YOU

24   HAVE ANYTHING.  AND I DON'T THINK THAT THE FACT THAT

25   THIS GUY, BASED ON BUSINESS RECORDS, SAYS, "HEY,

```
 1    I'VE READ THESE BUSINESS RECORDS.  THEY'RE NOT FOR

 2    PROFIT."  I THINK THAT'S WORTH ABSOLUTELY NOTHING

 3    BECAUSE IT'S -- IT'S HIS -- YOU KNOW, IT'S BASED ON

 4    THE CONCLUSIONS OF OTHER PEOPLE.  THERE'S NO

 5    EVIDENCE THAT HE WAS -- THAT HE'S LOOKED AT

 6    ANYTHING, THAT HE HAS ANY PERSONAL KNOWLEDGE.  AND I

 7    UNDERSTAND BUSINESS RECORDS.  HE DOESN'T HAVE TO

 8    HAVE PERSONAL KNOWLEDGE.  HE CAN INTRODUCE THE

 9    RECORDS AS BUSINESS RECORDS.  BUT THAT DOESN'T MEAN

10    HE GETS TO MAKE CONCLUSIONS BASED OFF THEM.  SO I

11    THINK THAT PARAGRAPH I WOULD STRIKE.

12            MR. SOLOMON:  OKAY.  WOULD YOU --

13            THE COURT:  I THINK IT WAS 19.  WASN'T

14    THAT 19?

15            MR. SOLOMON:  PARAGRAPH 19?

16            THE COURT:  OF HIS DECLARATION IS THE ONE

17    WHERE HE JUST SAYS THEY'RE --

18            MR. SOLOMON:  OH, YES.  IT'S PARAGRAPH 19

19    WHERE HE IDENTIFIES A NUMBER OF DOCUMENTS WHICH ARE

20    ATTACHED THAT SAY "NONPROFIT."  I THINK THEY'RE --

21            THE COURT:  I THINK 19 IS THE ONE WHERE HE

22    JUST SAYS IT.

23            MR. SOLOMON:  YES.

24            THE COURT:  YEAH, AND THEN HE GOES ON.

25            MR. SOLOMON:  YEAH, INCORPORATES A 1(B),
```

15

1    (E), (F) OF THE DOCUMENTS, ALL SAY THAT IT'S A

2    NON-PROFIT, TERI'S A NONPROFIT.  TERI'S A NONPROFIT.

3            THE COURT:  AND I'M WILLING TO ACCEPT THE

4    EVIDENCE THAT THERE ARE A BUCKET OF DOCUMENTS THAT

5    SAY THAT AND TO HAVE THAT PART OF THE DECLARATION

6    STAND.  BUT HIS CONCLUSION, I'M GIVING NO WEIGHT TO.

7    I GUESS THAT'S THE BEST WAY TO PUT IT.

8            MR. SOLOMON:  OKAY.

9            THE COURT:  TO THE EXTENT HE SIMPLY READ

10   THOSE DOCUMENTS AND SAID "A LOT OF PEOPLE SAID

11   THAT."

12           ALL RIGHT.  DO YOU WISH TO RESPOND WHILE

13   WE'RE ON THIS ISSUE?  NOW, THEIR ARGUMENT IS THAT

14   THERE'S SOMETHING MORE, THAT -- THEY ARGUE THAT

15   CERTAIN FACT PATTERNS -- LET'S ASSUME FOR PURPOSES

16   OF YOUR ARGUMENT TODAY THAT YOU'RE GOING TO BE ABLE

17   TO INTRODUCE THE DOCUMENT THAT SHOWS THAT IN THE

18   EYES OF THE IRS AND I GUESS IT'S A STATE OF

19   MASSACHUSETTS?

20           MR. SOLOMON:  CORRECT, YOUR HONOR.

21           THE COURT:  THEY ARE A NOT -- NONPROFIT.

22   THEY'VE REGISTERED AS A NONPROFIT, THEIR CORPORATE

23   GOVERNANCE DOCUMENTS SAY THEY'RE A NONPROFIT, AND

24   THEY HAVEN'T BEEN DEEMED TO BE OTHERWISE BY THE

25   TAXING ENTITIES.  THEY ARGUE THAT AS A RESULT OF

1    VARIOUS BUSINESS MERGERS, WHATEVER, THAT THEY HAVE

2    BECOME AFFILIATED WITH A FOR-PROFIT, AND THAT THAT

3    CHANGES THE EQUATION.  COULD YOU RESPOND TO THAT

4    ARGUMENT.

5            SPEAKER 1:  WELL, YOUR HONOR, THE WAY I

6    RESPOND TO THAT IS, AGAIN, THERE ARE NUMEROUS CASES

7    OUT THERE.  THESE ISSUES HAVE BEEN RAISED.  THESE

8    ISSUES HAVE BEEN DISCUSSED.  COMMENTS FROM A

9    ELECTED-OFFICIAL ARE INCLUDED.  I DON'T -- THE

10   COURSES HAVE ALL HELD -- CASES HAVE ALL HELD THAT

11   NOTHING HAS CHANGED.  IT DOESN'T CHANGE IF THERE'S

12   AN ECONOMIC DEAL TO IT, ECONOMIC VALUE TO IT,

13   DOESN'T CHANGE.  IT'S -- IT'S THE -- IT'S THE NATURE

14   OF THE DEAL.  IT WAS FOR -- IT WAS A STUDENT LOAN,

15   IT WAS FOR A -- BY A FOR-PROFIT BANK, GUARANTEED BY

16   NONPROFIT TERI FOR EDUCATIONAL PURPOSES.  THAT MEETS

17   THE PARAMETERS.  THOSE OTHER ARGUMENTS THEY'RE

18   MAKING I DON'T THINK CHANGE ANYTHING.  THERE ARE,

19   AGAIN, NUMEROUS CASES OUT THERE THAT THE COURT IS

20   AWARE OF THAT'S BEEN CITED NUMEROUS TIMES THAT I

21   REALLY DON'T THINK CHANGES THE COLOR OF THE

22   TRANSACTION.

23           THE COURT:  AND WHY IS THAT?

24           MR. SOLOMON:  GIVE ME A SECOND HERE.  YOUR

25   HONOR, I'M SORRY, I DON'T HAVE THAT AT MY

1    FINGERTIPS.

2              THE COURT:  WELL, ALL RIGHT.  ALL RIGHT.

3              ALL RIGHT.  SO MOVING BEYOND THE --

4    ASSUMING WE LEAP OVER THE ISSUE OF WHETHER IT WAS A

5    NOT-FOR-PROFIT, WE GO TO THE QUESTION OF WHETHER THE

6    GUARANTEE SATISFIES THE REQUIREMENT OF FUNDING --

7              MR. SOLOMON:  CORRECT, YOUR HONOR.

8              THE COURT:  -- AND COULD YOU RESPOND TO

9    THAT ONE?

10             MR. SOLOMON:  YOUR HONOR, YES.  YOU ASKED

11   FOR SOME SPECIFIC EVIDENCE OTHER THAN THE CASE LAWS.

12   ONE OF THE DOCUMENTS THAT ARE IDENTIFIED IN MR.

13   TERI'S -- EXCUSE ME, MR. LUKE'S DECLARATION, EXHIBIT

14   B --

15             THE COURT:  OKAY.

16             MR. SOLOMON:  -- IT STATES -- THAT IS THE

17   GUARANTEE ITSELF.  THE AMENDED RESTATED GUARANTEE

18   AGREEMENT.  ABOUT TWO-THIRDS THE WAY DOWN, THERE'S A

19   PARAGRAPH THAT SAYS "WHEREAS TERI IS IN THE BUSINESS

20   OF PROVIDING FINANCIAL ASSISTANCE IN THE FORM OF A

21   LOAN, GUARANTEES TO AND ON BEHALF OF STUDENTS

22   ENROLLED IN PROGRAMS OF EDUCATION AND THEIR PARENTS

23   AT TERI-PROVIDED SCHOOLS AND WHEREAS BANK ONE IS

24   WILLING TO MAKE THE LOANS TO THE ELIGIBLE BUYERS --

25   BORROWERS UNDER THE PROGRAM AND TERI IS WILLING TO

1   GUARANTEE THE PAYMENT OF PRINCIPAL IN INTEREST

2   AGAINST THE BURROWER'S DEFAULT OR CERTAIN OTHER

3   EVENTS OR OTHER FULLY-DESCRIBED BELOW IN ACCORDANCE

4   WITH THE TERMS AND CONDITIONS SET FORTH IN THE

5   AGREEMENT."  THAT SHOWS INTENT THAT THE LOANS WOULD

6   NOT BE MADE WITHOUT THE GUARANTEE.  ADDITIONALLY --

7            THE COURT:  IT MEANS THEY'RE UNSECURED

8   LOANS, RIGHT?

9            MR. SOLOMON:  THESE ARE UNSECURED LOANS.

10  IN ADDITION, YOUR HONOR, IN SECTION 2 OF THAT SAME

11  DOCUMENT, 2.1, "TERI HEREBY GUARANTEES TO BANK ONE

12  UNCONDITIONALLY, EXCEPT AS SET FORTH IN SECTION 2

13  BELOW, THE PAYMENT OF 100 PERCENT OF THE PRINCIPAL

14  OF INTEREST IN -- ON THE LOANS AS TO WITH A

15  GUARANTEE EVENT OCCURS."  SO IN OTHER WORDS, AGAIN,

16  IT WOULDN'T MAKE -- BANKS DON'T MAKE DECISIONS,

17  DON'T GIVE OUT MONEY WITHOUT GUARANTEES NORMALLY.

18  HERE'S A GUARANTEE OF 100 PERCENT.  IT'S -- IT'S

19  NEEDED TO ENERGIZE THE BANKS, TO INDUCE THE BANKS TO

20  MAKE THE LOANS.

21           THE COURT:  DO WE HAVE ANY EVIDENCE IN THE

22  RECORD THAT TERI HAD THE ABILITY TO RESPOND TO THESE

23  LOANS?  I MEAN, THERE'S SOME -- THERE'S SOME

24  REFERENCES ABOUT FEES AND DIFFERENT THINGS, BUT I

25  DON'T REALLY -- WHAT TELLS ME HOW THIS WORKS?

```
1              MR. SOLOMON:  IT'S KIND -- IT'S -- THE WAY

2    IT WORKS, I WOULD THINK IT WOULD BE LIKE AN SBA

3    LOAN.  THAT WAS MY THOUGHT ABOUT HOW THIS WORKS,

4    THAT A LENDER MAKES A LOAN TO SOMEONE WHO MAYBE NOT

5    HAVE THE BEST CREDIT IN THE WORLD, BACKED UP BY THE

6    SBA KNOWING.  AND THE SBA SITUATION, IT'S USUALLY

7    80 PERCENT.

8              THE COURT:  RIGHT.

9              MR. SOLOMON:  AND --

10             THE COURT:  BUT THE -- BUT I KNOW THE SBA

11   HAS THE MONEY BECAUSE THE SBA'S THE FEDERAL

12   GOVERNMENT, RIGHT?

13             MR. SOLOMON:  CORRECT.

14             THE COURT:  ISN'T IT?

15             MR. SOLOMON:  WELL, I DON'T THINK IT IS.

16   I THINK IT'S LIKE A QUASI --

17             THE COURT:  YEAH, BUT IT'S --

18             MR. SOLOMON:  YES.

19             THE COURT:  IT'S GOT, YOU KNOW --

20             MR. SOLOMON:  IT'S THOUGHT OF AS THE

21   GOVERNMENT, CORRECT.

22             THE COURT:  RIGHT.  SO WHAT -- LET'S --

23   WHAT TELLS ME -- WHAT TELLS ME -- AGAIN, I'M NOT

24   LOOKING AT CASE LAW.  I'M LOOKING AT THIS IN

25   ISOLATION UNDER THE FACTS OF THIS CASE.  IS THERE
```

1  ANYTHING IN THE RECORD THAT SAYS, "OKAY, I'VE GOT A

2  TERI GUARANTEE, I'VE GOT EVIDENCE THAT THEY WOULDN'T

3  MAKE THE LOAN BUT FOR THE TERI GUARANTEE THAT" --

4  AND AT THE TIME, I KNOW THAT TERI HAD FINANCIAL

5  PROBLEMS LATER.  I'M NOT --

6          MR. SOLOMON:  CORRECT.

7          THE COURT:  -- WORRIED ABOUT THAT.  I'M

8  WORRIED ABOUT -- AND I'M WORRIED ABOUT -- MR. BUSH,

9  YOU'LL TRY AND TALK ME OUT OF IT, BUT I AGREE WITH

10  YOU THAT IT'S PROGRAMMATIC FUNDING, NOT FUNDING FOR

11  THIS LOAN, SO -- SO THE GUARANTEE -- BUT I THINK WE

12  COULD AGREE THAT THE GUARANTEE HAS TO HAVE SOME

13  SUBSTANCE.  IT CAN'T JUST BE -- I CAN'T GO OUT AND

14  FORM THE CELERY COOPERATIVE, YOU KNOW, A

15  NOT-FOR-PROFIT THAT BENEFITS PEOPLE WHO EAT CELERY

16  AND GUARANTEE YOUR LOAN KNOWING THAT I HAVE NO

17  MONEY.  YOU KNOW, I MEAN, I'M USING A -- THEY'RE

18  LAUGHING -- I'M USING A SILLY EXAMPLE, BUT I THINK

19  YOU GET MY POINT.

20          MR. SOLOMON:  WELL, IT'S INDEMNIFICATION,

21  CAN BE THE SAME WAY.

22          THE COURT:  RIGHT.  IT'S GOT TO -- IT'S

23  GOT TO BE REAL.

24          MR. SOLOMON:  YES.

25          THE COURT:  SO WHAT IN THE RECORD TELLS ME

1    THAT THIS IS REAL OR WHAT -- WHAT CAN I -- YOU KNOW,

2    THAT THIS IS A REAL THING.  AND AGAIN, I KNOW

3    THERE'S A LOT OF CASE LAW, AND I KNOW THERE'S A LOT

4    OF JUDGES BASED IN THE RECORD BEFORE THEM, BUT I

5    DON'T KNOW THAT THEY DIDN'T HAVE A DECLARATION THAT

6    DIDN'T EXPLAIN MORE ABOUT TERI.  I REALLY DON'T KNOW

7    ANYTHING ABOUT TERI.

8            MR. SOLOMON:  YOUR HONOR, I -- I CAN'T

9    COMMENT ON THAT.  I DON'T KNOW MYSELF.  IT'S NEVER

10   BEEN RAISED AS AN ISSUE, SO IT HASN'T BEEN RESPONDED

11   TO.

12           THE COURT:  RIGHT.

13           MR. SOLOMON:  BUT I DON'T HAVE THAT

14   INFORMATION OTHER THAN IT'S A COMPANY THAT'S -- IT

15   WAS FORMED UNDER A SPECIFIC LOAN SITUATION AND

16   PROGRAM.

17           THE COURT:  IS -- DO I HAVE THAT EVIDENCE

18   IN THE RECORD?

19           MR. SOLOMON:  I THINK --

20           THE COURT:  I MEAN, I'VE GONE THROUGH

21   THIS, BUT THIS IS A MASSIVE MOTION.

22           MR. SOLOMON:  YES.

23           THE COURT:  I'LL BE PERFECTLY HONEST.  AND

24   AS WE KNOW ALL KNOW, THERE'S A FEW THINGS GOING ON

25   RIGHT NOW, SO I'M A LITTLE DISTRACTED.  BUT I

```
1    COULDN'T FIND -- YOU KNOW, I'M TRYING TO UNDERSTAND

2    AND NOT DO INTERNET RESEARCH WHICH I'M -- BETWEEN

3    THE FOUR OF US --

4              MR. SOLOMON:  RIGHT.

5              THE COURT:  -- I'M REALLY NOT SUPPOSED TO

6    DO.  SO WHAT ON THIS RECORD --

7              MR. SOLOMON:  IT WAS -- IT WAS -- IT'S

8    MADE THROUGH THE EDUCATION ONE CONTINUING EDUCATION

9    PROGRAM.

10             THE COURT:  RIGHT.  I GOT THAT.

11             MR. SOLOMON:  OKAY.

12             THE COURT:  THAT'S THE PROGRAM.  SO THAT

13   --

14             MR. SOLOMON:  RIGHT.

15             THE COURT:  THAT GIVES US THE PROGRAMMATIC

16   HOOK WHICH I -- I THINK --

17             MR. SOLOMON:  RIGHT.

18             THE COURT:  AGAIN, MR. BUSH CAN ARGUE TO

19   THE CONTRARY, BUT I THINK THAT -- I THINK YOU GOT

20   THAT ONE.

21             MR. SOLOMON:  AND THE PROGRAM -- THE

22   TERI -- THE EDUCATION RESOURCE INSTITUTE WAS

23   PROBABLY SET UP -- AGAIN, I DON'T HAVE ANYTHING TO

24   GUARANTEE, SO TO INDUCE THE LENDERS TO MAKE THE

25   LOANS.  I DON'T HAVE THE HISTORY OF THAT PROGRAM
```

1    BEFORE ME OR BEFORE THE COURT, AND I'D HATE TO JUST

2    SHOOT IN THE DARK AND MAKE COMMENTS BECAUSE --

3            THE COURT:  WELL, YOU SHOULD --

4            MR. SOLOMON:  -- I DON'T KNOW.

5            THE COURT:  BUT IS THAT SOMETHING -- IF

6    THAT WERE AN INFIRMITY OF THE RECORD, IS IT ONE YOU

7    THINK YOU COULD CORRECT?

8            MR. SOLOMON:  I WOULD HAVE TO TALK TO MY

9    CO-COUNSEL.

10            THE COURT:  OKAY.

11            MR. SOLOMON:  WHO, AS YOU PROBABLY HAD

12    NOTICED, HAS BEEN COUNSEL ON A NUMBER OF THESE

13    CASES.

14            THE COURT:  RIGHT.

15            MR. SOLOMON:  SO HOPEFULLY IF THAT

16    QUESTION'S COME UP BEFORE, THEY CAN ANSWER IT.

17            THE COURT:  OKAY.

18            MR. SOLOMON:  BUT I -- AGAIN, I DON'T HAVE

19    THAT IN FRONT OF ME.  I --

20            THE COURT:  OKAY.

21            MR. SOLOMON:  -- CAN'T COMMENT ON THAT.

22            THE COURT:  ALL RIGHT.  THANK YOU.

23            ALL RIGHT.

24            MR. SOLOMON:  OH, AND ALSO, JUST ONE OTHER

25    THING.  JUST AS TO THE FUNDING, EXHIBIT F WHICH IS

```
 1    THE DEPOSIT AND SECURITY AGREEMENT TO MR. LUKE'S

 2    DECLARATION STATES "WHEREAS THE OWNER IS WILLING TO

 3    PURCHASE EDUCATION LOANS TO BURROWERS UNDER THE

 4    EDUCATION LOAN PROGRAM LISTED ON SCHEDULE A,

 5    ATTACHED THERETO, AND OTHERS IN ACCORDANCE WITH THE

 6    INDEMNITY COLLECTIVELY STUDENT LOAN AGREEMENT UPON

 7    CERTAIN TERMS AND CONDITIONS, INCLUDING BUT NOT

 8    LIMITED TO THE GUARANTEE OF THE PAYMENT."

 9            THE COURT:  OKAY.

10            MR. SOLOMON:  SO THE GUARANTEE IS THE

11    FUNDING.  WITHOUT THE GUARANTEE, THERE WOULD BE NO

12    FUNDING, YOUR HONOR.

13            THE COURT:  ALL RIGHT.  AND NO ONE -- THIS

14    LENDER WOULD NOT BE IN THIS MARKET MAKING UNSECURED

15    LOANS TO THESE PEOPLE, PEOPLE LIKE THE DEBTOR AND

16    THE ABSENCE OF THE GUARANTEE WHICH COULD BE ONE OF

17    TWO THINGS, THE GUARANTEE -- AND THIS IS REALLY MY

18    QUESTION.  THE GUARANTEE ITSELF HAS FINANCIAL MERIT

19    OR THE GUARANTEE GETS THEM A NONDISCHARGEABLE LOAN,

20    AND DOES IT HAVE TO BE BOTH, OR CAN IT BE EITHER?

21            MR. SOLOMON:  WELL --

22            THE COURT:  I THINK IT HAS TO BE BOTH --

23            MR. SOLOMON:  OKAY.

24            THE COURT:  -- PERSONALLY.

25            MR. SOLOMON:  TO A LENDER, I WOULD -- I
```

25

1    DON'T THINK, AGAIN, BANK ONE OR J.P. MORGAN ARE JUST

2    THROWING THEIR MONEY OUT THERE.  THEY'RE

3    SOPHISTICATED COMPANIES, I GUESS.  YEAH.

4           THE COURT:  I'M -- I'M -- I'M -- THE

5    RECORD CAN REFLECT I'M MAKING A FACE BECAUSE I WAS A

6    JUDGE HERE IN 2008.  I SAW A LOT OF LOANS WHERE

7    PEOPLE WERE THROWING MONEY AT PEOPLE, SO --

8           MR. SOLOMON:  OKAY.  I STAND CORRECTED.

9    BUT THEY SHOULD HAVE -- I WOULD THINK IN OUR

10   POSITION, WE'RE JUST SAYING IT MEETS THE 523(A)(8).

11   IF YOUR HONOR WANTS MORE INFORMATION REGARDING THE

12   RELIABILITY OF TERI OR THE VIABILITY OF TERI --

13          THE COURT:  I DON'T KNOW THAT IT'S A LOT,

14   I JUST DON'T THINK I HAVE ANYTHING.

15          MR. SOLOMON:  OKAY.

16          THE COURT:  YOU KNOW, IT'S -- IT'S --

17   IT'S-- I GET IT.  I'M STRUGGLING WITH WHETHER

18   IT'S -- IT'S -- IT'S -- AND STRUGGLING IS THE

19   CORRECT VERB -- WITH WHETHER IT'S ENOUGH THAT THEY

20   SIMPLY DESIRE THE GUARANTEE OR WHETHER THERE HAS TO

21   BE SOMETHING THAT, AT A MINIMUM, SHOWS THAT TERI WAS

22   CAPABLE OF RESPONDING TO THE GUARANTEE AT THAT TIME

23   OR HAD EVER PAID ON A GUARANTEE.  AND THERE'S

24   CERTAINLY CASE LAW WHERE TERI IS THE DEFENDANT WHICH

25   SUGGESTS TO ME THAT TERI HAS PAID ON A GUARANTEE.

26

```
1    SO I'M NOT SURE WHETHER THAT'S ENOUGH OR WHERE
2    THERE'S ENOUGH EVIDENCE.  I'LL TALK TO MR. BUSH
3    ABOUT THAT.  THAT -- THAT'S -- THAT ONE'S -- BUT I
4    -- BUT I DO THINK IT'S GOT TO BE REAL.  I DO THINK
5    THAT A MERE FACIAL GUARANTEE PROBABLY DOESN'T GET
6    YOU OVER THE MARK, BUT IF THE GUARANTEE IS MADE BY A
7    NONPROFIT, THAT NONPROFIT HAS THE ABILITY TO RESPOND
8    AS EVIDENCED BY EVIDENCE OF FUNDS AVAILABLE OR
9    EVIDENCED BY HAVING RESPONDED INTO THE PROGRAM IN
10   FACT.  I JUST DON'T KNOW THAT I HAVE THAT EVIDENCE.
11           MR. SOLOMON:  I WOULD JUST -- IT JUST --
12   IN MY OWN EXPERIENCE, YOUR HONOR, I DEAL WITH
13   GUARANTEES ALL THE TIME, BANKS' GUARANTEES.  AND --
14   I'LL WITHDRAW IT.
15           THE COURT:  BECAUSE THIS IS DIFFERENT.
16           MR. SOLOMON:  YEAH.
17           THE COURT:  IT'S NOT A CREDIT ENHANCEMENT.
18   IT'S NOT THE NORMAL CREDIT ENHANCEMENT THAT WOULD BE
19   THE BROTHER OF OUR BORROWER GIVING A GUARANTEE
20   BECAUSE SHE LACKS FINANCIAL --
21           MR. SOLOMON:  RIGHT.
22           THE COURT:  -- VIGOR.  IT'S -- IT'S --
23   IT'S A -- IT'S A CREDIT ENHANCEMENT ON THE OTHER
24   SIDE OF THE LEDGER WHICH IS STILL VALUABLE.  IT'S
25   STILL A GUARANTEE.  BUT IT ALSO COMES WITH THIS
```

1    NON-DISCHARGEABILITY LINK TO IT.  AND SO THAT'S WHAT

2    I -- SO I THINK, AGAIN, IT'S -- I DON'T SAY THE

3    GUARANTEE IS -- IF THEY MAKE A MISTAKE ON THEIR

4    UNDERWRITING AND IT'S THE BROTHER, THAT'S THEIR

5    MISTAKE, BUT I AM MORE CONCERNED WHEN IT'S ON THE

6    OTHER SIDE OF THE LEDGER THAT IT BE REAL.

7            MR. SOLOMON:  SO IS YOUR HONOR EXPANDING

8    523(A)(B)?  BECAUSE I DON'T -- THERE'S NOTHING IN --

9            THE COURT:  WELL, IT'S GOT TO BE A -- IT'S

10   GOT TO BE -- IF WE'RE GOING TO MAKE A GUARANTEE

11   FUNDING -- AND THERE'S OTHER PORTIONS OF THE STATUTE

12   THAT SAY "FUNDING AND GUARANTEE."  IF IT -- IF IT

13   HAD SAID THAT, THEN I THINK IT WOULD BE EASIER TO

14   SAY "JUST PROVIDE THE GUARANTEE."  BUT IT DOESN'T.

15   SO I THINK THE GUARANTEE HAS TO BE THE EQUIVALENT OF

16   FUNDING.  FOR IT TO BE THE EQUIVALENT OF FUNDING, I

17   THINK IT'S GOT TO HAVE SOMETHING OTHER THAN THE NAME

18   ON IT.

19           MR. SOLOMON:  OKAY.

20           THE COURT:  DO YOU SEE WHAT I'M SAYING?

21           MR. SOLOMON:  YEAH.  PG EQUALS FUNDING,

22   EQUALS CAPACITY.

23           THE COURT:  RIGHT.  EXACTLY.

24           MR. SOLOMON:  OKAY.

25           THE COURT:  YOU KNOW, SO -- SO I DON'T

```
 1   KNOW THAT I NEED COMPLICATED FINANCIAL THINGS.

 2   AGAIN, I -- IF THEY HAVE FUNDED, I THINK THAT'S

 3   ENOUGH.  IF YOU CAN YOU MAKE THAT ARGUMENT OR

 4   PROVIDE THAT EVIDENCE, OR IF AT THE TIME, YOU KNOW,

 5   IT'S THE PROGRAM, SO -- BUT I DON'T HAVE ANYTHING

 6   FROM TERI OR ANYBODY SAYING THEY'VE -- YOU KNOW,

 7   YOU'RE SAYING THEY SAID THEY WOULD.  COULD THEY OR

 8   DID THEY?

 9           MR. SOLOMON:  UNDERSTOOD, YOUR HONOR.

10           THE COURT:  AND I JUST THINK THAT'S -- IF

11   WE'RE GOING TO DOT OUR "I'S" AND CROSS OUR "T'S"

12   WHICH, AS YOU CAN TELL, WE'RE GOING TO DO --

13           MR. SOLOMON:  RIGHT.  IT LOOKS LIKE IT.

14           THE COURT:  -- THEN I THINK THAT'S A --

15   MAYBE A PIECE OF EVIDENCE, AND I MIGHT WELL GIVE YOU

16   TIME TO THINK ABOUT IT AND TO PROVIDE THAT.

17           MR. SOLOMON:  OKAY.

18           THE COURT:  IF YOU CAN.  BECAUSE I

19   PERSONALLY THINK THAT IT'S PROBABLY OUT THERE.  I

20   JUST AM NOT SURE -- I DON'T THINK I'VE HEARD ARGUED

21   TODAY AND I DON'T THINK IN THE EVIDENCE BEFORE ME IS

22   ANYTHING THAT -- I'M SUPPOSED TO ASSUME THAT.

23           MR. SOLOMON:  OKAY.

24           THE COURT:  IT'S SUMMARY JUDGMENT.  YOU

25   HAVE THE BURDEN.
```

```
1              MR. SOLOMON:  I UNDERSTAND THAT, YOUR

2    HONOR.

3              THE COURT:  I DON'T GET TO ASSUME.

4              MR. SOLOMON:  RIGHT.

5              THE COURT:  THAT'S WEIGHING.

6              MR. SOLOMON:  RIGHT.

7              THE COURT:  AND THAT'S WEIGHING

8    SUPPOSITION WHICH IS A PARTICULARLY BAD IDEA.

9              MR. SOLOMON:  SO YOU'RE SEEING AS A

10   MATERIAL FACT THE CAPACITY OF TERI --

11             THE COURT:  WHERE THERE IS A MATERIAL

12   FACT, THIS GUARANTEE WAS THE EQUIVALENT TO FUNDING

13   BECAUSE THE ENTITY HAD THE FINANCIAL CAPABILITY TO

14   BACK IT AT THE TIME AT SOME POINT IN THE PROGRAM.

15   AND AGAIN, PROGRAMMATIC -- NOT THIS LOAN -- OR THIS

16   ENTITY HAD.  DID TERI EVER PAY ON A GUARANTEE?  I'M

17   SURE IT DID --

18             MR. SOLOMON:  OKAY.

19             THE COURT:  -- IF IT'S REAL.  YOU KNOW,

20   AND YOU'RE CERTAINLY NOT HERE TELLING ME THAT YOU

21   DON'T THINK IT'S REAL.  I JUST DON'T HAVE THAT

22   EVIDENCE.

23             MR. SOLOMON:  OKAY.  UNDERSTOOD, YOUR

24   HONOR.

25             THE COURT:  AND I THINK THAT'S -- IF WE'RE
```

```
1    GOING THROUGH IT AND REALLY CHECKING THE BOXES, THEN

2    I GET OVER MY CONCERN.  BECAUSE I DO HAVE SOME

3    CONCERN -- IF I WERE GOING BACK IN TIME AND LOOKING

4    AT THE STATUTORY LANGUAGE, THE FACT THAT IN ONE

5    PLACE IT SAYS -- YOU KNOW, OR SAID OR SAYS, YOU

6    KNOW, "FUNDING AND GUARANTEE" AND ANOTHER IT JUST

7    SAYS "FUNDING," WE'RE TAUGHT TO SAY "WHY IS THAT

8    DIFFERENT."  AND AGAIN, BECAUSE OF THAT DIFFERENCE,

9    I DON'T THINK IT MEANS -- THEY CAN TRY AND TALK ME

10   OUT OF IT -- I DON'T THINK IT MEANS A GUARANTEE

11   ISN'T FUNDING.  I JUST THINK IT MEANS SOMETHING

12   DIFFERENT THAN JUST GIVING YOU THE DOCUMENT.

13             MR. SOLOMON:  UNDERSTOOD, YOUR HONOR.

14             THE COURT:  SO I DON'T THINK IT'S

15   NECESSARILY A HIGH HURDLE, BUT MAYBE IT'S A HURDLE.

16             THEN THE OTHER ONE IS "INSTITUTION NEED

17   NOT BE AN EDUCATIONAL INSTITUTION."  AND I DON'T

18   KNOW THAT YOU NEED TO ARGUE THAT BECAUSE I THINK

19   THAT'S THE ISSUE THAT THEY HAVE TO TRY AND TALK ME

20   OUT OF.  I HAVE THE GREATEST OF RESPECT FOR JUDGE

21   PERAIS WHO I THINK IS ONE OF THE FIRST PEOPLE TO SAY

22   "NO, CONGRESS WROTE THAT LANGUAGE OUT.  WE'RE NOT

23   GOING TO READ IT BACK IN."  SO DO YOU HAVE ANYTHING

24   TO ADD TO THAT ARGUMENT?

25             MR. SOLOMON:  NO, YOUR HONOR, I DON'T.
```

1          THE COURT:  OKAY.

2          MR. SOLOMON:  THAT ONE, I'M FINE WITH.

3          THE COURT:  YEAH, I BET YOU ARE.  IS THERE

4    ANYTHING ELSE IN MY TENTATIVE BEFORE THEY ARGUE THAT

5    YOU FOUND PROBLEMATIC?

6          MR. SOLOMON:  NO, YOUR HONOR.  LET'S SEE

7    WHAT THEY BRING UP AND THEN HOW THE COURT RULES --

8          THE COURT:  ALL RIGHT.

9          MR. SOLOMON:  -- WHAT ADDITIONAL THINGS IT

10   MAY NEED.

11         THE COURT:  ALL RIGHT.  THANK YOU VERY

12   MUCH.

13         MR. SOLOMON:  THANK YOU, YOUR HONOR.

14         THE COURT:  ALL RIGHT.  MR. BUSH.

15         MR. BUSH:  GOOD MORNING, YOUR HONOR.  IT

16   SEEMS AS THOUGH YOU'RE -- YOU'RE IN A VERY

17   QUESTIONING MOOD.  IF YOU WOULD LIKE --

18         THE COURT:  OH, YEAH.

19         MR. BUSH:  -- TO TAKE THE LEAD OF WHERE

20   YOU WANT TO GO --

21         THE COURT:  WELL, I USUALLY DO, SO --

22         MR. BUSH:  -- I THINK WE'RE OKAY WITH

23   THAT.

24         THE COURT:  WELL, IT'S -- I GUESS THE

25   FIRST QUESTION, THEY DON'T DISAGREE THAT THEY HAVE

1    THE BURDEN, AND THEY DON'T -- AND I'M NOT INCLINED

2    TO PENALIZE THEM FURTHER THAN WITH MY QUESTIONING.

3    I AM WAGGING FINGER ON THE LOCAL RULES,

4    NON-COMPLIANCE, BUT -- AND SO I THINK WE CAN -- I

5    DON'T REALLY NEED TO HEAR MORE ON THAT.  I DID GIVE

6    YOU THE CHANCE FOR SUR-REPLY, AND THAT'S THE MAIN

7    REASON I'M NOT GOING TO -- I THINK IT WOULD BE

8    UNDULY PUNITIVE TO REQUIRE THEM TO GO BACK AND REDO

9    THIS.  AND, FRANKLY, YOU FILED SO MUCH PAPER, I

10   CAN'T SEE -- EVEN IF ALL I -- YOU HAD TO DO IS COPY

11   IT AGAIN, THAT WOULDN'T BE A GOOD THING.  SO I THINK

12   --

13        MR. SMITH:  YOUR HONOR, IF I MIGHT JUST

14   ADD ONE THING ON THAT?

15        THE COURT:  YEAH.

16        MR. SMITH:  TO THE EXTENT THAT THEY ARE

17   GOING TO SUBMIT THE IRS LETTER AND THE STATE FILING

18   FROM MASSACHUSETTS, I WOULD JUST POINT OUT THAT ALL

19   THEY'VE SUBMITTED IS THE 1985 ARTICLES OF

20   ORGANIZATION.  THERE ARE AMENDED ARTICLES ON THE --

21        THE COURT:  WELL, THE WAY THAT THIS WILL

22   WORK --

23        MR. SMITH:  YEAH.

24        THE COURT:  -- IS THEY WILL HAVE -- I

25   THINK I'M PROBABLY GOING TO REQUIRE THEM TO AUGMENT

1   THE EVIDENTIARY RECORD.  I DON'T THINK IT'S

2   SUFFICIENT.  BUT I'LL BE CANDID WITH YOU.  I THINK

3   THEY CAN.  AND YOU WILL HAVE A CHANCE TO RESPOND.

4           MR. SMITH:  THANK YOU, YOUR HONOR.

5           THE COURT:  AND THEY WILL HAVE A CHANCE

6   TO -- YOU KNOW, AT SOME POINT --

7           MR. SMITH:  OF COURSE.

8           THE COURT:  WE'RE NOT EVEN NEAR A

9   DISCOVERY CUT-OFF.  WE'RE NOT EVEN NEAR A

10  DISPOSITIVE -- I HAVEN'T EVEN SET A DISPOSITIVE

11  MOTION CUT-OFF I DON'T THINK.  SO I WOULD -- IT JUST

12  DOESN'T MAKE ANY SENSE FOR ME TO DENY THE MOTION

13  WITHOUT PREJUDICE.  I THINK WE JUST USE THIS PROCESS

14  --

15          MR. SMITH:  THAT'S FINE.  YEAH,

16  ABSOLUTELY.

17          THE COURT:  AND SO ON THAT, YOU CAN ARGUE

18  THAT THAT ISN'T ENOUGH NOW, YOU CAN ARGUE THAT THAT

19  ISN'T ENOUGH LATER, BUT --

20          MR. SMITH:  OF COURSE.

21          THE COURT:  -- I'M AWARE THAT YOU'RE GOING

22  TO GET A CHANCE TO LOB SOMETHING INTO -- TO RESPOND

23  TO THEIR NEW EVIDENCE.

24          MR. SMITH:  THANK YOU, YOUR HONOR.

25          THE COURT:  ALL RIGHT.  SO LET'S GO

1    THROUGH THE -- LET'S GO WITH THE ONES THAT I -- I

2    JUST CAN'T SEE YOU CONVINCING ME OTHERWISE, AND LET

3    ME GIVE YOU A CHANCE.

4            THE FIRST IS THAT THE INSTITUTION HAS TO

5    BE AN EDUCATIONAL INSTITUTION OR A GOVERNMENT

6    ENTITY.  AND AGAIN, JUDGE PARIS, IN HER DECISION

7    BACK IN THE DAY, SAID, YOU KNOW -- AND THIS IS A

8    JUDGE WHO'S EXTREMELY SYMPATHETIC TO STUDENT LOAN

9    CASES.  I MEAN, SHE RETIRED AND WHAT SHE WANTED TO

10   DO WAS DO PRO BONO STUDENT LOAN CASES.  SO WE'RE NOT

11   TALKING ABOUT SOMEBODY WHO IS UNSYMPATHETIC TO

12   STUDENT LOAN DEBTORS.  I START FROM THAT PREMISE.  I

13   KNOW THAT FROM PERSONAL KNOWLEDGE.  YET SHE'S

14   LOOKING AT THIS AS A STATUTORY MATTER AND SAYING,

15   "WAIT A MINUTE.  CONGRESS WROTE THAT LANGUAGE OUT."

16   AND MANY OF THE COURTS SINCE THEN HAVE POINTED OUT

17   -- WE ALL KNOW CONGRESS HAS NARROW, NARROW, NARROW

18   NARROWED THE ABILITY TO DISCHARGE STUDENT LOANS.  SO

19   WHAT IS THE ARGUMENT THAT I GET TO ADD THAT BACK IN?

20   I JUST DON'T SEE IT.

21           MR. SMITH:  WELL, YOUR HONOR, I WOULD SAY

22   TWO THINGS IN RESPONSE TO JUDGE PARIS' OPINION IN

23   ROSEN -- IS IT ROSEN?

24           THE COURT:  I THINK.

25           MR. SMITH:  NUMBER ONE, WE DID CITE

1  LEGISLATIVE HISTORY THAT I -- IT SEEMS PRETTY CLEAR

2  TO ME ON PAGE --

3        MR. BUSH:  PAGE 10.

4        MR. SMITH:  -- PAGE 10 OF OUR RESPONSE.  I

5  UNDERSTAND IF IT'S NOT PERSUASIVE TO THE COURT, BUT

6  AT LEAST IT IS SOMETHING THAT I DON'T BELIEVE ROSEN

7  EXAMINED.

8        THE OTHER THING I WOULD SAY ABOUT ROSEN IS

9  I -- ROSEN -- YOU KNOW, I DON'T KNOW IF ROSEN

10  SURVIVED KASHIKAR, ALTHOUGH THERE WAS NO HOLDING

11  THAT THE LOAN WAS AN EDUCATIONAL BENEFIT.  THE

12  ANALYSIS WAS THAT HAD THE DEBTOR RECEIVED THE FUNDS,

13  IT WOULD HAVE BEEN.  SO I DO THINK THAT THERE IS A

14  QUESTION ABOUT THE ANALYSIS IN ROSEN SUCH THAT THE

15  NINTH CIRCUIT B.A.P. HAS REMOVED ONE OF THE -- YOU

16  KNOW, ANALYTICAL PREDICATES UPON WHICH THE CASE

17  PROCEEDS.  AND SO I THINK THAT THAT IS SOMETHING.

18        THE OTHER THING I WOULD SAY ABOUT THE

19  CONTINUED EXPANSION OF 523(A)(8) IS THAT I DON'T

20  UNDERSTAND THE ARGUMENT THAT BECAUSE CONGRESS HAS

21  MADE IT BIGGER THAT MEANS EVERY TERM WITHIN IT GETS

22  BIGGER.  YOU KNOW, THE FIRST AMENDMENT DOESN'T GET

23  BIGGER WHEN YOU ADD THE 12TH AMENDMENT.

24        THE COURT:  NO, BUT IN THIS CASE THEY MADE

25  IT BIGGER BY MAKING IT SMALLER.

```
 1              MR. SMITH:  BY REMOVING THAT WORD.

 2              THE COURT:  RIGHT.

 3              MR. SMITH:  THAT'S CORRECT.  AND I

 4    GUESS -- AND WHAT I WOULD SAY IS THAT WE ARE NOT

 5    SAYING TO READ BACK IN "HIGHER EDUCATION," BUT

 6    "INSTITUTION" -- AND IF I HAD -- COULD I HAVE A

 7    MINUTE TO TALK ABOUT THE RODRIGUEZ CASE?  I THINK

 8    THAT THERE IS A GREAT DEAL OF AMBIGUITY IN THAT

 9    WORD.  AND SOME OF THE CASES THAT HAVE TRIED TO

10    DEFINE IT, I HAVE SAID IT'S CRYSTAL CLEAR WHAT AN

11    INSTITUTION IS, AND THEN EQUATED IT WITH BASICALLY

12    ANYTHING.  I MEAN, IT COULD BE A BANK, IT COULD BE A

13    PRISON, IT COULD BE A STREET GANG.  YOU KNOW, ANY --

14    ANY THING THAT DOES SOMETHING ELSE IS NOW AN

15    INSTITUTION.  I THINK THAT THAT IS NOT A NARROW

16    CONSTRUCTION WHICH I BELIEVE THE TENTATIVE OPINION

17    BEGINS WITH "WE ARE GOING TO CONSTRUE THIS

18    NARROWLY."  RODRIGUEZ, YOU KNOW, FOR EXAMPLE --

19              THE COURT:  THAT'S JUDGE WILLIAMSON'S

20    CASE?

21              MR. SMITH:  YES, YOUR HONOR.  SAYS THE

22    COURT WILL APPLY THE PLAIN EVERYDAY DICTIONARY

23    MEANING OF INSTITUTION, TAKES MERRIAM WEBSTER WHICH

24    SAYS "AN ESTABLISHED ORGANIZATION OR CORPORATION AS

25    A COLLEGE OR UNIVERSITY, ESPECIALLY OF A PUBLIC
```

1    NATURE."  THE NEXT SENTENCE THE COURT SAYS, "BECAUSE

2    523(A)(8) WAS EXPANDED IN 1984 TO REMOVE THE WORDS

3    OF HIGHER EDUCATION, THIS COURT CONCLUDES THAT A

4    CORPORATION IS INCLUDED IN THE TERM INSTITUTION."

5            SO THE DICTIONARY DEFINITION IS NOW BEING

6    CHANGED BY THE LEGISLATIVE HISTORY WHICH I DON'T

7    THINK IS AN APPROPRIATE WAY TO DEFINE A TERM THAN IN

8    THOSE EXIST INDEPENDENTLY OF EACH OTHER.  THE COURT

9    THEN SAYS --

10           THE COURT:  BUT DON'T WE ASSUME -- I MEAN,

11    LET'S TALK ABOUT LEGISLATIVE HISTORY, AND LET'S TALK

12    ABOUT STATUTORY CONSTRUCTION.

13           MR. SMITH:  OKAY.

14           THE COURT:  THIS HAS BEEN THE LAW --

15    INSTITUTION HAS BEEN SO DEFINED FOR PURPOSES OF THE

16    CASE LAW FOR HOW LONG?

17           MR. SMITH:  THIRTY FIVE, FORTY YEARS.

18           THE COURT:  AND DON'T WE PRESUME THAT

19    CONGRESS KNOWS -- I MEAN, I THINK WE CAN ALL SIT

20    HERE AND SAY WE'RE QUITE SURE THAT AN INDIVIDUAL

21    CONGRESSMAN DOESN'T KNOW EVERYTHING THE COURTS DO.

22           MR. SMITH:  OF COURSE.

23           THE COURT:  AND THEY CERTAINLY DON'T KNOW

24    WHAT LAURA TAYLOR DOES IN HER COURTROOM.  BUT WE GOT

25    CIRCUIT COURTS DOING THIS, TOO.  SO, I MEAN, THESE

38

1    --

2            MR. SMITH:  THAT'S ABSOLUTELY FAIR, EXCEPT

3    I WOULD POINT OUT THE CASE WE CITED IN THE SUR-REPLY

4    ABOUT HARDISON WHERE THE SUPREME COURT -- WHICH

5    DEFINED THE TERM UNDUE HARDSHIP IN 1977 AND NOW IS

6    SAYING, "YOU KNOW WHAT, THAT WAS COMPLETELY WRONG."

7    IT HAS BEEN -- CONGRESS HAS NEVER CHANGED IT.  AND

8    THE SUPREME COURT IS NOW SAYING, "YOU KNOW WHAT, WE

9    WENT BACK AND READ THE BRIEFS, AND THAT DOESN'T MAKE

10   ANY SENSE."

11           THE COURT:  WELL, AND OH HAPPY DAY IF THE

12   SUPREME COURT WOULD CHANGE THE LAW.  BUT IT HASN'T,

13   YOU KNOW, AND --

14           MR. SMITH:  BUT JUST TO THE POINT THAT --

15   I MEAN, IF THE SUPREME COURT CAN SAY THAT THERE ARE

16   TIMES WHEN YOU HAVE TO RE-EXAMINE A STATUTE -- I

17   MEAN, AGAIN, EDUCATIONAL BENEFIT WAS DETERMINED --

18   WAS -- FOR 30 YEARS SAID "NO STUDENT LOAN CAN EVER

19   BE DISCHARGED WITHOUT UNDUE HARDSHIP."  IN THE LAST

20   THREE YEARS, THE FIFTH CIRCUIT, THE NINTH CIRCUIT

21   B.A.P. HAVE ALL CONCLUDED, AND QUITE SORT OF

22   SNIPPILY, "WHY WOULD ANYONE HAVE EVER THOUGHT THAT?"

23           THE COURT:  WELL, I THINK THAT THE LOANS

24   IN THOSE CASES, THOUGH, WERE -- WERE --

25           MR. SMITH:  I THINK THEY'RE VERY SIMILAR

1    TO THIS LOAN.  THEY WERE -- THEY WERE -- THEY WERE

2    VERY HIGH-INTEREST DEBTS THAT DIDN'T FIT ANYWHERE IN

3    THE STATUTE, AND THE COURT SAID, "WELL, THEY'RE JUST

4    EDUCATIONAL BENEFITS BECAUSE THEY WERE FOR SCHOOL."

5    AND NOW THE JURISPRUDENCE HAS SAID "WAIT A SECOND.

6    THAT CAN'T BE RIGHT."  AND I WOULD RESPECTFULLY

7    SUBMIT THAT THIS IS THE SAME STATUTORY PROVISION, IN

8    FACT, AND --

9            THE COURT:  BUT WE'RE TALKING ABOUT A

10   DIFFERENT -- YOU'RE TALKING ABOUT A DIFFERENT -- A

11   DIFFERENT PART OF THE STATUTE, AND I'M TALKING ABOUT

12   THE INSTITUTION, THAT NARROW -- THAT NARROW PIECE

13   HERE.  AND --

14           MR. SMITH:  OF COURSE.  AND, I'M SORRY, I

15   WAS JUST RESPONDING TO THE LARGER POINT ABOUT IF

16   ONCE A CASE HAS BEEN DECIDED AND CONGRESS DOESN'T

17   SAY ANYTHING, ISN'T IT PRESUMED THAT'S CORRECT.

18           THE COURT:  I DON'T THINK IT -- CONGRESS

19   IS PRESUMED TO KNOW THE COMMON LAW.

20           MR. SMITH:  OF COURSE.

21           THE COURT:  AND, YOU KNOW, THIS ISN'T

22   NECESSARILY COMMON LAW IN THE TYPICAL SENSE OF, YOU

23   KNOW, THE STATUTE OF FIRST ELIZABETH OR WHATEVER.

24           MR. SMITH:  RIGHT.

25           THE COURT:  BUT IT'S -- IT -- IT IS THE

1  ROUTINE DAY-TO-DAY PRACTICE OF THE COURTS, AND I'M

2  JUST NOT INCLINED TO FIND THAT CONGRESS, WHATEVER,

3  YOU KNOW, WITHOUT SOMETHING VERY DIRECT, VERY

4  SPECIFIC, THAT WHEN IT LIMITED THIS BY TAKING OUT

5  THIS LANGUAGE, THAT IT STILL INTENDED A BROADER

6  DEFINITION.

7            MR. SMITH:  OF COURSE.

8            THE COURT:  I THINK THAT'S -- I DON'T

9  THINK YOUR ARGUMENT IS FRIVOLOUS, BUT I'M -- I'M NOT

10 GOING TO --

11           MR. SMITH:  UNDERSTOOD.

12           THE COURT:  I'M NOT BUYING WHAT YOU'RE

13 SELLING ON THAT ONE.  MR. BUSH.

14           MR. BUSH:  IF I MAY JUST ADD, IF THE --

15 IT'S NOT AS THOUGH WE'RE NOT PROPOSING THAT THERE IS

16 A REASONABLE AND SPECIFIC DEFINITION THAT CONGRESS

17 DID INTEND.  WHAT WE'RE SAYING IS THAT WHEN (A)(8)

18 WAS WRITTEN AND USED THE WORD "INSTITUTION," IT WAS

19 WRITTEN IN REFERENCE TO THE HIGHER EDUCATION ACT

20 WHICH HAD A VERY EXPLICIT DEFINITION OF INSTITUTION

21 AS DEFINED UNDER 34 CFR 668.1 WHICH WE CITED ON

22 PAGE 11 OF OUR ORIGINAL BRIEF.  SO WHAT WE ARE

23 SAYING IS THAT AT ONE POINT "INSTITUTION OF HIGHER

24 EDUCATION" LIMITED -- THE "OF HIGHER EDUCATION" WAS

25 LIMITING THE WORD "INSTITUTION."  BY ELIMINATING

1    THOSE PHRASES, THEY WERE GOING BACK TO MERELY

2    "INSTITUTION," BUT THAT WORD DOES STILL HAVE A MUCH

3    MORE LIMITED DEFINITION GIVEN THIS CONTEXT AND GIVEN

4    THE LEGISLATIVE HISTORY.

5             THE COURT:  UNDERSTOOD.  BUT I -- AGAIN, I

6    THINK THE PRACTICE FOR DECADES IS WHAT IT IS.  THE

7    UNDERSTANDING FOR DECADES IS WHAT IT IS, AND THE

8    CASE LAW FOR DECADES IS WHAT IT IS.  AND I'M NOT

9    INCLINED TO DECIDE FOR YOU ON THAT ISSUE.  THAT

10   DOESN'T MEAN YOU CAN'T TAKE ME UP AND, YOU KNOW --

11            MR. SMITH:  UNDERSTOOD.

12            THE COURT:  -- GET SOMEBODY ELSE TO --

13            MR. SMITH:  UNDERSTOOD.

14            THE COURT:  -- TO CHANGE IT.  I THINK

15   THAT'S SOMETHING THAT'S GOING TO HAVE TO BE DECIDED

16   AT THE CIRCUIT LEVEL, TO BE -- TO BE BLUNT.  SO I

17   THINK THAT'S -- IT'S NOT PROFITABLE FOR US TO

18   CONTINUE --

19            MR. SMITH:  UNDERSTOOD.

20            THE COURT:  -- ARGUING THAT ONE.  SO AS

21   YOU CAN TELL, ON THE ISSUE OF GOING TO NONPROFIT

22   INSTITUTION, I'M INCLINED TO REQUIRE THAT A FORMAL

23   REQUEST FOR JUDICIAL NOTICE BE FILED ON THE

24   DOCUMENTS THAT I THINK ARE THE TWO MOST IMPORTANT

25   DOCUMENTS IN THE EVIDENTIARY SUBMISSION.  I DON'T

1    BUY THAT -- I SUSTAIN YOUR EVIDENTIARY OBJECTION TO

2    THE EXTENT YOU'RE SAYING THIS GENTLEMAN DOESN'T HAVE

3    PERSONAL KNOWLEDGE TO GIVE A STATEMENT OF FACT THAT

4    IT'S A NOT-FOR-PROFIT, AND HE CERTAINLY IS NOT

5    DISINTERESTED ENOUGH THAT HE CAN QUALIFY AS AN -- HE

6    DOESN'T EVEN TRY TO QUALIFY AS AN EXPERT WHO'S

7    ENTITLED TO GIVE AN OPINION.

8            THE OTHER DOCUMENTS ARE, YOU KNOW,

9    SUPPORTIVE THAT THAT WAS THE GENERAL UNDERSTANDING

10   IN THE COMMUNITY.  AND THAT'S NOT NOTHING, BUT

11   THAT'S AS MUCH AS I'M GOING TO TAKE HIM FOR.  BUT I

12   THINK IF THEY GET THE -- THE -- YOU KNOW, THE -- IF

13   YOUR ARGUMENT IS THERE ARE OTHER ARTICLES OF

14   INCORPORATION AND THEY SAY SOMETHING DIFFERENT, THEN

15   OBVIOUSLY THAT'S A PROBLEM FOR THEM AND GOOD FOR

16   YOU.  BUT THEY'RE GOING TO PUT IN, I ASSUME,

17   WHATEVER IS THERE THAT SHOWS THAT THEY WERE AND THEY

18   -- AT THE RELEVANT TIME, IF THEY WERE FORMED IN '85

19   AS A NONPROFIT AND THEY AMENDED THEIR ARTICLES OF

20   INCORPORATION, THAT THEY NEVER AMENDED THEM TO

21   CHANGE THAT QUALITY OF THE -- OF THE ENTITY, AT

22   LEAST UP TO THE TIME THAT THIS LOAN WAS MADE, WHICH

23   I THINK IS THE RELEVANT POINT IN TIME.  DO WE AGREE

24   ON THAT?

25            I MEAN, IF THEY BECAME A FOR-PROFIT, YOU

1    KNOW, TODAY, IT WOULDN'T MATTER FOR -- TO ME FOR

2    PURPOSES OF THIS LOAN.  THEY'VE GOT TO HAVE BEEN A

3    NON-PROFIT AT THE TIME THEY FUNDED THE PROGRAM AND

4    AT THE TIME -- PROBABLY AT THE TIME THIS LOAN WAS

5    MADE.  BUT -- BUT I'M -- I DON'T WANT TO ARGUE THAT

6    BECAUSE THAT EVIDENCE ISN'T IN FRONT OF ME.

7              MR. SMITH:  UNDERSTOOD, YOUR HONOR.  AND I

8    -- I THINK THAT THAT -- THAT THAT'S CERTAINLY

9    CORRECT.  I WOULD -- I WOULD -- CAN I -- IF I COULD

10   ADD ONE THING ABOUT THAT.

11             THE COURT:  SURE.

12             MR. SMITH:  I THINK THAT THOSE DOCUMENTS

13   ACTUALLY SAY A LOT OF VERY INTERESTING THINGS.  YOU

14   KNOW, THERE ARE -- YOU KNOW, I THINK I'VE NOW READ

15   THEM ALL.  I MEAN, THERE'S TENS OF THOUSANDS OF

16   PAGES OF THIS STUFF.

17             THE COURT:  RIGHT.

18             MR. SMITH:  AND, YOU KNOW, FOR EXAMPLE --

19             THE COURT:  OH, JOY.

20             MR. SMITH:  -- THE DEPOSIT AND SECURITY

21   AGREEMENT HAD TERI ASSIGN TITLE TO ALL ITS BANK

22   ACCOUNTS AND DEFAULTED DEBTS SUCH THAT I DON'T KNOW

23   HOW IT CAN CONTINUE TO EXIST AS A BONA FIDE

24   GUARANTOR IF IT HAS ASSIGNED ALL ABILITY TO MANAGE

25   ITS GUARANTEE PORTFOLIO TO ANOTHER ENTITY.  I MEAN,

44

```
1    YOU'RE -- AT SOME POINT YOU CEASE TO BE A GUARANTOR

2    IN ANY REAL SENSE OF THE WORD.  AND SO WHILE THERE

3    IS -- YOU KNOW, ALL OF THESE DOCUMENTS SAY IT'S A

4    NONPROFIT.  WHEN YOU ACTUALLY TRACE ALL OF THE

5    CONTRACTS THAT ARE INCORPORATED BY REFERENCE, YOU

6    FINALLY GET TO A SITUATION WHERE IT IS JUST ON

7    PAPER.  THERE IS NO ACTUAL ARRANGEMENT WHEREBY THE

8    PURPOSE OF THE STATUTE, I WOULD SAY, WHERE A ACTUAL

9    BONA FIDE NONPROFIT WAS GUARANTEEING A DEBT TO

10   ENSURE THE INTEREST RATE.  THAT -- THAT IS WHAT THE

11   IRS TRACKS.

12            AND I WOULD ALSO SAY, CONTRARY TO

13   COUNSEL'S ARGUMENT, J.P. MORGAN WAS MAKING ALL SORTS

14   OF LOANS EXACTLY LIKE THIS FOR STUDENTS WITHOUT A

15   TERI GUARANTEE.  I DO NOT BELIEVE THAT THESE

16   DOCUMENTS SHOW THERE'S A BUT-FOR CAUSE THAT WITHOUT

17   THE TERI GUARANTEE, NO ONE WOULD MAKE IT.

18            THE COURT:  WELL, YOU KNOW, THAT -- YOU

19   KNOW, IF I HAD WANTED -- AND I DIDN'T.  I WROTE

20   CHECKS FOR MY SON'S EDUCATION.  BUT IF I HAD WANTED

21   AN UNSECURED LOAN FROM MY BANK, I COULD HAVE GOTTEN

22   ONE BECAUSE I HAVE GOOD CREDIT AND I HAVE A

23   LONG-STANDING HISTORY WITH THE BANK.  I DON'T KNOW

24   THAT I COULD HAVE GOTTEN AN UNSECURED ONE.  I BET I

25   COULD.  BUT IF I COULDN'T, I COULD HAVE GOTTEN A
```

1    LOAN SECURED BY MY HOME WHICH HAD EQUITY OR, YOU

2    KNOW -- YOU KNOW, SO THE FACT THAT THEY'RE LENDING

3    TO OTHER PEOPLE -- IT'S SORT OF THE COMMENT I WAS

4    MAKING TO COUNSEL.  I DON'T KNOW WHY PEOPLE MADE

5    THOSE OTHER LOANS.

6            MR. SMITH:  WELL, BUT I THINK THE -- BUT

7    THE ARGUMENT --

8            THE COURT:  THIS IS THE ONLY ONE THAT

9    MATTERS.

10           MR. SMITH:  I -- WELL I WOULD RESPECTFULLY

11   SAY, YOUR HONOR, THAT IF THEIR CLAIM IS THAT THIS IS

12   EVIDENCE THAT THESE LOANS WOULD NOT HAVE BEEN MADE

13   EXCEPT FOR TERI, YOU CAN COMPARE THE TERMS BETWEEN

14   J.P. MORGAN'S PRIVATE EDUCATION LOANS THAT DID NOT

15   HAVE A TERI GUARANTEE THAT HAVE THE IDENTICAL CREDIT

16   TERMS, SAME INTEREST RATES BASED ON CREDIT SCORE.

17   AND SO I DO THINK THAT THAT AT LEAST CALLS INTO

18   QUESTION WHETHER OR NOT THIS WAS --

19           THE COURT:  BUT THAT ISN'T THE STANDARD,

20   IS IT?  WHERE DOES THE STATUTE SAY IT HAS TO BE -- I

21   MEAN, WE UNDERSTAND THE PURPOSE OF THE STATUTE, AT

22   LEAST I DO.  BUT THAT'S NOT THE WAY CONGRESS WROTE

23   IT.  IT'S NOT THAT --

24           MR. SMITH:  OH, I'M SORRY.  I AGREE.  BUT

25   THE ARGUMENT UP HERE WAS THAT YOU HAVE DEMONSTRATED

1  A BUT-FOR CLAUSE, THAT WITHOUT TERI'S GUARANTEE TO

2  GET TO FUNDING -- AND I -- AND I WAS JUST CALLING TO

3  QUESTION THAT CONCLUSION.

4         THE COURT:  I'M NOT SURE -- I -- HE MAY

5  HAVE SAID THAT AND HE MAY HAVE ARGUED THAT, BUT I

6  DON'T KNOW THAT THAT'S -- I MEAN, THAT'S SORT OF THE

7  BIG -- THAT --

8         MR. SMITH:  OKAY.  UNDERSTOOD.

9         THE COURT:  -- THAT IN CONGRESS' MIND --

10 BUT THEY DIDN'T DRAFT THE LEGISLATION THAT WAY.

11 THEY'RE TRYING TO DRIVE SOMETHING BIGGER TO GET MORE

12 MONEY INTO EDUCATION.

13        MR. SMITH:  I UNDERSTAND.  BUT THEN --

14        THE COURT:  SO I DON'T KNOW.

15        MR. SMITH:  BUT I -- IT BECOMES DIFFICULT

16 WHEN NOW WE'RE TALKING ABOUT THE BIGGER PICTURE, BUT

17 WE CAN'T TALK ABOUT THE DEFINITION OF THE WORDS

18 BECAUSE THAT'S ALREADY OVER.

19        THE COURT:  OH, YOU CAN TALK ABOUT

20 WHATEVER YOU WANT.  I'M JUST TELLING YOU WHAT I'M

21 BUYING AND WHAT I'M NOT.

22        MR. SMITH:  OKAY.

23        THE COURT:  YOU KNOW, I MEAN, I DON'T -- I

24 JUST -- I THINK YOU'RE -- YOU'RE --

25        MR. SMITH:  WE CAN MOVE ON TO OTHER --

1          THE COURT:  YEAH.  WELL, MR. BUSH.

2          MR. BUSH:  IF I MAY INTERJECT, I THINK

3   WHAT WE'RE TRYING TO UNDERSTAND HERE IS THAT CLEARLY

4   THE STATUTE CLEARLY DIFFERENTIATES GUARANTEEING AND

5   FUNDING.  THE STATUTE EXPLICITLY STATES -- USES THE

6   WORD "GUARANTEED" IN REFERENCE TO GOVERNMENT ONLY.

7   AND IF CONGRESS INTENDED GUARANTEEING A LOAN TO LEAD

8   TO NON-DISCHARGEABILITY FOR ANY OTHER KIND OF

9   ENTITY, THEN IT COULD HAVE USED THAT WORD BUT IT

10  DIDN'T.  IT USED THE WORD "GUARANTEE" EXPLICITLY AND

11  ONLY FOR GOVERNMENT UNITS.  AND SO FUNDING CANNOT

12  POSSIBLY MERELY MEAN GUARANTEEING.  IT -- THEY CAN'T

13  BE THE SAME.

14         THE COURT:  WELL, AND THAT'S -- THAT'S

15  SORT OF MY COMMENT TO OPPOSING COUNSEL, IS I DON'T

16  DISAGREE WITH THAT, BUT I THINK FOR A GUARANTEE TO

17  BE THE FUNCTIONAL EQUIVALENT OF FUNDING, IT'S GOT TO

18  BE SOMETHING OTHER THAN A MERE SIGNATURE ON A PIECE

19  OF PAPER.  THEY HAVE TO HAVE HAD THE ABILITY TO

20  FUND, THEY HAVE TO HAVE ACTUALLY FUNDED.  AND IF HE

21  CAN ESTABLISH THAT, THEN I, FOR ONE, AM SATISFIED,

22  AND I'M PROBABLY GOING TO MAKE HIM PROVIDE SOME

23  PROOF OF THAT.

24         MR. BUSH:  AND IF I MAY TO CLARIFY, TOO,

25  THEN.  AND THEN WHAT WE BELIEVE WE CAN PROVIDE

1    EVIDENCE FOR IS THAT DUE TO THE ASSIGNMENT OF THESE

2    CONTRACTS, THERE WAS NEVER -- IT WAS NEVER TERI THAT

3    WOULD HAVE BEEN PERFORMING UNDER ANY OF THESE

4    GUARANTEES, THAT WOULD HAVE EVER BEEN DOING ANY

5    FUNDING.  THEY WERE MERELY A MIDDLE MAN.

6              THE COURT:  WHETHER IT'S TERI OR A

7    SUCCESSOR IN INTEREST, I DON'T THINK IT MATTERS THE

8    WAY THE STATUTE'S STRUCTURED, BUT YOU CAN CERTAINLY

9    MAKE THAT ARGUMENT ONCE THE EVIDENCE IS PROVIDED.

10   THAT -- YOU KNOW, I MEAN, YOU WANT TO UNPACK THESE

11   IN A WAY -- AND I UNDERSTAND WHAT YOU'RE DOING, AND

12   I THINK IT'S -- I THINK IT'S CLEVER AND CREATIVE,

13   BUT I JUST DON'T THINK THAT THE STATUTE IS PRETTY --

14   I THINK, AGAIN, I BUY THE ARGUMENT THAT -- TO SOME

15   LEVEL THAT BECAUSE "GUARANTEE" ISN'T USED EXPRESSLY

16   IN THE PART OF THE STATUTE THAT WE'RE TALKING ABOUT,

17   THAT THERE'S GOT TO BE SOME SUPER STRUCTURE AROUND

18   IT.  AND I -- IT CAN'T BE -- YOU CAN'T SET UP A

19   STRAW MAN IN THE SENSE OF NO ABILITY.  BUT WHETHER

20   THAT ENTITY GETS ITS MONEY FROM SOMEBODY ELSE OR

21   WHETHER THAT ENTITY, HAVING THE ABILITY TO DO IT HAS

22   THEN ASSIGNED IT OUT, I THINK THEN YOU'RE ASKING ME

23   TO GO TOO FAR AFIELD FROM THE -- FROM THE STATUTE.

24   SO I'M WILLING TO AT LEAST CONSIDER THE ARGUMENT AND

25   TO DO SOMETHING WITH IT, BUT I DON'T THINK I'LL TAKE

1  IT AS FAR AS YOU WANT ME TO AT THE END OF THE DAY IF

2  THEY CAN PROVIDE THAT EVIDENCE WHICH I SUSPECT THEY

3  CAN.

4          MR. SMITH:  I -- YOUR HONOR, AND I

5  COMPLETELY UNDERSTAND THAT.  I THINK THAT -- FOR

6  EXAMPLE, I THINK THE COURT CITED TO GREER-ALLEN

7  FAVORABLY, AND I WOULD -- I WOULD JUST LIKE TO QUOTE

8  FROM GREER-ALLEN COMPARED TO THE WAY HE QUOTED THE

9  -- WHICH IS THE EXACT SAME GUARANTEE AGREEMENT, BY

10  THE WAY.  WE HAVE THE SAME GUARANTEE AGREEMENT.  IT

11  WAS FILED UNDER SEAL IN GREER-ALLEN HERE.  AND I

12  BELIEVE THE COURT, YOU KNOW, USED AN ELLIPSIS TO

13  REMOVE THE CONDITIONAL ELEMENT OF THIS WHICH IS A --

14  LET ME JUST READ IT.  THE COURT QUOTES "TERI HEREBY

15  GUARANTEES TO BANK ONE UNCONDITIONALLY," ELLIPSIS,

16  "THE PAYMENT OF 100 PERCENT OF THE PRINCIPAL OF

17  ACCRUED INTEREST ON EVERY LOAN TO WHICH A GUARANTEE

18  EVENT HAS OCCURRED.  THE SWEEPING BREADTH OF THIS

19  GUARANTEE SHOWS THAT BANK ONE AND J.P. MORGAN KNEW

20  THAT ALL LOANS ISSUED UNDER THE PROGRAM WOULD BE

21  GUARANTEED BY TERI IN THE EVENT OF DEFAULT."

22          NOW, THE ELLIPSIS SAYS -- ONE SECOND.

23  "EXCEPT" -- OH, HERE IT IS.  "UNCONDITIONALLY,

24  EXCEPT AS SET FORTH IN SECTION 2.2 BELOW" WHICH I

25  THINK IS A PRETTY SERIOUS EXCEPT NEXT TO THE WORD

50

1    UNCONDITIONALLY.  IF YOU READ SECTION 2.2, THERE ARE

2    A HOST OF REQUIREMENTS THAT HAD TO BE MET, OTHERWISE

3    TERI HAD NO CONTRACTUAL DUTY TO PERFORM ON THE

4    GUARANTEE.

5              WHEN YOU READ THE O'BRIEN CASE AND THE

6    MERCHANT CASE FROM THE SIXTH CIRCUIT, THE EVIDENCE

7    IN THE RECORD WAS THAT THE NONPROFIT HAD PERFORMED

8    ON THE GUARANTEE SUCH THAT THAT'S ONE OF THE REASONS

9    THEY SAID WE CAN AGREE TO THIS LEGAL FICTION, I

10   WOULD CALL, THAT GUARANTEE EQUALS FUNDING BECAUSE

11   THEY DID FUND THE LOAN WHEN THEY PERFORMED ON THE

12   GUARANTEE.

13             THE COURT:  WELL, YOU WANT -- BUT AGAIN,

14   IT DOESN'T SAY "FUND THE LOAN," IT SAYS "FUND THE

15   PROGRAM."

16             MR. SMITH:  AND I KNOW THAT WE'RE NOT

17   GOING TO WIN THESE ARGUMENTS, BUT I -- I DON'T KNOW

18   WHY, AS A MATTER OF GRAMMAR, THAT'S TRUE JUST

19   BECAUSE THE TWO WORDS ARE NEXT TO EACH OTHER.

20             THE COURT:  OH, ARE WE -- ARE WE GOING TO

21   SAY THAT CONGRESS IS THE GRAMMAR POLICE?  I MEAN,

22   COME ON.  HAVE YOU READ THE B.A.P. SEPA AMENDMENTS?

23   I MEAN --

24             MR. SMITH:  WELL, NO.  NO --

25             THE COURT:  -- THEY'LL -- WE GOT THINGS WE

1  WOULD HAVE TO REFER TO AS THE HANGING PARAGRAPH

2  BECAUSE THEY COULDN'T BE BOTHERED TO SEPARATELY

3  NUMBER THEM.  SO I -- I DON'T -- I DON'T NECESSARILY

4  WANT TO GET INTO -- THAT'S THE COMMON UNDERSTANDING

5  OF IT.

6          MR. SMITH:  NO.  NO.  BUT WHY DOESN'T IT

7  MODIFY LOAN FUNDING?

8          THE COURT:  EXCUSE ME?

9          MR. SMITH:  "EDUCATIONAL LOAN MADE UNDER

10  ANY PROGRAM FUNDED," AND PEOPLE SAY "WELL, FUNDED

11  AND PROGRAM MUST GO TOGETHER."  BUT THE TYPICAL

12  STRUCTURE OF THAT SENTENCE SUCH AS "THE ORDER MADE

13  UNDER RULE 56 WAS GRANTED," NO ONE THINKS THAT

14  "GRANTED" MODIFIES "RULE 56."  IT MODIFIES THE

15  SUBJECT.

16          THE COURT:  THERE'S SOME COMMAS MISSING

17  FROM THE GRAMMATICAL -- I DISAGREE WITH YOU.

18  INTERESTINGLY ENOUGH, I HAD A DISCUSSION ABOUT

19  GRAMMAR LAST NIGHT AT A BOOK CLUB MEETING, SO I'M --

20  I'M -- YOU KNOW, THE BOOK WE READ WAS THE

21  GRAMMARIAN, SO I'M -- I GOT YOU ON THIS.  BUT, NO, I

22  DON'T AGREE WITH THAT.  I THINK THAT -- AGAIN, THE

23  COMMON UNDERSTANDING IN ALL THE CASES -- THERE'S NO

24  CASE THAT YOU'VE CITED OR THAT HAS EVER FOUND THAT

25  IT'S GOT TO BE -- THERE ARE CASES WHERE IT DID

1    RELATE TO THE LOAN, BUT THERE'S NONE THAT FOUND THAT

2    THAT -- THAT PROGRAMMATIC FUNDING WASN'T SUFFICIENT,

3    IS THERE?

4              MR. SMITH:  I MEAN, IT -- YOUR HONOR, I

5    WOULD JUST SUBMIT THAT THOSE ARE TWO DIFFERENT

6    QUESTIONS.  WHETHER THERE'S A CASE AND WHETHER IT'S

7    A MATTER OF GRAMMAR, IT'S CORRECT.

8              THE COURT:  WELL, I -- OKAY.  LET'S FORGET

9    THE GRAMMAR FOR A MINUTE.  IS THERE ANY CASE THAT'S

10   -- THAT SUPPORTS THE VIEW YOU JUST EXPRESSED?

11             MR. SMITH:  I MEAN --

12             THE COURT:  DIRECTLY.

13             MR. SMITH:  NO.

14             THE COURT:  OKAY.  I --

15             MR. SMITH:  WE CAN MOVE ON.

16             THE COURT:  THERE IS A -- THERE IS A LONG

17   HISTORY HERE.  AND WHILE I THINK YOU CAN TELL, I'M

18   NOT GIVING HIM NECESSARILY -- OR GIVING THE MOVANT

19   NECESSARILY THE BENEFIT OF THE DOUBT THAT JUST

20   BECAUSE -- I'M NOT DOING THE LEMMING THING, JUST

21   BECAUSE EVERYBODY ELSE DID IT, I'M DOING IT.  I'M

22   TRYING TO BE FAIR WITH YOU AND THINK ABOUT IT

23   INDEPENDENTLY.  BUT THERE IS A SUPER STRUCTURE OF

24   CASE LAW THAT I AM OPERATING WITHIN AND THAT I FIND

25   COMPELLING.

1            MR. SMITH:  UNDERSTOOD.

2            THE COURT:  THESE ARE JUDGES WHO IN MANY

3    CASES I KNOW, I RESPECT.  I'M NOT SURE I WOULD BE

4    QUITE AS -- WELL, I'M NOT GOING TO EVEN SAY THAT,

5    BUT --

6            MR. SMITH:  UNDERSTOOD.

7            THE COURT:  YOU KNOW, SO I -- I'VE READ

8    THE CASE LAW.  THEIR REASONING HOLDS TOGETHER ON

9    THESE ISSUES.

10           MR. SMITH:  OKAY.

11           THE COURT:  LET'S GO TO -- SO I THINK

12   WE'VE SORT OF COVERED THEM IN THE SENSE THAT I THINK

13   YOU ARE CORRECT IN ASKING FOR A GREATER QUALITY OF

14   EVIDENCE, AND I THINK THAT I'M GOING TO ASK THEM TO

15   DO THAT FOR TODAY.  MY INCLINATION WOULD BE TO

16   REQUIRE THEM TO FILE THAT EVIDENCE, TO GIVE YOU A

17   CHANCE TO RESPOND, AND THEN TO INDEPENDENTLY MAKE A

18   DECISION WHETHER WE HAVE MORE ORAL ARGUMENT.  I

19   DON'T THINK I'M GOING TO NECESSARILY NEED IT,

20   DEPENDING ON WHAT THEY PROVIDE AND WHAT YOUR

21   RESPONSE IS.

22           MR. SMITH:  YES, YOUR HONOR.

23           THE COURT:  SO WITH THAT, IS THERE

24   ANYTHING ELSE THAT -- ASSUMING THAT I WILL BE TAKING

25   IT UNDER SUBMISSION AFTER THEY PROVIDE THIS

1    ADDITIONAL EVIDENCE AND YOU PROVIDE YOUR RESPONSE,

2    IS THERE ANYTHING ELSE YOU'D LIKE ME TO PARTICULARLY

3    FOCUS ON?

4              MR. SMITH:  THE ONLY OTHER THING I WOULD

5    -- IF WE COULD TALK FOR A SECOND ABOUT IS THAT IT

6    SEEMED -- THE TENTATIVE OPINION DID SEEM TO CITE

7    ZIMMERMAN FAVORABLY, AND I JUST WANT TO TALK A

8    LITTLE BIT MORE ABOUT ZIMMERMAN BECAUSE I DO THINK

9    THAT ZIMMERMAN AND RODRIGUEZ IN THIS RESPECT ARE IN

10   CONFLICT.

11             THE COURT:  OKAY.

12             MR. SMITH:  THE DISTRICT COURT IN

13   ZIMMERMAN, I MEAN, SAID NEARLY THE EXACT SAME THING

14   THAT RODRIGUEZ SAID, WAS THAT "WE'RE NOT DOING THAT.

15   WE'RE NOT -- WE'RE NOT WASTING THE COURT'S TIME WITH

16   THIS CRAZY IDEA OF LOOKING BEHIND THE FORM."  AND

17   THE FIRST SURROGATE SAID, "YES, YOU ARE.  THAT IS

18   WHAT YOU HAVE TO DO WHEN CONGRESS DOESN'T FIND

19   NONPROFIT AS A 501(C)(3)" --

20             THE REPORTER:  I'M SORRY --

21             MR. SMITH:  I'M SORRY.

22             THE REPORTER:  -- CAN YOU MOVE THAT

23   MICROPHONE OVER.

24             MR. SMITH:  BUT FURTHER -- AND I KNOW THE

25   COURT NOTED THAT THE DISTINCTION WAS THAT THAT WAS

1    ON MOTION TO DISMISS.  AND THERE ARE -- THERE ARE

2    ACTUALLY FIVE ZIMMERMAN OPINIONS.  IT ALSO WENT TO

3    SUMMARY JUDGMENT.  AND AT SUMMARY JUDGMENT, THE

4    DISTRICT COURT SAID "WE HAVE BEEN INSTRUCTED BY THE

5    FIRST CIRCUIT TO EXAMINE THIS.  WE HAVE FOUND THAT

6    THE FOR-PROFIT COMPANY USED THE NON-PROFIT TO

7    EXTRACT $14 MILLION THROUGH THIS TAX-EXEMPT ENTITY

8    AND THAT THERE HAD BEEN A COMMINGLING OF ASSETS AND

9    EMPLOYEES SUCH THAT THE FOR-PROFIT WAS" --

10           THE COURT:  DO YOU HAVE EVIDENCE THAT THAT

11    HAS HAPPENED IN THIS CASE?  I MEAN, THIS ONE'S BEEN

12    THROUGH BANKRUPTCY.  WHAT -- WHAT'S YOUR EVIDENCE

13    THAT --

14           MR. SMITH:  WELL, IT --

15           THE COURT:  I MEAN, YOU HAVE TO -- I'M --

16    I --

17           MR. SMITH:  I UNDERSTAND.

18           THE COURT:  I'VE CRITICIZED THE QUALITY OF

19    THEIR EVIDENCE IN SOME MINOR RESPECTS, BUT ONCE THEY

20    BRING THAT IN, WHAT DO YOU HAVE?

21           MR. SMITH:  WE HAVE THEIR TAX RECORDS THAT

22    SHOW THAT $400 MILLION WAS -- WENT FROM A TAX-EXEMPT

23    ENTITY FROM A PUBLICLY-TRADED CORPORATION, AND THE

24    -- THAT IN THEIR TAX RECORDS THEY SAID NOTHING OF

25    THIS HAPPENED.  AND IF YOU LOOK AT THE ACCOMPANYING

56

1    FINANCIAL STATEMENTS, IT DID HAPPEN.  IF YOU COMPARE

2    THAT TO THE ACTUAL RECORD IN ZIMMERMAN, IT'S -- THE

3    EVIDENCE IS JUST AS GOOD.  AND THE ZIMMERMAN

4    PLAINTIFFS GOT SUMMARY JUDGMENT ON THAT BECAUSE THE

5    COURT SAID "THIS IS INDICATIVE OF SOME SUSPECT

6    TRANSACTIONS AND THAT'S ENOUGH."

7              THE COURT:  BUT THE TAXING ENTITIES HAVE

8    NOT -- HAVE NOT --

9              MR. SMITH:  AND NOR HAD THE TAXING

10   ENTITIES IN ANY OF THOSE CASES.  THAT'S WHAT THE

11   COURT SAID, IS THAT THESE ARE TWO DIFFERENT

12   QUESTIONS.

13             THE COURT:  BUT I DON'T THINK -- I DON'T

14   -- WELL, AGAIN, I UNDERSTAND YOUR ARGUMENT.  I

15   UNDERSTAND YOUR ARGUMENT.

16             MR. SMITH:  AND ACTUALLY, YOU KNOW, I DO

17   HAVE RECORDS WHERE WHEN TERI WAS ULTIMATELY SOLD TO

18   THE MASSACHUSETTS STUDENT ASSISTANCE AUTHORITY, IN

19   THE CONTRACT IT SAYS, "TERI'S REGULATORY AND AUDIT

20   ISSUES AS IDENTIFIED ON THE SCHEDULE 2.5 UNDER SEAL"

21   -- THAT WE CAN'T FIND.  OTHER THAN THAT, WE DON'T

22   HAVE ANY PROBLEMS.  I MEAN, I GENUINELY THINK -- I'M

23   NOT ASKING FOR SUMMARY JUDGMENT ON ANY OF THESE

24   ISSUES, BUT I THINK THAT THE -- THEIR TAX RECORDS

25   COMBINED WITH A NUMBER OF OTHER STATEMENTS AND THEIR

1    ARTICLES, THEIR AMENDED ARTICLES OF ORGANIZATION

2    THAT SAY THAT "THE DIRECTORS AND OFFICERS CAN ACT

3    FOR A PERSONAL BENEFIT WITHOUT BEING VIOLATIVE OF

4    THE UNDERLYING 501(C)(3) CHARTER," AND THEN FURTHER

5    EXTENDS, "TOTAL IMMUNITY FROM ANY CIVIL OR CRIMINAL

6    LIABILITY THAT CAN NEVER BE WITHDRAWN ABSENT CONSENT

7    OF THE INTERESTED DIRECTOR."  AND I UNDERSTAND SOME

8    OF THIS IS BOILERPLATE LANGUAGE IN -- BUT FOR A

9    CHARITY TO SAY THAT, WHEN YOU COMPARE IT TO EVERY

10   OTHER CHARITY AT THAT TIME THAT DOESN'T HAVE ANY OF

11   THAT LANGUAGE, I -- I GENUINELY THINK THAT DOES

12   RAISE A QUESTION THAT IS SUITABLE FOR A TRIAL.  I

13   HAVE DEPOSED A NUMBER OF TERI EXECUTIVES -- NOT IN

14   THIS CASE -- BUT I WOULD CERTAINLY CALL THEM TO

15   TRIAL WERE IT TO COME TO THAT.  AND I THINK THAT --

16   I -- RESPECTFULLY, I DO THINK THAT AT LEAST AS A

17   QUESTION OF FACT -- AND THIS IS NOT JUST MY

18   SPECULATION.  I MEAN, IF THE COURT DOESN'T AGREE

19   WITH THE STATEMENTS THAT I HAVE IDENTIFIED HERE, I

20   CAN UNDERSTAND THAT.  BUT I RESPECTFULLY DO BELIEVE

21   THAT IF THE COURT AGREES THAT THERE IS MAYBE SOME

22   INCONSISTENCIES IN THE SORT OF ACCOUNTING GOING ON,

23   JUST AS A QUESTION OF FACT THAT COULD BE FURTHER

24   DEVELOPED AT TRIAL AND IN DISCOVERY, I RESPECTFULLY

25   BELIEVE THAT WE HAVE MET THAT.

1            THE COURT:  OKAY.

2            MR. SMITH:  THAT'S ALL.

3            THE COURT:  UNDERSTOOD.  ALL RIGHT.  THANK

4    YOU.

5            MR. SMITH:  THANK YOU.

6            THE COURT:  ALL RIGHT.  ANY RESPONSE FROM

7    THE MOVANT?

8            MR. SOLOMON:  NO, NOT AT THIS TIME, YOUR

9    HONOR.  I THINK IT'S PRETTY CLEAR WHAT THE COURT

10   WANTS TO DO.  I WOULD JUST LIKE DIRECTION AS TO

11   TIME.

12           THE COURT:  SURE.  WELL, THAT --

13           MR. SOLOMON:  AND, ALSO, WILL THE -- YOUR

14   COURT'S RULING ON THIS SPECIFICALLY OUTLINE WHAT YOU

15   WANT OR IS IT --

16           THE COURT:  WELL, YEAH, I'M GOING TO GIVE

17   YOU AN ORAL RULING NOW.

18           MR. SOLOMON:  OKAY.

19           THE COURT:  IF YOU NEED A SCHEDULING

20   ORDER, I CAN CERTAINLY PUT ONE TOGETHER.

21           MR. SOLOMON:  OKAY.

22           THE COURT:  HOW -- SO I'M REALLY LOOKING

23   FOR ADDITIONAL EVIDENCE --

24           MR. SOLOMON:  RIGHT.

25           THE COURT:  -- ON TWO AREAS.  AND I THINK

```
 1    YOU'VE HEARD MY CONCERNS.  ONE CONCERN IS THAT THERE
 2    ARE AT LEAST TWO DOCUMENTS THAT APPEAR TO ME TO BE
 3    THE LINCHPIN OF YOUR ARGUMENT THAT THIS IS A
 4    NOT-FOR-PROFIT THAT ARE NOT PROPERLY BEFORE ME AS AN
 5    EVIDENTIARY MATTER.  I'M DENYING YOUR REQUEST TO
 6    ADMIT THEM AS -- AND TO TAKE JUDICIAL NOTICE TODAY
 7    FOR TWO REASONS; ONE, I DON'T HAVE TO AND I'M NOT
 8    GOING TO; AND, SECOND, THAT THEY CAME IN LATE IN THE
 9    DAY.  THEY NEEDED -- I GUESS THERE ARE THREE.  TWO,
10    THEY NEED A CHANCE TO RESPOND; AND, THREE, THE
11    ARGUMENT HAS BEEN MADE -- I DON'T KNOW THAT IT'S
12    TRUE -- BUT THE ARGUMENT HAS BEEN MADE THAT THE
13    ARTICLES OF INCORPORATION THAT WERE PROVIDED WERE
14    NOT ACCURATE AS OF WHAT WOULD BE THE RELEVANT DATE
15    POTENTIALLY WHICH IS THE TIME THIS PARTICULAR LOAN
16    WAS MADE.
17            AND SO I'M GOING TO REQUIRE ON THAT ISSUE
18    THAT YOU PROVIDE AN APPROPRIATE REQUEST FOR JUDICIAL
19    NOTICE OR A BUSINESS RECORDS' DECLARATION OR
20    WHATEVER ELSE YOU WANT TO DO, BUT THAT YOU PUT THEM
21    IN FRONT OF ME IN A PROPER EVIDENTIARY FORM.
22    BECAUSE I AM OPENING THAT UP TO YOU, YOU CAN PROVIDE
23    ANY EVIDENCE ON THAT ISSUE THAT YOU WISH TO AT THIS
24    TIME.
25            HOW LONG WILL YOU NEED TO PROVIDE ME WITH
```

1    THAT EVIDENCE?

2            MR. SOLOMON:  I -- CAN I ASK FOR 30 DAYS

3    AGAIN?

4            THE COURT:  SURE.  I DON'T CARE.

5            MR. SOLOMON:  I DON'T -- I DON'T CONTROL

6    THAT.  THAT'S -- I HAVE TO GO BACK TO THE CO-COUNSEL

7    TO FIGURE OUT HOW THAT WORKS, SO --

8            THE COURT:  TWENTY-EIGHT DAYS IS -- I

9    USUALLY TRY AND DO TWENTY-EIGHT ON A THURSDAY JUST

10   SO WE DON'T GET TO A SATURDAY WHICH WE INVARIABLY DO

11   AT 30.

12           MR. SOLOMON:  OKAY.

13           THE COURT:  SO IS TWENTY-EIGHT DAYS

14   SUFFICIENT?

15           MR. SOLOMON:  IF IT ISN'T, I WILL LET THE

16   COURT KNOW IMMEDIATELY, BUT I'LL PUT TWENTY-EIGHT

17   DAYS.

18           THE COURT:  ALL RIGHT.  YOU CAN CERTAINLY

19   --

20           MR. SOLOMON:  SO TWENTY-EIGHT DAYS FROM

21   TODAY?

22           THE COURT:  YES.  AND WHAT IS THAT, RUSS?

23           THE CLERK:  APRIL 8TH.

24           THE COURT:  ALL RIGHT.  SO THE MINUTE

25   ORDER IS GOING TO SAY THAT BY APRIL 8TH ADDITIONAL

1    EVIDENCE ON THAT ISSUE WILL BE PROVIDED.  I WILL

2    GIVE THE OTHER PARTY A -- AN OPPORTUNITY TO RESPOND.

3    AND LET ME ASK YOU THIS:  YOU'RE GOING TO PROVIDE

4    THE EVIDENCE.  I WILL ALSO ALLOW YOU TO FILE A

5    DOCUMENT OF NO MORE THAN 10 PAGES, INCLUDING

6    CAPTION, TELLING ME WHAT THE EVIDENCE IS AND WHY

7    IT'S SUPPORTIVE ON THE ISSUE.  HOW LONG WILL IT TAKE

8    YOU TO FILE EVIDENTIARY OBJECTIONS, IF ANY, AND TO

9    RESPOND TO THAT DOCUMENT?

10            MR. SMITH:  TWO WEEKS.

11            THE COURT:  TWO WEEKS?

12            THE CLERK:  APRIL 22ND.

13            THE COURT:  ALL RIGHT.  SO 4/22.  AT THAT

14   TIME ON THAT ISSUE --

15            MR. SMITH:  OH, I'M SORRY --

16            THE COURT:  LET'S -- SO LET'S -- THAT'S

17   NUMBER ONE.

18            MR. SMITH:  OKAY.

19            THE COURT:  THE SECOND EVIDENTIARY

20   SUBMISSION THAT I THINK I NEED IS A MORE SUBTLE ONE.

21   BUT YOU'VE HEARD THE ARGUMENT HERE, AND THE ARGUMENT

22   IS THAT NOTWITHSTANDING THE STATUTORY LANGUAGE, THAT

23   BECAUSE OF OTHER STATUTORY LANGUAGE AND BECAUSE OF

24   GRAMMAR, THAT THIS -- THERE NEEDS TO BE SOMETHING

25   MORE THAN SIMPLY THE SIGNING OF A GUARANTEE.  I

1    DON'T DISAGREE WITH THAT POSITION.  I DON'T THINK,

2    AGAIN, WE CAN HAVE A FRAUDULENT GUARANTEE FROM A

3    NOT-FOR-PROFIT AND HAVE THAT BE WHAT THE STATUTE

4    INTENDS.

5              SO I'M GOING TO GIVE YOU AN OPPORTUNITY TO

6    PROVIDE ADDITIONAL EVIDENCE ON HOW THIS WORKED AND

7    THAT IT WORKED.  THAT'S -- THOSE ARE MY WORDS.  THEY

8    DON'T NECESSARILY NEED TO BE THE ONES THAT YOU --

9    THAT YOU USE.  THAT EVIDENCE SHOULD, AT A MINIMUM I

10   THINK, SHOW ME EITHER THAT TERI HAD THE FINANCIAL

11   ABILITY TO RESPOND TO THESE GUARANTEES OR THAT TERI,

12   IN FACT, DID FUND.  I -- I AM AT THIS POINT

13   CONVINCED BY THE ARGUMENT THAT THE FUNDING HAS TO BE

14   PROGRAMMATIC RATHER THAN THE INDIVIDUAL LOAN.  SO

15   I'M NOT REQUIRING EVIDENCE THAT THIS LOAN WAS

16   FUNDED.  I AM REQUIRING EVIDENCE THAT THE PROGRAM

17   UNDER WHICH THIS LOAN WAS MADE WAS FUNDED OR

18   OTHERWISE.  CAN YOU DO THAT IN THE SAME 28-DAY

19   PERIOD?

20             MR. SOLOMON:  I WILL, AGAIN, TRY TO, YOUR

21   HONOR.

22             THE COURT:  AND IF YOU CANNOT, THEN EITHER

23   GET A STIPULATION WITH THE OTHER SIDE TO CONTINUE IT

24   OR FILE A MOTION.

25             MR. SOLOMON:  OKAY.  I WILL FIND OUT

1   TODAY.

2          THE COURT:  ALL RIGHT.  AND I JUST WANT TO

3   SAY, WE ARE ALL OPERATING UNDER AN UNUSUAL SET OF

4   CIRCUMSTANCES.  I'VE SPENT MOST OF THE PAST TWO

5   DAYS, AMONG OTHER THINGS, TRYING TO FIGURE OUT

6   WHETHER I'M GOING TO FLY JUDGES TO APPELLATE

7   ARGUMENTS IN POINTS REMOTE AND FIGURING OUT -- I

8   PERSONALLY AM TAKING A VACATION, SO I REALLY -- I

9   DON'T HAVE A GOOD PORTFOLIO FOR SAYING I WON'T GET

10  ON A PLANE TO SAN FRANCISCO, BUT SOME OF MY

11  COLLEAGUES AREN'T SO KEEN ON THAT.  SO BE KIND TO

12  EACH OTHER, OKAY?  THAT'S -- THAT'S IMPORTANT RIGHT

13  NOW.  AND IF THERE ARE ISSUES, INCLUDING HEALTH

14  ISSUES THAT MAKE PEOPLE UNABLE TO MEET DEADLINES,

15  I'M GOING TO BE RECEPTIVE TO THAT, AND I EXPECT YOU

16  TO BE RECEPTIVE TO IT WITH EACH OTHER.

17          NOW, YOU WILL HAVE AN OPPORTUNITY TO

18  RESPOND, AND I'M ALSO GOING TO ALLOW YOU WITH THAT

19  TO FILE ANOTHER ADDITIONAL 10-PAGE DOCUMENT,

20  INCLUDING CAPTION PAGE SO YOU DON'T HAVE TO DO A

21  TABLE, THAT DISCUSSES THE NEW EVIDENCE YOU'RE

22  PROVIDING AND BRINGS IT INTO THE MOTION.

23          I WILL ALLOW YOU TO RESPOND WITH

24  EVIDENTIARY OBJECTIONS AND YOUR OWN 10-PAGE

25  DOCUMENT.  AND, AGAIN, THE SAME TWO WEEKS?

1            MR. SMITH:  YES, YOUR HONOR.  BUT, SO --

2    I'M SORRY, JUST SO I UNDERSTAND, SO IT'S -- SO

3    THEY'RE -- BUT THESE ARE TWO SEPARATE --

4            THE COURT:  I'M GOING TO --

5            MR. SOLOMON:  I WAS -- I WAS GOING TO ASK

6    THE SAME QUESTION.

7            THE COURT:  I THINK THEY SHOULD BE

8    SEPARATE.

9            MR. SMITH:  OKAY.

10           THE COURT:  AND THE REASON IS, IT DOES NOT

11   SEEM TO ME -- IT MAY BE THE SAME DECLARANT, AND IF

12   IT IS, I'M NOT GOING TO SCREAM IF THEY'RE COMBINED.

13   BUT THEY'RE TWO DISCRETE ISSUES, AND IT'S GOING TO

14   BE EASIER FOR ME TO --

15           MR. SMITH:  YES, OF COURSE.

16           THE COURT:  -- CONSIDER THEM.

17           MR. BUSH:  AND THEN IS THIS A TEN-PAGE

18   DOCUMENT PER PARTY PER ISSUE OR IN --

19           THE COURT:  YES.

20           MR. BUSH:  OKAY.

21           THE COURT:  HE'S GOT TWO TEN PAGES; YOU

22   HAVE TWO NO MORE THAN TEN PAGES.

23           MR. SMITH:  NO MORE THAN TEN PAGES.

24           THE COURT:  INCLUDING CAPTION.

25           MR. SOLOMON:  AND COMPLIES WITH LOCAL

1    RULES.

2            THE COURT:  AND COMPLIES WITH LOCAL RULES.

3    TEN PAGES.  AND I THINK YOU'LL FIND THE TEN PAGES

4    IS, YOU KNOW -- AND IF YOU WANT TO GIVE ME A LIST OF

5    CASES IN A TABLE OF CONTEXT -- CONTENTS AND IT'S

6    LESS THAN TEN PAGES, I WON'T SAY NO.  SO -- AND I

7    THINK WITH THAT, I THINK I'M -- I WILL MAKE A

8    DECISION WHETHER I NEED TO HAVE ADDITIONAL ORAL

9    ARGUMENT.  I'M GOING TO TAKE IT UNDER SUBMISSION AT

10   THAT POINT UNLESS I ADVISE THE PARTIES THAT I NEED

11   SOMETHING, SOMETHING FURTHER.  I ANTICIPATE -- I DO

12   NOT HAVE ANY ANTICIPATION THAT I WILL WRITE FOR

13   PUBLICATION ON THIS.  THERE'S PLENTY THAT'S BEEN

14   PUBLISHED, I DON'T NEED TO.  BUT I THINK THE PARTIES

15   WILL GET A -- AN ORDER FROM ME THAT EITHER IS

16   SOMETHING ALONG THE LINES OF THE TENTATIVE OR THAT

17   IS MORE TRUNCATED BUT INVITES COMPLETE FINDINGS.  I

18   RECOGNIZE THERE MAY BE AN APPEAL.  I WANT TO MAKE

19   SURE THERE'S A GOOD RECORD OF WHAT I'VE ACTUALLY

20   DECIDED --

21            MR. SMITH:  YES, YOUR HONOR.

22            THE COURT:  -- AND WHAT I -- YOU KNOW,

23   WHERE I'M GOING.  I'M -- I RECOGNIZE THAT THESE

24   ISSUES ARE POPPING UP AROUND THE COUNTRY.  AND SO IF

25   THERE ARE QUESTIONS, YOU CAN COMMUNICATE WITH EACH

1    OTHER AND TRY AND RESOLVE THEM.

2              DO I NEED A SCHEDULING ORDER, OR DO YOU

3    THINK I'VE BEEN CLEAR ENOUGH TODAY?

4              MR. SOLOMON:  I -- I'M FINE IF YOU WANT TO

5    --

6              MR. SMITH:  I THINK -- I THINK WE'RE OKAY.

7              MR. BUSH:  I -- AT THIS POINT, YOUR HONOR,

8    THE ONLY THING THAT WE HAVE ON THE -- IN TERMS OF A

9    SCHEDULE IS WE HAVE A --

10             MR. SOLOMON:  OH.

11             MR. BUSH:  -- DISCOVERY CUT-OFF DATE.

12             MR. SOLOMON:  YEAH, OKAY.

13             THE COURT:  RIGHT.

14             MR. BUSH:  JUNE 18.  I WOULD SUGGEST THAT

15   AS LONG AS WE HAVE A STATUS CONFERENCE BEFORE THAT

16   DATE, YOU KNOW, MAYBE END OF MAY, WE CAN REVISIT THE

17   DISCOVERY ISSUE LATER.

18             THE COURT:  WHEN IS -- YEAH, WHEN IS THE

19   -- SO WHEN IS THE LAST DAY?  I'M GETTING THIS -- I'M

20   GOING TO GO BACK IN MY NOTES BECAUSE I ACTUALLY

21   WROTE IT DOWN, RUSS.  THE RESPONSE IS 4/22.

22             IT'S REALLY A QUESTION OF WHEN I WILL BE

23   ABLE TO GET SOMETHING OUT.  LET -- IF I GRANT

24   SUMMARY JUDGMENT, WE'RE DONE.  IF I DON'T, THEN WE

25   NEED A STATUS CONFERENCE.  AND I THINK WHAT I'M

```
 1   GOING TO DO IS SET A STATUS CONFERENCE FOR END OF
 2   MAY.  BY THEN I SHOULD HAVE BEEN ABLE TO -- UNLESS
 3   I'M SICK OR SOMETHING -- I SHOULD HAVE BEEN ABLE TO
 4   LET YOU KNOW ON SUMMARY JUDGMENT.  IF I DON'T GRANT
 5   SUMMARY JUDGMENT, THEN AT THE STATUS CONFERENCE,
 6   BOTH SIDES SHOULD REQUEST ME TO EXTEND THE DISCOVERY
 7   CUT-OFF.  I THINK THAT'S THE EASIEST WAY.  AND YOU
 8   CAN -- SO I'M NOT DOING IT TODAY.  I'M NOT SAYING
 9   DON'T DO DISCOVERY, BUT I'M GIVING YOU A PRETTY,
10   PRETTY FIRM ASSURANCE THAT YOU DON'T NEED TO WORRY
11   ABOUT IT BECAUSE I WILL GIVE YOU MORE TIME.  I
12   RECOGNIZE THAT THERE'S --
13             MR. SMITH:  OKAY.
14             THE COURT:  -- THERE'S A MATTER UNDER
15   SUBMISSION THAT MIGHT BE CASE-DISPOSITIVE.
16             MR. SMITH:  OKAY.
17             THE COURT:  AND I THINK THAT'S THE BEST
18   THING TO DO BECAUSE THEN I CAN EXTEND IT TO A POINT
19   IN TIME THAT MAKES SOME SENSE GIVEN WHAT YOU
20   ACTUALLY INTEND TO DO AND WHERE YOU INTEND TO GO
21   WITH IT.  DOES THAT MAKE SENSE?
22             MR. SOLOMON:  THAT MAKES SENSE TO ME, YOUR
23   HONOR.
24             THE COURT:  OKAY.  ALL RIGHT.
25             ALL RIGHT.  THANK YOU VERY MUCH FOR YOUR
```

1    GOOD ARGUMENTS.

2                MR. SOLOMON:  ARE YOU GOING TO SET THE

3    DATE IN MAY NOW OR --

4                THE COURT:  OH, YES.  THAT WOULD BE AN

5    EXCELLENT IDEA.  RUSS?

6                THE CLERK:  THANK YOU.  SO, YOUR HONOR, WE

7    COULD DO MAY 27TH AT 10:00 O'CLOCK.

8                THE COURT:  OKAY.  I'M GOING TO -- NO,

9    WE'RE NOT.

10               THE CLERK:  NO?

11               THE COURT:  BECAUSE I HAVEN'T TOLD YOU

12   THIS.  LET -- THERE'S AN OUTSIDE -- I'M DOING A

13   WEDDING ON THE --

14               THE CLERK:  OH, THAT'S RIGHT.

15               THE COURT:  -- THE 24TH.  AND I MAY COME

16   BACK THE 27TH IF I STAY TO --

17               THE CLERK:  OKAY.

18               THE COURT:  -- TAKE HANK TO A BASEBALL

19   GAME.  SO LET'S DO IT THE 20 -- YEAH, LET'S DO IT

20   THAT DAY.  THAT WOULD BE BETTER.

21               THE CLERK:  JUNE 3RD AT 10:00 A.M.

22               MR. SMITH:  THAT'S MY BIRTHDAY.  YEAH,

23   THAT'S --

24               THE COURT:  OKAY.  THAT'S MY BROTHER'S

25   BIRTHDAY.

1          MR. SMITH:  IT'S AUSPICIOUS.

2          THE COURT:  YES.  AND I -- YOU KNOW, I'M

3    JUST TRYING TO -- RUSS IS HELPING OUT WHILE MY USUAL

4    COURTROOM DEPUTY IS CELEBRATING THE BIRTH OF HER

5    CHILD AND NOT SLEEPING, AND HE MAY HAVE THE JOY OF

6    MOVING CALENDARS AGAIN THAT WEEK, SO HE'S -- HE'S

7    GOING TO BE FULLY-INVESTED IN THE JOB BEFORE HE GETS

8    TO GO BACK TO HIS USUAL DAY JOB UNLESS SHAWNA JUST

9    DOESN'T COME BACK, WHICH SHE'S LOVING THAT BABY.  SO

10   WITH THAT --

11         THE CLERK:  YOU HONOR, JUST FOR

12   MINUTE-ORDER PURPOSES AND FOR THE RECORD, DO -- ARE

13   WE TAKING THE MOTION OF SUMMARY JUDGMENT UNDER

14   SUBMISSION, OR WOULD YOU LIKE ME TO CONTINUE IT?

15         THE COURT:  IT'S GOING TO GO UNDER

16   SUBMISSION AND BRIEFING, SO WE'RE NOT GOING TO MOVE

17   THAT TO THE DATE.  IF I SCHEDULE ORAL ARGUMENT, I

18   WILL SCHEDULE IT FOR THAT DATE OR DO SOMETHING

19   TOTALLY DIFFERENT, DEPENDING ON WHAT COMES IN AND

20   HOW I DECIDE TO PROCEED.  IT MIGHT BE SOONER, MIGHT

21   BE LATER, BUT I WILL KEEP IN MIND YOUR DISCOVERY

22   CUT-OFF.  AND IF I DON'T, AGAIN, YOU CAN COMMUNICATE

23   JOINTLY THROUGH THE LAW CLERK, AND I -- I WON'T

24   LEAVE YOU HANGING.  ALL RIGHT.

25         MR. SOLOMON:  OKAY.  THANK YOU, YOUR

1    HONOR.

2             THE COURT:  THANK YOU VERY MUCH.

3             MR. SMITH:  THANK YOU, YOUR HONOR.

4             MR. BUSH:  THANK YOU, YOUR HONOR.

5             THE CLERK:  AND THAT CONCLUDES YOUR 10:00

6    O'CLOCK CALENDAR, YOUR HONOR.

7      (WHEREUPON, THE PROCEEDING CONCLUDED AT 11:12 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2

 3   STATE OF CALIFORNIA

 4

 5   COUNTY OF SAN DIEGO

 6

 7   I, JENNIFER GIBSON, CERTIFIED SHORTHAND REPORTER, DO HEREBY

 8   CERTIFY:

 9   THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

10   FOREGOING CAUSE ON THE 11TH DAY OF MARCH, 2020;

11   THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER

12   MY DIRECTION; AND THAT THE FOREGOING TRANSCRIPT CONTAINS A

13   CORRECT STATEMENT OF THE PROCEEDINGS.

14

15

16   DATED THIS 11TH DAY OF MARCH, 2020.

17

18   /S/ JENNIFER GIBSON

19   _____

20   JENNIFER GIBSON, CSR NO. 12802

21

22

23

24

25
```