Christopher R. Bush CS SBN 243471
The Law Office of Chris Bush
2727 Camino del Rio South, Suite 135
San Diego, CA  92108
Tel. (619) 678-1134
chris@chrisbushlaw.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL ANNE MEDINA,<br><br>Debtor. | Case No.: 17-05276-LT7<br><br>Adv. No.: 19-90065-LT |
| KRYSTAL ANNE MEDINA<br><br>Plaintiff<br><br>v.<br><br>National Collegiate Student Loan Trust 2006-3<br><br>Defendant | **PLAINTIFF'S OBJECTION TO LODGED ORDER AND PROPOSED ALTERNATE ORDER**<br><br>Date: August 5, 2020<br>Time: 10:00 AM<br>Dept.: 3 |

Plaintiff, Krystal Anne Medina, hereby Objects to the Order Lodged by Defendant. Attached as Exhibit A is Plaintiff's proposed alternate order. Attached as Exhibit B is a summary of changes to Defendant's proposed order.

Date:   8/28/2020            /s/ Christopher R. Bush
                             Christopher R. Bush, Attorney for Plaintiff

- 1 -

1
2
3                                    EXHIBIT A
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DEBTOR:Krystal Anne Medina                                                      CASE NO.:17-05276-LT
                                                                                ADV. NO.:19-90065-LT

Pursuant to the Court's Minute Order of August 5, 2020 which GRANTED the Defendant National Collegiate Student Loan Trust 2006-3's ("NCSLT") Motion for Summary Judgment, the Court hereby enters the following Findings of Fact and Conclusions of Law:

PROCEDURAL FINDINGS

1. In this adversary proceeding, Plaintiff seeks a ruling that her student loan indebtedness to NCSLT was discharged in her Chapter 7 case, and claims that the loan does not meet any of the standards for nondischargeability under 11 U.S.C. §523(A)(8). Plaintiff does not claim that repaying the loan will cause undue hardship.

2. Defendant NCSLT asserts the affirmative defense that the loan is nondischargeable under § 523(a)(8)(A)(i) which, for the purposes of this case, excepts from discharge any debt for an educational loan made under any program funded in whole or in part by a nonprofit institution. NCSLT seeks summary judgment on this affirmative defense.
Plaintiff opposes summary judgment and argues that NCSLT misinterprets § 523(a)(8)(A)(i) and fails to meet its burdens of proof.

FINDINGS OF FACTS

1. Plaintiff entered into a Non Negotiable Credit Agreement ("Loan") with JP Morgan Chase Bank N.A on or about June 12, 2006 to attend the San Diego Culinary Institute for the academic period of September 2006 through May 2007 in the principal amount of $33,149.17. See Declaration of Bradley Luke ("Luke Declaration"), ¶ 10 & 11 and its Exs. A and B; See also the Complaint, Section II, FACTS, lines 6 & 7.

2. National Collegiate Student Loan Trust 2006-3, Defendant, is the current holder of the Loan. See Luke Declaration, ¶ 36.

3. The Loan is an educational loan. See Luke Declaration, ¶ 10, 11 & 18 and its Ex. B; See also Ex. E, p. 26, Ex. A, Basic Program Design (Describing the Bank One Continuing Education Loan as a "fully credit-tested education loan.").

4. The loan package given to Plaintiff included Terms and Conditions of the Loan. See Luke Declaration, ¶ 20 and Ex. B.

5. The terms and conditions of the Loan describe TERI as a "non-profit institution" and describe the Loan as nondischargeable in bankruptcy:

 "I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full."

See Luke Declaration, ¶ 21, and See Ex. B, ¶ L 12. (Text is bolded in the Credit Agreement).

6. The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program. See Luke Declaration, ¶ 19 and 28 and its Ex. B, p.3; See also Ex. E and its Ex. A "Basic Program Design"; See also Ex. G, Schedule A.

7. The Educational Resources Institute, Inc. ("TERI") guaranteed the loans in Plaintiff's Loan Program, the Education One© Education One Continuing Education Loan Program. See Luke Declaration, ¶ 23 and See also Ex. E, Pgs. 1 - 3, Preamble & Sections 1.6 & 2.1; E, Ex. A, Sections, 1, 2, and "Basic Program Design;" See also Ex. B, p. 3, upper left-hand corner & ¶ L.12.

8. TERI guaranteed that it would reimburse the holder of any Program loan upon default. See Luke Declaration ¶ 29; See also Ex. E, Sections 1.6 and 2.1.

9. TERI is a non-profit institution.  See Luke Declaration, ¶ 22, and See its Ex. B, ¶ L. 12; Ex. E, p. 1, ¶ 1; Ex. H p.5, ¶ 1; Ex. I, p. 1, ¶ 1. See Also Declaration of Holly Nolan ("Nolan Declaration) and its Exs. A – E.

TERI is described as a nonprofit institution on the Secretary of the Commonwealth of Massachusetts's website at http://corp.sec.state.ma.us/CorpWeb/Corp Search/CorpSummary.aspx?sysvalue=o3fxJEn1qk52LvkEcwi30rXyq 8ywfTWtfB4CHi.XP0c-. (The "Website".) See Declaration of Holly Nolan, ¶ 3. ("Nolan Declaration")

10. TERI's Articles of Organization state that it was organized under Mass. G.L. Ch. 180, the Massachusetts nonprofit statute, and it was to be "operated exclusively for charitable and educational purposes."  See Nolan Declaration, ¶s 6 & 7, Ex. A.

11. TERI's Articles of Organization state that:
"[n]otwithstanding any other provisions of these articles, the Corporation shall not participate in activities not permitted to be carried on (a) by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1954, as amended (or the corresponding provision of any future United States internal revenue law), or (b) by a corporation contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1954, as amended (or the corresponding provision of any future United States internal revenue law."

See Nolan Declaration, ¶8, Ex. A.

12. TERI's Articles of Organization state that:
"No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except reasonable compensation for services rendered and distributions in furtherance of the purposes set forth in Article 2 hereof. "

 See Nolan Declaration, ¶9, Ex. A.

13. TERI amended its Articles of Organization on or about September 12, 1990 only to add a limitation on the personal liability of the Officers and Directors to the corporation for breach of fiduciary duty.  See Nolan Declaration, ¶10, Ex. B.

14. TERI amended its Articles of Organization in 2003.

15. TERI restated its Articles of Organization on or about November 19, 2010 to provide:
"The Corporation is organized and at all times shall be operated exclusively for religious, charitable, scientific, literary or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States internal revenue law (the Internal Revenue Code of 1986, as amended, and any such future law, the "Code"), and Section 4 of Chapter 180 of the Massachusetts General Laws, as amended ("Chapter 180"), including but not limited to assisting students in attaining an education and assisting educational and financial institutions in providing an education in an economical fashion."
See Nolan Declaration, ¶s 11 &12, Ex. C, Sched. A, Art. II (2).

15. The Restated Articles of Organization also provided that:

"Notwithstanding any other provisions of these articles, the Corporation shall not participate in activities not permitted to be carried on (a) by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code or (b) by a corporation contributions to which are deductible by virtue of Section 170(c)(2) of the Code."

See Nolan Declaration, ¶13, Ex. C, Sched. B, Art. IV-B.

16. The Restated Articles of Organization further provided that:

"No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except reasonable compensation for services rendered and distributions in furtherance if the purposes set forth in Article II hereof."

See Nolan Declaration, ¶14, Ex. C, Sched. B, Art. IV.

17. TERI merged with two other corporations during its corporate life, The Education Fund, Inc. and TERI Financial Services, Inc., Both of these corporations were nonprofit corporations and the mergers were done under Massachusetts' nonprofit statute, General Laws, Chapter 180. The second merger specifically states that TERI shall remain a nonprofit corporation: "... [I]f any of the constituent corporations constitutes a public charity, then the resulting or surviving corporation shall be a public charity."  See Nolan Declaration, ¶s 15-21, Ex.s D & E.

18. The Secretary of the Commonwealth of Massachusetts's website shows that TERI retained its nonprofit status throughout its corporate life and was never a for-profit corporation. See Nolan Declaration, ¶ 22.

19. TERI filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Massachusetts, Case No. 08-12540 on April 7, 2008.

20. TERI declared itself a nonprofit in its Equity Security Holder Statement. See ECF 66, Ex. L.

21. TERI's Disclosure Statement identified it as a nonprofit with a mission to promote education and guarantee private student loans:

"Founded in 1985, The Education Resources Institute, Inc. is a nonprofit organization incorporated under Massachusetts General Laws, chapter 180, local in Boston, Massachusetts. TERI promotes access to education for students of all ages and incomes with two primary programs. Through its College Access programs, TERI assists low income, first-generation-to college and other underserved students in pursuing higher education. TERI is a nationally recognized leader in college access through support and promotion of research-based policies and practices. Locally it provides innovative direct service programs in Massachusetts. Through its loan guarantee programs, TERI has guaranteed more than two million private student loans."See ECF 66, Ex. M.

22. The findings of fact and conclusions of law in the Order confirming TERI's Fourth Amended Plan find that the Reorganized TERI will maintain its nonprofit status, See ECF 66, Ex. N, and that "Nothing in the August 2010 Plan or this Order shall be deemed to . . .affect the right of a debtor in any bankruptcy case from asserting that any obligation to pay a student loan is dischargeable under section 523(a)(8) of the Bankruptcy Code."

23. The same Order found that TERI "complied with all applicable state and federal restrictions on transfers by not for profit entities."

CONCLUSIONS OF LAW

1. It is contested but the Court finds that Plaintiff's student Loan is an educational loan under 11 U.S.C. § 523(a)(8)(A)(i).

2. It is contested but the Court finds that that Plaintiff's Loan was made under the Education One Continuing Education Loan Program, a part of the Education One Loan© Program.

3. It is contested but the Court finds that that TERI guaranteed Plaintiff's Loan program by guarantying the purchase of defaulted program loans.

4. TERI's guaranty of Plaintiff's loan program is funding of that program under §523(a)(8)(A)(i). Without TERI's guaranty to purchase defaulted loans from the program, the loans would not have been made.  See, O'Brien v. First Marblehead Educ. Resources, Inc. (In re O'Brien), 419 F.3d 104 (2d Cir. 2005); and see Hemar Serv. Corp. of Am. Inc. v. Pilcher (In re Pilcher), 149 B.R. 595, 600 (B.A.P. 9th Cir. 1993).  See also, See, Univ. v. Merchant (In re Merchant), 958 F.2d 738, 740 (6th Cir. 1992); Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen), 602 B.R. 831 (Bankr. D. Mass. 2019); Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland), 559 B.R. 265 (Bankr. N.D. Ga. 2016); Decker v. EduCap, Inc., 476 B.R. 463, 467-468 (W.D. Pa. 2012); Drumm v. New England Loan Marketing Assoc., (In re Drumm), 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); Educ. Res. Inst., Inc. v. Hammarstrom, 95 B.R. at 165; TERI v. Taratuska (In re Taratuska), 2008 WL 4826279, at *6 (D. Mass. Aug. 25, 2008) reversing the bankruptcy court's ruling that TERI's guaranty did not constitute funding under §523(a)(8)(A)(i). See TERI v. Taratuska (In re Taratuska), 374 B.R. 24 (Bankr. D. Mass. 2007).  See also In re Duits, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020) ("Based on the evidence presented, the loans here fit both the first and the third scenarios. They were initially funded by a private lender but were guaranteed by TERI, a nonprofit institution. Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty 'helps fund a program because it encourages a lender to extend credit that may not be otherwise available.'").

5. TERI's guaranty of all loans under the program is sufficient in itself to meet the funding requirement under §523(a)(8)(A)(i) and evidence that TERI actually paid on the guaranty is not necessary.  In re Greer-Allen, 602 B.R. 83, 838–39 (Bankr. D. Mass. 2019) and rejecting In re Holguin, 609 B.R. 878, 886–87 (Bankr. D.N.M. 2019).

6. The term "institution" in §523(a)(8)(A)(i) is not limited to an educational institution, as Plaintiff argues, and TERI is an institution under the plain language of the statute.  The Court holds that as a matter of law it would be inappropriate to read "education" back into the statute when Congress specifically removed the limiting language "institution of higher education," leaving only "institution" in the 1984 amendments:  See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 454(a)(2), 98 Stat. 333 (Supp.1984) (amending 11 U.S.C. § 523(a)(8) (1982)); Pilcher, 149 B.R. at 598; Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen), 179 B.R. 935, 938 (Bankr. D. Or. 1995); Greer-Allen, 602 B.R. at 838.

7. In determining TERI's nonprofit status, statements in loan documents that TERI is a nonprofit are not conclusive, but are persuasive. Golden v. JP Morgan Chase Bank (In re Golden), 596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019); Greer-Allen, 602 B.R. at 837-38.

8. Likewise, tax-exempt status is not conclusive, but is persuasive in determining nonprofit status. In re Rosen, 179 B.R. at 940.

9. The Court is not required to do an in-depth review of TERI's financial records to determine whether or not it is a nonprofit, as Plaintiff urges, but may consider as an important factor whether TERI refrained from distributing net earnings to shareholders.    Rodriguez v. The Education Resources Institute, Inc, (In re Rodriguez), 319 B.R. 894, 895–96 (Bankr. M.D. Fla. 2005); In re Rosen, 179 B.R. at 940, and rejecting adoption of Plaintiff's proffered and primarily tax cases in the context of §523(a)(8)(A)(i):  Est of Hawaii v. Comm'r of Internal Revenue, 71 T.C. 1067 (1979), aff'd, 647 F.2d 170 (9th Cir. 1981); P.L.L. Scholarship Fund v. Commissioner of Internal Revenue, 82 T.C. 196, 200 (1984); and Living Faith, Inc. v. C.I.R., 950 F.2d 365, 373 (7th Cir. 1991); Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 475–76 (1st Cir. 2005).

10. TERI was a nonprofit institution under §523(a)(8)(A)(i). See Nolan Declaration and TERI's corporate records from the Secretary of the Commonwealth of Massachusetts's website at http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary. aspx?sysvalue=o3fxJEn1qk52LvkEcwi30rXyq8ywfTWtfB4CHi.XP0c-. (The "Website".) (TERI is identified as a "Nonprofit Corporation" on the Website; its Articles of Organization state that it was organized under Mass. G.L. Ch. 180, the Massachusetts nonprofit statute; it was to be "operated exclusively for charitable and educational purposes;" it was prohibited from participating in any activities not permitted to be carried on by  tax-exempt entities under 503(c)(3) of the Internal Revenue Code or by corporations whose contributions are deductible by contributors under Section 170(c)(2) of the Internal Revenue Code; no part of its net earnings may be distributed to shareholders and the like.)  (See Nolan Declaration ¶s 6, 7, 8. & 9, Ex. A and its Article 2.)

11. TERI amended its Articles of Organization on or about September 12, 1990 only to add a limitation on the personal liability of the Officers and Directors to the corporation for breach of fiduciary duty. (See Nolan Declaration ¶ 10, Ex. B.)

12. TERI restated its Articles of Organization on or about November 19, 2010 and maintained its nonprofit character. (Reiterating that it is organized primarily for an educational purpose under "Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and any such future law," and "Chapter 180 of the Massachusetts General Laws, as amended." See Nolan Declaration, Ex. C, Sched. A, Article II (2); reiterating that it refrain from activities prohibited under I.R.C. §501(c)(3) and I.R.C. §170(c)(2), Id., Sched. B, Article IV-B; and again prohibiting distributions of net earnings to shareholders and the like.  (See Nolan Declaration, ¶s 11 &12, Ex. C, Sched. A, Art. II (2).)

13. TERI retained its nonprofit status through two mergers with nonprofit corporations. (See Nolan Declaration, ¶s 15-21, Exs. D & E.)

14. TERI retained its nonprofit status throughout its corporate life and was never a for-profit corporation. (See Nolan Declaration, ¶ 22.)

15. TERI merged with a for-profit subsidiary called Boston in 2001 (

16. TERI is referred to as a nonprofit in Plaintiff's Credit Agreement.  (See Luke Declaration, ¶ L. 12, Ex.. B.)

17. In its bankruptcy case, TERI declares itself a nonprofit in its Equity Security Holder Statement, (See ECF 66, Ex. M.); declares itself a nonprofit with a mission to promote education and guarantee private student loans in its Disclosure Statement, (See ECF 66, Ex. N); the findings of facts and conclusions of law in the Order confirming TERI's Fourth Amended Plan find that the Reorganized TERI will maintain its nonprofit status. (See ECF 66, Ex. O)

17. Other courts examining TERI found it a nonprofit institution. (See TERI v. Hammarstrom, (In re Hammarstrom), 95 B.R. 160, 166 (Bankr. N.D. Cal. 1989). ("...TERI [is a] private nonprofit organization... engaged in providing guaranteed educational loans."; O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien), 419 F.3d 104, 105 (2d Cir. 2005). ("The loan was guaranteed by defendant-appellee¬ creditor The Education Resources Institute ("TERI"), a not-for-profit corporation that conditionally guarantees loans extended by private lenders under TERI's student loan programs."); Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez), 319 B.R. 894, 895 (Bankr. M.D. Fla. 2005). ("TERI is a private nonprofit institution organized under the laws of Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States."); TERI v. Martin, (In re Martin), 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990). ("[T]he Guaranty Agreement between TERI and The Bank of New England (attached as Ex. B to the Plaintiff's Brief in Support of its Motion for Summary Judgment) indicates that TERI is in fact a non-profit corporation."))

18. Plaintiff has not presented evidence to create a triable issue of fact on TERI's nonprofit status. Plaintiff has provided no evidence or even allegation that TERI paid exorbitant salaries or otherwise allowed its owners to siphon off corporate assets. Plaintiff has provided no evidence that TERI was ever referred to as a for profit entity. Plaintiff has provided no evidence that TERI ever made distributions to shareholders.

19. Plaintiff has not presented evidence to create a triable issue of fact on whether TERI's partnership relationship with First Marble Head ("FMC"), a for-profit lender, transformed TERI into a for-profit institution because FMC used the relationship to expand its loan program. Plaintiff argues that "FMC promoted its ability to make non-dischargeable debt through TERI as a competitive advantage over Sallie Mae and Wells Fargo." Opp. at 23:4-7. However, this appears to have been the industry standard. See e.g., O'Brien in which the loan was made by Key Bank and guaranteed by TERI. 419 F3d. at 105. Plaintiff has made no allegation that TERI made profits that were up streamed to FMC or anyone. The fact that FMC may have benefited from the relationship does not render TERI a for-profit institution as a matter of law. Also, the fact that TERI may have generated a profit is not a problem so long as it was not paid out in dividends. See Rosen, 179 B.R. at 940 ("The fact that the Training Trust may have accumulated assets does not mean that it is a for-profit enterprise under these circumstances.")

20. Plaintiff's Loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program guaranteed by TERI, a non-profit institution.

21. Plaintiff has failed to prove that TERI's bankruptcy, the 2010 termination of the loan program guarantee, and the satisfaction of Defendant's claims against TERI for the loan guarantees, ECF 66 Ex. N, had any effect on the character of her Loan. And notwithstanding the general rule in bankruptcy, *see In re Brown,* 606 B.R. 40, 46 (B.A.P. 9th Cir. 2019)("As of the petition date, the estate is created and creditors' rights are fixed as much as possible."), the dischargeability of the Plaintiff's Loan was fixed on the date of origination.

22. The Court neither excluded nor admitted the declarations of John Brooks, Austin Smith or any of the exhibits attached thereto but the Plaintiff's arguments are not well taken. See ECF 68 at 2-3 ("Pursuant to Rule 56(d), and the Declarations of John Brooks and Austin C. Smith, Plaintiff submits that these matters are not suitable for summary judgment. The Defendant has no employees, and no records beyond what is publicly available on the SEC's website. Plaintiff submits that a trial is required, and Plaintiff intends to subpoena Richard Neely, the former CFO of TERI and FMER.").

23. The findings of fact and conclusions of law in the Order confirming TERI's Fourth Amended Plan, see ECF 66, Ex N, state that "nothing contained in this Confirmation Order . . . shall be deemed . . . to prejudice in any manner the rights of the Debtor or any person or entity in any further proceedings involving the Debtor or otherwise, or to constitute an admission of any sort by the Debtor or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof."

24. On or about January 1, 2000, TERI entered into an agreement with Boston Systems Resources, Inc. a for-profit company, to merge the operations of BSR into TERI. ECF 47-2 at 15.

# EXHIBIT B

EXHIBIT B: PROPOSED CHANGES TO DEFENDANT'S ORDER:

Insert new ¶ 14:

14. TERI amended its Articles of Organization in 2003.

Appended following Paragraphs:

21. Plaintiff has failed to prove that TERI's bankruptcy, the 2010 termination of the loan program guarantee, and the satisfaction of Defendant's claims against TERI for the loan guarantees, ECF 66 Ex. N, had any effect on the character of her Loan. And notwithstanding the general rule in bankruptcy, *see In re Brown,* 606 B.R. 40, 46 (B.A.P. 9th Cir. 2019)("As of the petition date, the estate is created and creditors' rights are fixed as much as possible."), the dischargeability of the Plaintiff's Loan was fixed on the date of origination.

22. The Court neither excluded nor admitted the declarations of John Brooks, Austin Smith or any of the exhibits attached thereto but the Plaintiff's arguments are not well taken. See ECF 68 at 2-3 "Pursuant to Rule 56(d), and the Declarations of John Brooks and Austin C. Smith, Plaintiff submits that these matters are not suitable for summary judgment. The Defendant has no employees, and no records beyond what is publicly available on the SEC's website. Plaintiff submits that a trial is required, and Plaintiff intends to subpoena Richard Neely, the former CFO of TERI and FMER.").

23. The findings of fact and conclusions of law in the Order confirming TERI's Fourth Amended Plan, see ECF 66, Ex N, state that "nothing contained in this Confirmation Order . . . shall be deemed . . . to prejudice in any manner the rights of the Debtor or any person or entity in any further proceedings involving the Debtor or otherwise, or to constitute an admission of any sort by the Debtor or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof."

24. On or about January 1, 2000, TERI entered into an agreement with Boston Systems Resources, Inc. a for-profit company, to merge the operations of BSR into TERI. ECF 47-2 at 15.